ORIGINAL

Jeffery L. Caufield, Esq. (SBN 166524)
jeff@caufieldjames.com
Kenneth E. James, Esq. (SBN 173775)
ken@caufieldjames.com
CAUFIELD & JAMES, LLP
2851 Camino Del Rio South, Suite 250
San Diego, California 92108
(619) 325-0441 Telephone
(619) 325-0231 Facsimile

Attorneys for Plaintiffs Angeles Chemical Company, Inc., John Locke, and Greve
Financial Services, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ANGELES CHEMICAL COMPANY, INC., a California corporation, JOHN LOCKE, an individual, GREVE FINANCIAL SERVICES, INC., a California corporation,<br><br>Plaintiffs,<br><br>v.<br><br>OMEGA CHEMICAL PRP GROUP LLC; OMEGA CHEMICAL PRP GROUP; MCKESSON CORPORATION; ROBERT BERG; DONNA BERG; THE ESTATE OF ARNOLD ROSENTHAL; PEARL ROSENTHAL; HAVERY SORKIN, SEYMOUR MOSLIN, AND THE ESTATE OF PAUL MASLIN; ABEX AEROSPACE DIVISION and PNEUMO-ABEX CORPORATION; AIR PRODUCTS AND CHEMICALS, INC.; ALCOA INC.; ALLIEDSIGNAL, INC. (now known as HONEYWELL INTERNATIONAL, INC.); ALPHA THERAPEUTIC CORPORATION; APPLIED MICRO CIRCUITS CORPORATION; APPROPRIATE TECHNOLOGIES II, INC.; ARLON ADHEVISES & FILM; ARMOR ALL PRODUCTS CORPORATION; AVERY DENNISON CORPORATION; BASF CORPORATION; BAXTER HEALTHCARE CORPORATION; BOEING NORTH AMERICAN, INC.; BONANZA ALUMINUM CORP.; BORDEN, INC.; BOURNS, INC.; | CASE NO:<br><br>EDCV07-1471 VAP (JCRX)<br><br>COMPLAINT FOR:<br><br>1. PRIVATE RECOVERY UNDER CERCLA;<br>2. DECLARATORY RELIEF UNDER FEDERAL LAW;<br>3. DAMAGES AND INJUNCTION FOR PUBLIC AND PRIVATE NUISANCE;<br>4. DAMAGES FOR TRESPASS;<br>5. EQUITABLE INDEMNITY; AND<br>6. DECLARATORY RELIEF UNDER STATE LAW. |

DOCKETED ON CM

NOV 13 2007

BY _____ 193

BROADWAY STORES, INC.;
CALSONIC CLIMATE CONTROL,
INC. (now known as CALSONIC
NORTH AMERICA, INC.); CANON
BUSINESS MACHINES, INC.;
INTERNATIONAL PAPER
COMPANY; WASTE
MANAGEMENT, INC.; UNITED
DOMINION INDUSTRIES; CROSBY
& OVERTON, INC.; DATATRONICS
ROMOLAND, INC.; DEL MAR
AVIONICS, INC.;  DEUTSCH
ENGINEERED CONNECTING
DEVICES/DEUTSCH GAV;
DISNEYLAND CENTRAL PLANT;
DOW CHEMICAL COMPANY;
EATON CORPORATION; FHL
GROUP; FIRMENICH
INCORPORATED; FORENCO, INC.;
GAISER TOOL COMPANY;
GAMBRO, INC.; GATX TERMINALS
CORPORTION; GENERAL
DYNAMICS CORPORATION;
GEORGE INDUSTRIES; GOLDEN
WEST REFINING COMPANY;
GREAT WESTERN CHEMICAL
COMPANY; GSF ENERGY, L.L.C.
(successor to GSF ENERGY, INC.);
GULFSTREAM AEROSPACE
CORPORATION; HEXCEL
CORPORATION; HILTON HOTELS
CORPORATION; HITACHI HOME
ELECTRONICS (AMERICA), INC.;
BP AMERICA INC.; HONEYWELL
INTERNATIONAL INC.; HUBBEL
INC.; HUCK MANUFACTURING
COMPANY (by its former parent
Federal Mogul Corporation); HUGHES
SPACE AND COMMUNICATIONS
COMPANY; HUNTINGTON PARK
RUBBER STAMP COMPANY;
INTERNATIONAL RECTIFIER
CORPORAPTION; JAN-KENS
ENAMELING COMPANY; JOHNS
MANVILLE INTERNATIONAL,
INC.; K.C. PHOTO ENGRAVING
CO.; KESTER SOLDER DIVISION,
LITTON SYSTEMS, INC.;
KIMBERLY CLARK WORLDWIDE,
INC.; KOLMAR LABORATORIES,
INC.; LOMA LINDA UNIVERSITY;
BRITISH ALCAN ALUMINUM,
P.L.C.; MATTEL, INC.; MAXWELL
TECHNOLOGIES, INC.; THE MAY
DEPARTMENT STORES COMPANY
L.L.C.; McDONNELL DOUGLAS
CORPORATION  a wholley owned
subsidiary of the BOEING

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPANY; MEDEVA
PHARMACEUTICALS CA, INC.
(f/k/a MD PHARMACEUTICAL
INC.); MICO INC.; MINNESOTA
MINING AND MANUFACTURING
COMPANY; QUALITY CARRIERS
INC. (f/k/a MONTGOMERY TANK
LINES, INC.); NATIONAL
BROADCASTING COMPANY
(NBC); NCR CORPORATION (f/k/as
AT&T); NI INDUSTRIES (a division
of TRIMAS, a wholly owned subsidiary
of MASCO TECH); NMB
TECHNOLOGIES CORP.; OHLINE
CORP.; OJAI MANUFACTURING
TECHNOLOGY, INC.; SIEMENS
MEDICAL SYSTEMS, INC.;
PACIFIC BELL TELEPHONE
COMPANY; PACIFIC GAS &
ELECTRIC CO.; PIONEER VIDEO
MANUFACTURING INC.; PRINTED
CIRCUITS UNLIMITED; POLYONE
CORPORATION (formerly THE
GEON COMPANY); NELLCOR
PURITIAN-BENNETT L.L.C.;
LONZA INC.; QUALITY
FABRICATION, INC.; QUEST
DIAGNOSTICS CLINICAL
LABORATORIES, INC. (f/k/a BIO
SCIENCE ENTERPRISES; RATHON
CORP. (f/k/a DIVERSEY CORP.);
RATHEON COMPANY; REED &
GRAHAM, INC.; RICHHOLD INC.;
REMET CORPORATION;
RESINART CORP.; ROBINSON
PREZIOSO INC.; ROGERS
CORPORATION; SAFETY-KLEEN
SYSTEMS, INC. (f/k/a SAFETY-
LKEEN CORP.); SCRIPTO-TOKAI
CORPORATION; SHELL OIL
COMPANY; THE SHERWIN-
WILLIMAS COMPANY; SIERRACIN
CORPORATION; SIGMA CASTING
CORPORATION (now known as
HOWMET ALUMINUM CASTING,
INC.); SIGNET ARMORLITE, INC.;
SKYPARK MANUFACTURING, LLC
(formerly BURTIN URETHANE
CORPORATION); SOUTHERN
CALIFORNIA EDISON CO.;
SOUTHERN PACIFIC
TRANSPORTATION CO. (now known
as UNION PACIFIC RAILROAD
COMPANY); SPECIFIC PLATING
COMPANY INC.; HARSCO
CORPORATION; BHP COATED
STEEL CORP.; TELEDYNE
INDUSTRIES INC.; TELEDYNE

3

1  TECHNOLOGIES INCORPORATED; )
   TENSION ENVELOPE CORP; )
2  TEXACO INC.; TEXAS )
   INSTRUMENTS TUCSON )
3  CORPORATION (f/k/a BURR- )
   BROWN CORP.); TITAN )
4  COPRORATION; TODD PACIFIC )
   SHIPYARDS; TREASURE CHEST; )
5  PACIFIC PRECISION METALS, )
   INC.; UNION OIL COMPANY OF )
6  CALIFRONIA; UNITED PARCEL )
   SERVICE, INC.; UNIVERSAL CITY )
7  STUDIOS, INC.; VAN WATERS & )
   ROGERS INC. and VOPAK )
8  DISTRIBUTION AMERICAS )
   CORPORATION (f/k/a UNIVAR )
9  CORPORATION); VERTEX )
   MICROWAVE PRODUCTS, INC. )
10 (f/k/a GAMMA-F CORP.); WALT )
   DISNEY PICTURES AND )
11 TELEVISION; WARNER-LAMBERT )
   COMPANY; W&B MARKETING )
12 INC.; WEBER AIRCRAFT L.P.; )
   WESTERN METAL DECORATING )
13 CO. L.P.; YELLOW FREIGHT )
   SYSTEMS, INC.; YORK )
14 INTERNATIONAL CORPORATION; )
   YORT INC. (f/k/a TROY LIGHTING, )
15 INC. – TIFFANY DIVISION); )

16                    Defendants.

17  / / /

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

4

1  ANGELES CHEMICAL COMPANY, INC., a California corporation, JOHN

2  LOCKE, an individual, and GREVE FINANCIAL SERVICES, INC., a California

3  corporation (hereinafter collectively "Plaintiffs") allege as follows:

4  ## STATEMENT OF ACTION

5      1.    Plaintiffs bring this action against Defendants under CERCLA and

6  various other federal and state laws for the recovery of costs incurred and to be

7  incurred by Plaintiffs in connection with the site commonly known as 8915

8  Sorenson Avenue, Santa Fe Springs, California ("Plaintiffs' Site") in response to a

9  variety of claims and events, including but not limited to the following: (A) in

10  response to investigations by the United States Environmental Protections Agency

11  ("USEPA") regarding the Omega Chemical Superfund Site and Plaintiffs' Site; (B)

12  in response to the releases and threat of releases of hazardous substances onto and

13  from the real property commonly described as 12504 East Whittier Boulevard,

14  Whittier, California ("Omega Site") which have migrated onto Plaintiffs' Site and

15  into the Omega Plume as defined below; (C) in response to the releases and threat of

16  releases of hazardous substances onto and from various other properties within the

17  geographical area surrounding the Plaintiffs' Site; and (D) in response to the releases

18  and threat of releases of hazardous substances on, into and from the plume of deep

19  groundwater migrating from the Omega Site, and other sites, on, into, onto and

20  underneath the Plaintiffs' Site (among other sites) enveloping a large geographical

21  area of Santa Fe Springs and Whittier areas known as the Omega Plume ("Omega

22  Plume").

23  ## JURISDICTION AND VENUE

24      2.    This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 9607

25  (a)(4)(B) (CERCLA cost recovery) and 28 U.S.C. §1331 (federal question).  The

26  causes of action alleged herein arise under the Constitution, laws, or treaties of the

27  United States, or are supplemental thereto.

28      3.    The Plaintiffs' claims for relief arise in this district.  Venue is therefore

appropriate in this district under 42 U.S.C. § 9607 (a)(4)(B) and 28 U.S.C. § 391(b).

1     4.     This Court has jurisdiction over the state law claims for public

2 nuisance, private nuisance, trespass, declaratory relief, and equitable indemnity

3 under the doctrine of supplemental jurisdiction because these claims arise out of the

4 same nucleus of operative facts as the federal claims.

5               **PARTIES**

6              **PLAINTIFFS**

7     5.     Plaintiff, Angeles Chemical Company, Inc., a California corporation is,

8 and at all times relevant herein was, a California corporation doing business in the

9 County of Orange, California.

10     6.     Plaintiff, John Locke, is, and at all relevant times herein was, a resident

11 of the State of California.

12     7.     Plaintiff, Greve Financial Services, Inc., a California corporation is, and

13 at all times relevant herein was, a California corporation doing business in the

14 County of Los Angeles, California.

15     8.     Plaintiffs are, and at all times relevant hereto were, a "person" as that

16 term is defined in California Health and Safety Code § 25228; CERCLA § 101(21),

17 42 U.S.C. 9601(21); and SWDA § 1004(15), 42 U.S.C. 6903(15).

18     9.     Investigations are ongoing regarding the claims and the parties

19 responsible for damages, injuries and the costs as alleged therein.  The allegations of

20 this Complaint are made on information and belief and are based upon the

21 investigation conducted to date.  This Complaint will be amended or supplemented if

22 additional investigation or analysis so warrants.

23              **DEFENDANTS**

24     10.     Defendant, Omega Chemical PRP Group, LLC, a Delaware limited

25 liability company, is an LLC that has been licensed to do business in the State of

26 California.

27     11.     Defendant, Omega Chemical PRP Group, an unincorporated

28 association, is an association that has been licensed to do business in the State of

California.

12.     Defendants, McKesson Corporation, a California corporation, is a corporation that has been licensed to do business in the State of California, and is, and at all material times was the lessee, operator, or owner of the McKesson Site.

13.     Defendants, Harvey Sorkin, Seymour Moslin, Joseph Sorkin, all individuals, and The Estate of Paul Maslin, deceased, were prior owners of the McKesson Site and at all material times hereto were the owners or operators of the McKesson Site.

14.     Defendants, Robert Berg, Donna Berg, Pearl Rosenthal, all individuals, and The Estate of Arnold Rosenthal, deceased, were former owners of the Plaintiffs' Site and served as employees, officers, directors and/or shareholders of Plaintiff Angeles.

14.     At all times herein relevant, Defendant ABEX AEROSPACE DIVISION and PNEUMO-ABEX CORPORATION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

15.     At all times herein relevant, Defendant AIR PRODUCTS AND CHEMICALS, INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

16.     At all times herein relevant, Defendant ALCOA INC. was a corporation incorporated under the laws of the State of Pennsylvania, authorized to do business in the State of California.

17.     At all times herein relevant, Defendant ALLIEDSIGNAL, INC. (now known as HONEYWELL INTERNATIONAL, INC.) was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

18.     At all times herein relevant, Defendant ALPHA THERAPEUTIC CORPORATION was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

19.   At all times herein relevant, Defendant APPLIED MICRO CIRCUITS CORPORATION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

20.   At all times herein relevant, Defendant APPROPRIATE TECHNOLOGIES II, INC. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

21.   At all times herein relevant, Defendant ARLON ADHEVISES & FILM was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

22.   At all times herein relevant, Defendant ARMOR ALL PRODUCTS CORPORATION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

23.   At all times herein relevant, Defendant AVERY DENNISON CORPORATION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

24.   At all times herein relevant, Defendant BASF CORPORATION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

25.   At all times herein relevant, Defendant BAXTER HEALTHCARE CORPORATION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

26.   At all times herein relevant, Defendant BOEING NORTH AMERICAN, INC. was a corporation incorporated under the laws of the State of Delaware authorized to do business in the State of California.

27.   At all times herein relevant, Defendant BONANZA ALUMINUM CORP. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

1      28.     At all times herein relevant, Defendant BORDEN, INC. was a

2  corporation incorporated under the laws of the State of New Jersey, authorized to do

3  business in the State of California.

4      29.     At all times herein relevant, Defendant BOURNS, INC. was a

5  corporation incorporated under the laws of the State of California, authorized to do

6  business in the State of California.

7      30.     At all times herein relevant, Defendant BROADWAY STORES, INC.

8  was a corporation incorporated under the laws of the State of Delaware, authorized

9  to do business in the State of California.

10      31.     At all times herein relevant, Defendant CALSONIC CLIMATE

11  CONTROL, INC. (now known as CALSONIC NORTH AMERICA, INC.) was a

12  corporation incorporated under the laws of the State of Tennessee, authorized to do

13  business in the State of California.

14      32.     At all times herein relevant, Defendant CANON BUSINESS

15  MACHINES, INC. was a corporation incorporated under the laws of the State of

16  California, authorized to do business in the State of California.

17      33.     At all times herein relevant, Defendant INTERNATIONAL PAPER

18  COMPANY was a corporation incorporated under the laws of the State of New

19  York, authorized to do business in the State of California.

20      34.     At all times herein relevant, Defendant WASTE MANAGEMENT,

21  INC. was a corporation incorporated under the laws of the State of Delaware,

22  authorized to do business in the State of California.

23      35.     At all times herein relevant, Defendant UNITED DOMINION

24  INDUSTRIES was a corporation incorporated under the laws of the State of

25  California, authorized to do business in the State of California.

26      36.     At all times herein relevant, Defendant CROSBY & OVERTON, INC.

27  was a corporation incorporated under the laws of the State of California, authorized

28  to do business in the State of California.

9

37.    At all times herein relevant, Defendant DATATRONICS ROMOLAND, INC. was a corporation incorporated under the laws of the State of Nevada, authorized to do business in the State of California.

38.    At all times herein relevant, Defendant DEL MAR AVIONICS, INC. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

39.    At all times herein relevant, Defendant DEUTSCH ENGINEERED CONNECTING DEVICES/DEUTSCH GAV was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

40.    At all times herein relevant, Defendant DISNEYLAND CENTRAL PLANT was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

41.    At all times herein relevant, Defendant DOW CHEMICAL COMPANY was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

42.    At all times herein relevant, Defendant EATON CORPORATION was a corporation incorporated under the laws of the State of Ohio, authorized to do business in the State of California.

43.    At all times herein relevant, Defendant FHL GROUP was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

44.    At all times herein relevant, Defendant FIRMENICH INCORPORATED was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

45.    At all times herein relevant, Defendant FORENCO, INC. was a corporation incorporated under the laws of the State of Illinois, authorized to do business in the State of California.

46.     At all times herein relevant, Defendant GAISER TOOL COMPANY was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

47.     At all times herein relevant, Defendant GAMBRO, INC. was a corporation incorporated under the laws of the State of Colorado, authorized to do business in the State of California.

48.     At all times herein relevant, Defendant GATX TERMINALS CORPORTION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

49.     At all times herein relevant, Defendant GENERAL DYNAMICS CORPORATION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

50.     At all times herein relevant, Defendant GEORGE INDUSTRIES was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

51.     At all times herein relevant, Defendant GOLDEN WEST REFINING COMPANY was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

52.     At all times herein relevant, Defendant GREAT WESTERN CHEMICAL COMPANY was a corporation incorporated under the laws of the State of Washington, authorized to do business in the State of California.

53.     At all times herein relevant, Defendant GSF ENERGY, L.L.C. (successor to GSF ENERGY, INC.) was a limited liability company under the laws of the State of Delaware, authorized to do business in the State of California.

54.     At all times herein relevant, Defendant GULFSTREAM AEROSPACE CORPORATION was a corporation incorporated under the laws of the State of Georgia, authorized to do business in the State of California.

55.     At all times herein relevant, Defendant HEXCEL CORPORATION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

56.     At all times herein relevant, Defendant HILTON HOTELS CORPORATION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

57.     At all times herein relevant, Defendant HITACHI HOME ELECTRONICS (AMERICA), INC. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

58.     At all times herein relevant, Defendant BP AMERICA INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

59.     At all times herein relevant, Defendant HONEYWELL INTERNATIONAL INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

60.     At all times herein relevant, Defendant HUBBEL INC. was a corporation incorporated under the laws of the State of Connecticut, authorized to do business in the State of California.

61.     At all times herein relevant, Defendant HUCK MANUFACTURING COMPANY (by its former parent Federal Mogul Corporation) was a corporation incorporated under the laws of the State of Michigan, authorized to do business in the State of California.

62.     At all times herein relevant, Defendant HUGHES SPACE AND COMMUNICATIONS COMPANY was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

63.     At all times herein relevant, Defendant HUNTINGTON PARK RUBBER STAMP COMPANY was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

64.     At all times herein relevant, Defendant INTERNATIONAL RECTIFIER CORPORAPTION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

65.     At all times herein relevant, Defendant JAN-KENS ENAMELING COMPANY was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

66.     At all times herein relevant, Defendant JOHNS MANVILLE INTERNATIONAL, INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

67.     At all times herein relevant, Defendant K.C. PHOTO ENGRAVING CO. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

68.     At all times herein relevant, Defendant KESTER SOLDER DIVISION, LITTON SYSTEMS, INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

69.     At all times herein relevant, Defendant KIMBERLY CLARK WORLDWIDE, INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

70.     At all times herein relevant, Defendant KOLMAR LABORATORIES, INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

71.     At all times herein relevant, Defendant LOMA LINDA UNIVERSITY was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

72.     At all times herein relevant, Defendant BRITISH ALCAN ALUMINUM, P.L.C. was a public limited company under the laws of the State of California, authorized to do business in the State of California.

73.     At all times herein relevant, Defendant MATTEL, INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

74.     At all times herein relevant, Defendant MAXWELL TECHNOLOGIES, INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

75.     At all times herein relevant, Defendant THE MAY DEPARTMENT STORES COMPANY L.L.C. was a limited liability company under the laws of the State of New York, authorized to do business in the State of California.

76.     At all times herein relevant, Defendant McDONNELL DOUGLAS CORPORATION a wholly owned subsidiary of the BOEING COMPANY was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

77.     At all times herein relevant, Defendant MEDEVA PHARMACEUTICALS CA, INC. (f/k/a MD PHARMACEUTICAL INC.) was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

78.     At all times herein relevant, Defendant MICO INC. was a corporation incorporated under the laws of the State of Minnesota, authorized to do business in the State of California.

79.     At all times herein relevant, Defendant MINNESOTA MINING AND MANUFACTURING COMPANY was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

80.     At all times herein relevant, Defendant QUALITY CARRIERS INC. (f/k/a MONTGOMERY TANK LINES, INC.) was a corporation incorporated under the laws of the State of Illinois, authorized to do business in the State of California.

81.     At all times herein relevant, Defendant NATIONAL BROADCASTING COMPANY (NBC) was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

82.     At all times herein relevant, Defendant NCR CORPORATION (formerly AT&T) was a corporation incorporated under the laws of the State of Maryland, authorized to do business in the State of California.

83.     At all times herein relevant, Defendant NI INDUSTRIES (a division of TRIMAS, a wholly owned subsidary of MASCO TECH) was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

84.     At all times herein relevant, Defendant NMB TECHNOLOGIES CORP. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

85.     At all times herein relevant, Defendant OHLINE CORP. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

86.     At all times herein relevant, Defendant OJAI MANUFACTURING TECHNOLOGY, INC. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

87.     At all times herein relevant, Defendant SIEMENS MEDICAL SYSTEMS, INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

88.     At all times herein relevant, Defendant PACIFIC BELL TELEPHONE COMPANY was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

89.     At all times herein relevant, Defendant PACIFIC GAS & ELECTRIC CO. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

90.     At all times herein relevant, Defendant PIONEER VIDEO MANUFACTURING INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

15

91.     At all times herein relevant, Defendant POLYONE CORPORATION (formerly THE GEON COMPANY) was a corporation incorporated under the laws of the State of Ohio, authorized to do business in the State of California

92.     At all times herein relevant, Defendant PRINTED CIRCUITS UNLIMITED was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

93.     At all times herein relevant, Defendant NELLCOR PURITIAN-BENNETT L.L.C. was a limited liability company under the laws of the State of Delaware, authorized to do business in the State of California.

94.     At all times herein relevant, Defendant LONZA INC. was a corporation incorporated under the laws of the State of New York, authorized to do business in the State of California.

95.     At all times herein relevant, Defendant QUALITY FABRICATION INC. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California

96.     At all times herein relevant, Defendant QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC. (f/k/a BIO SCIENCE ENTERPRISES) was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

97.     At all times herein relevant, Defendant RATHON CORP. (f/k/a DIVERSEY CORP.) was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

98.     At all times herein relevant, Defendant RATHEON COMPANY was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

99.     At all times herein relevant, Defendant REED & GRAHAM INC. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

1    100.    At all times herein relevant, Defendant REICHHOLD INC. was a
2    corporation incorporated under the laws of the State of Delaware, authorized to do
3    business in the State of California.

4    101.    At all times herein relevant, Defendant REMET CORPORATION was
5    a corporation incorporated under the laws of the State of California, authorized to do
6    business in the State of California.

7    102.    At all times herein relevant, Defendant RESINART CORP. was a
8    corporation incorporated under the laws of the State of California, authorized to do
9    business in the State of California.

10    103.    At all times herein relevant, Defendant ROBINSON PREZIOSO INC.
11    was a corporation incorporated under the laws of the State of California, authorized
12    to do business in the State of California.

13    104.    At all times herein relevant, Defendant ROGERS CORPORATION was
14    a corporation incorporated under the laws of the State of Massachusetts, authorized
15    to do business in the State of California.

16    105.    At all times herein relevant, Defendant SAFETY-KLEEN SYSTEMS,
17    INC. (f/k/a SAFETY-LKEEN CORP.) was a corporation incorporated under the
18    laws of the State of Wisconsin, authorized to do business in the State of California.

19    106.    At all times herein relevant, Defendant SCRIPTO-TOKAI
20    CORPORATION was a corporation incorporated under the laws of the State of
21    Delaware, authorized to do business in the State of California.

22    107.    At all times herein relevant, Defendant SHELL OIL COMPANY was a
23    corporation incorporated under the laws of the State of Delaware, authorized to do
24    business in the State of California.

25    108.    At all times herein relevant, Defendant THE SHERWIN-WILLIMAS
26    COMPANY was a corporation incorporated under the laws of the State of Ohio,
27    authorized to do business in the State of California.

28

1       109.    At all times herein relevant, Defendant SIERRACIN CORPORATION

2   was a corporation incorporated under the laws of the State of Delaware, authorized

3   to do business in the State of California.

4       110.    At all times herein relevant, Defendant SIGMA CASTING

5   CORPORATION (now known as HOWMET ALUMINUM CASTING, INC.) was a

6   corporation incorporated under the laws of the State of Delaware, authorized to do

7   business in the State of California.

8       111.    At all times herein relevant, Defendant SIGNET ARMORLITE, INC.

9   was a corporation incorporated under the laws of the State of Delaware, authorized

10  to do business in the State of California.

11      112.    At all times herein relevant, Defendant SKYPARK

12  MANUFACTURING, L.L.C. (formerly BURTIN URETHANE CORPORATION)

13  was a limited liability company under the laws of the State of California, authorized

14  to do business in the State of California.

15      113.    At all times herein relevant, Defendant SOUTHERN CALIFORNIA

16  EDISON CO. was a corporation incorporated under the laws of the State of

17  California, authorized to do business in the State of California.

18      114.    At all times herein relevant, Defendant SOUTHERN PACIFIC

19  TRANSPORTATION CO. (now known as UNION PACIFIC RAILROAD

20  COMPANY) was a corporation incorporated under the laws of the State of

21  Delaware, authorized to do business in the State of California.

22      115.    At all times herein relevant, Defendant SPECIFIC PLATING

23  COMPANY INC. was a corporation incorporated under the laws of the State of

24  California, authorized to do business in the State of California.

25      116.    At all times herein relevant, Defendant HARSCO CORPORATION

26  was a corporation incorporated under the laws of the State of Delaware, authorized

27  to do business in the State of California.

28

117.     At all times herein relevant, Defendant BHP COATED STEEL CORP. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

118.     At all times herein relevant, Defendant TELEDYNE INDUSTRIES INC. was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

119.     At all times herein relevant, Defendant TELEDYNE TECHNOLOGIES INCORPORATED was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

120.     At all times herein relevant, Defendant TENSION ENVELOPE CORP. was a corporation incorporated under the laws of the State of New York, authorized to do business in the State of California.

121.     At all times herein relevant, Defendant TEXACO INC. was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

122.     At all times herein relevant, Defendant TEXAS INSTRUMENTS TUCSON CORPORATION (f/k/a BURR-BROWN CORP.) was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

123.     At all times herein relevant, Defendant TITAN COPRORATION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

124.     At all times herein relevant, Defendant TODD PACIFIC SHIPYARDS was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

125.     At all times herein relevant, Defendant TREASURE CHEST was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

1      126.    At all times herein relevant, Defendant PACIFIC PRECISION

2   METALS, INC. was a corporation incorporated under the laws of the State of

3   Delaware, authorized to do business in the State of California.

4      127.    At all times herein relevant, Defendant UNION OIL COMPANY OF

5   CALIFRONIA was a corporation incorporated under the laws of the State of

6   California, authorized to do business in the State of California.

7      128.    At all times herein relevant, Defendant UNITED PARCEL SERVICE,

8   INC. was a corporation incorporated under the laws of the State of Ohio, authorized

9   to do business in the State of California.

10      129.    At all times herein relevant, Defendant UNIVERSAL CITY STUDIOS,

11   INC. was a corporation incorporated under the laws of the State of Delaware,

12   authorized to do business in the State of California.

13      130.    At all times herein relevant, Defendant VAN WATERS & ROGERS

14   INC. and VOPAK DISTRIBUTION AMERICAS CORPORATION (f/k/a UNIVAR

15   CORPORATION) was a corporation incorporated under the laws of the State of

16   Washington, authorized to do business in the State of California.

17      131.    At all times herein relevant, Defendant VERTEX MICROWAVE

18   PRODUCTS, INC. (f/k/a GAMMA-F CORP.) was a corporation incorporated under

19   the laws of the State of Nevada, authorized to do business in the State of California.

20      132.    At all times herein relevant, Defendant WALT DISNEY PICTURES

21   AND TELEVISION was a corporation incorporated under the laws of the State of

22   California, authorized to do business in the State of California.

23      133.    At all times herein relevant, Defendant WARNER-LAMBERT

24   COMPANY was a corporation incorporated under the laws of the State of Delaware,

25   authorized to do business in the State of California.

26      134.    At all times herein relevant, Defendant W&B MARKETING INC. was

27   a corporation incorporated under the laws of the State of Delaware, authorized to do

28   business in the State of California.

135.    At all times herein relevant, Defendant WEBER AIRCRAFT L.P. was a limited partnership under the laws of the State of Delaware, authorized to do business in the State of California.

136.    At all times herein relevant, Defendant WESTERN METAL DECORATING CO., L.P. was a limited partnership under the laws of the State of California, authorized to do business in the State of California.

137.    At all times herein relevant, Defendant YELLOW FREIGHT SYSTEMS INC. was a corporation incorporated under the laws of the State of Indiana, authorized to do business in the State of California.

138.    At all times herein relevant, Defendant YORK INTERNATIONAL CORPORATION was a corporation incorporated under the laws of the State of Delaware, authorized to do business in the State of California.

139.    At all times herein relevant, Defendant YORT INC. (f/k/a TROY LIGHTING, INC. – TIFFANY DIVISION) was a corporation incorporated under the laws of the State of California, authorized to do business in the State of California.

140.    Plaintiffs are informed and believe and on that basis allege that at all relevant times, the Defendants, and each of them, were the partners, joint venturers, agents, employees, fiduciaries, servants and successors of each of the other remaining defendants, or a potentially responsible party within the meaning of 42 U.S.C. § 9607(a)(1)-(4), and at all relevant times were acting within the full course and scope of their authority, agency, employment, authorization and/or succession.

141.    Plaintiffs allege on information and belief that at all times herein relevant, each Defendant was the agent, employee, representative, and/or co-partner of each of the other Defendant; acted in the course and scope of his or her agency, employment, representation, or partnership; and acted in concert with such other Defendant to perform the acts or omission alleged herein, or ratified or approved the acts of the others.

1    142.    Plaintiffs are informed and believe and on that basis allege that

2  Defendants did, throughout their possession, transport hazardous substances and

3  wastes, deliver hazardous substances and wastes, and were responsible for the

4  process, purchase and storage, transport, handling, use, and treatment of such

5  hazardous substances.  Defendants released and disposed of substantial quantities of

6  hazardous substances and wastes into the environment.

7                              **DEFINITIONS**

8    143.    Disposal or Dispose: As used in this Complaint, the term "Disposal" or

9  "Dispose" shall have the meaning set forth in SWDA § 1004 (3), 42 U.S.C. 6903(3):

10           [t]he discharge, deposit, injection, dumping, spilling,
             leaking or placing of any solid waste or hazardous waste
11           into or on any land or water so that such waste or
             hazardous waste or any constituent thereof may enter the
12           environment or be emitted into the air or discharged into
             any waters, including ground waters.

13

14    144.    Environment: As used in this Complaint, the term "Environment" shall

15  have the meaning set forth in CERCLA § 101(8), 42 U.S.C. § 9601(8):

16           (A) the navigable waters, the waters of the contiguous
             zone, and the ocean waters for which the natural resources
             are under the exclusive management authority of the
17           United States ... and (B) any other surface water, ground
             water, drinking water supply, land surface or subsurface
18           strata, or ambient air within the United States or under the
             jurisdiction of the United States.

19

20    145.    Facility: As used in this Complaint, the term "Facility" shall have the

21  meaning set forth in CERCLA § 101(9), 42 U.S.C. § 9601(9):

22           (A) any building, structure, installation, equipment, pipe or
             pipeline (including any pipe into a sewer or publicly
             owned treatment works) well, pit, pond, lagoon,
23           impoundment, ditch, landfill, storage container, motor
             vehicle, rolling stock or aircraft or (B) any Site or area
24           where a hazardous substance has been deposited , disposed
             of, or placed, or otherwise come to be located

25

26    146.    Hazardous Substance: As used in this Complaint, the term "Hazardous

27  Substance" shall have the meaning set forth in CERCLA § 101(14)(B), 42 U.S.C. §

28  9601(14)(B) and CERCLA § 101(14)(C), 42 U.S.C. § 9601(14) (C), as listed by the

1  USEPA at 40 C.F.R. § 302.4 pursuant to its authority under CERCLA § 102. 42

2  U.S.C. § 9602 and applicable state law.

3      147.    Hazardous Waste: As used in this Complaint, the term "Hazardous

4  Waste" shall have the meaning set forth in SWDA § 1004(5), 42 U.S.C. § 6905(5):

5

6      [a]ny solid waste, or combination of solid wastes, which
        because of its quantity, concentration, or physical chemical
        or infectious characteristics may -
7

8          **(A)** cause or significantly contribute to an increase in
            mortality or any increase in serious irreversible, or
            incapacitating reversible illness; or
9

10          **(B)** pose a substantial present or potential hazard to
            human health or the environment when improperly treated,
            stored, transported, or disposed of, or otherwise managed.
11

12  Hazardous Waste shall also include the definition of Hazardous Waste as defined by

13  applicable state law and "Solid Waste" as set forth under SWDA § 1004(27), 42

14  U.S.C. § 6903(27), and applicable state law.

15      148.    National Contingency Plan: As used in this Complaint, the term

16  "National Contingency Plan" ("NCP") means the National Oil and Hazardous

17  Substance Pollution Contingency Plan as set forth in 40 C.F.R. Part 300; the

18  Congressionally-mandated plan developed by the EPA that delineates the required

19  procedures for investigating, analyzing remedial alternatives, responding to, and

20  abating the adverse effects of Releases of Hazardous Substances into the

21  Environment.

22      149.    Property:  As used in this Complaint, the term "Plaintiffs' Site" refers to

23  real property commonly referred to as 8915 Sorenson Avenue, Santa Fe Springs,

24  California.

25  / / /

26  / / /

27  / / /

28  / / /

23

150.   Release:   As used in this Complaint, the term "Release" shall have the meaning set forth in CERCLA § 101(22), 42 U.S.C. § 9601(22):

> [a]ny spill, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment (including the abandonment or discharging of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant).

151.   Response Cost(s): As used in this Complaint, the term "Response Costs" means the costs of "removal" and "remedial actions" of Hazardous Substances and/or Hazardous Wastes, as those terms are defined in CERCLA § 101(23) and (24), 42 U.S.C. § 9601(23) and (24), all other costs to respond to Releases of Hazardous Substances, as defined in CERCLA § 101(25), 42 U.S.C. § 9601(25).  Such costs include, but are not limited to, costs incurred to monitor, assess and evaluate the Release of Hazardous Substances and/or Hazardous Waste as well as costs of removal and Disposal of the Hazardous Substance and/or Hazardous Waste.  Such costs also include those incurred in actions to permanently remedy the Release of Hazardous Substances and/or Hazardous Waste, including, but not limited to (1) the storage, confinement, cleanup of Hazardous Substances or Hazardous Waste, (2) the recycling or reuse, diversion, destruction or segregation of reactive wastes, (3) the dredging or excavation, repair or replacement of leaking containers, and (4) any other such action necessary to protect public health, welfare and the Environment.  The term "Response Cost" also means any costs and attorneys' fees incurred in enforcing either removal or remedial actions or CERCLA's scheme for liability, compensation and cost-recovery, set forth in CERCLA § 102(25), 42 U.S.C. § 9601(25).

152.   "Malice" and/or "malicious" means conduct which is intended by the defendant to cause injury to the plaintiff, or despicable conduct carried on by the defendant with a willful and conscious disregard of the rights or safety of others.

1    153.    "Oppression" or "oppressive" means despicable conduct that subjects a

2  person to cruel and unjust hardship in conscious disregard of that person's rights.

3    154.    "Fraud" or "fraudulent" means an intentional misrepresentation, deceit,

4  or concealment of a material fact known to the defendant.  In addition, proof of fraud

5  requires a showing that the defendant intended to deprive a person of property or

6  legal rights, or cause some other injury.

7                        **GENERAL ALLEGATIONS**

8    155.    The Omega Chemical Corporation operated a spent solvent and

9  refrigerant recycling and treatment facility from approximately 1976 through 1991 at

10  the Omega Site, approximately 1.5 miles upgradient from the Plaintiffs' Site.

11  During Omega Chemical Corporation's years of operations, drums and bulk loads of

12  waste solvent, chemicals and hazardous materials from various industrial activities

13  and generators were processed at the Omega Site and other activities occurred

14  respecting hazardous substances received at the Omega Site.

15    155.    The USEPA issued Unilateral Administrative Order 95-15 ("UAO") on

16  May 9, 1995, and amended the same in September 1995.  Among other things, the

17  UAO required the removal of various containers of materials, drums of hazardous

18  waste and decommissioning of certain equipment at the Omega Site.  The second

19  portion of the UAO required investigation of the extent of soil and groundwater

20  contamination at, or from, the Omega Site.

21    156.    On January 9, 1999, pursuant to CERCLA § 105, 42 U.S.C. § 9605, the

22  USEPA placed the Omega Site on the National Priorities List, set forth at 40 C.F.R.,

23  Part 300, Appendix B.  64 Red. Reg. 2950.

24    157.    On or about April 1, 1999, the USEPA issued special notice letters to a

25  group of potentially responsible parties, including assignors to Defendant Omega

26  Chemical LLC and members of the Defendant Omega Chemical PRP Group, an

27  unincorporated association ("OPOG") in connection with the Omega Site.

28    158.    On February 28, 2001, the USEPA and many of the Defendants entered

into a Partial Consent Decree for work on the Omega Site.  *United States of America*

1   *v. Abex Aerospace Division,* et al. U.S.D.C. (Central District – CA, Western Div.)

2   CV-00-012471.

3       159.    The USEPA on its website has characterized the Omega Plume as

4   contributing to soil and groundwater contamination with various volatile organic

5   compounds (VOCs), including most prevalently perchloroethylene (PCE),

6   trichloroethylene (TCE), Freon 11 and Freon 113, which most notably encompass

7   the Plaintiffs' Site, the Omega Site, the McKesson Site (defined below) and various

8   other sites.

9       160.    Starting on or about 1976-77, Angeles Chemical Company, Inc.

10  ("Angeles") began operating a chemical supplier business at Plaintiffs' Site,

11  approximately 1.5 miles downgradient from the Omega Site.  Mr. John Locke served

12  Angeles as a shareholder, officer, director and employee of Angeles.

13  156. In February 2001, Angeles sold the Plaintiffs' Site to Greve Financial Services,

14  Inc. ("Greve").

15      161.    On or about August 9, 2007, Plaintiffs and each of them received a

16  General Notice Letter from the USEPA naming them as potentially responsible

17  parties ("PRPs") in connection with the investigation of the Omega Chemical

18  Corporation Superfund Site, including the areal extent (i.e. plume) of contaminated

19  groundwater emanating from the Omega Site – commonly known as the Omega

20  Plume.  All Defendants have also received similar PRP letters from the USEPA

21  regarding the Omega Chemical Superfund Site investigation, including

22  contamination to the Omega Site and the Omega Plume.

23      162.    Adjacent to the Plaintiffs' Site, located at 9000 Sorenson Avenue, Santa

24  Fe Springs, California, and completely within the Omega Plume, is a property

25  ("McKesson Site") leased and/or owned by McKesson Chemical Company, a

26  division of McKesson Corporation, and/or McKesson Corporation ("McKesson") at

27  all relevant times herein.

28

163.   Harvey Sorkin, Seymour Moslin, and the Estate of Paul Maslin were owners of the McKesson Site at all times relevant in this Complaint ("Sorkin Parties").

164.   Plaintiffs allege that McKesson and the Sorkin Parties have contaminated the McKesson Site, the Plaintiffs Site and the Omega Plume.

165.   At all material times, Plaintiffs have suffered business losses, loss of real estate value, and incurred unnecessary testing and response costs as a result of Defendants' contamination of Plaintiffs' Site, the Omega Site, the McKesson Site and the Omega Plume.

166.   Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, beginning in the mid-1970's, owned and/or operated on one or more sites upon which Hazardous Substances were Released, and/or transported, handled, and/or generated Hazardous Substances that were Released, and have migrated on or into the Plaintiffs' Site, including the soils and groundwater, and also the Omega Plume.

167.   The Hazardous Substances Released through sudden and accidental spills and/or other Releases included chlorinated hydrocarbon compounds, and VOCs, that have been Released into the Omega Plume and on and into the Plaintiffs' Site.

168.   The Hazardous Substances Released by Defendants have caused and contributed to contamination of soil and groundwater underlying the Plaintiffs' Site, surrounding properties, and the Omega Plume.

169.   Plaintiffs have incurred costs and expenses to test, sample, characterize, and remediate the Hazardous Substances released by Defendants in the soil and groundwater.

170.   The Plaintiffs seek declarations by this Court under all relevant federal and state laws that Defendants are:

1    (1) jointly and severally liable for the presence of hazardous substances

2    contamination at the Omega Site, Plaintiffs' Site, McKesson Site, and in the Omega

3    Plume; and

4    (2) jointly and severally liable for general damages and all costs or

5    expenses, including attorneys' fees, necessary to respond to the release and threat of

6    release of hazardous substances onto and from the Omega Site, Plaintiffs' Site,

7    McKesson Site, and the Omega Plume; and

8    (3)  must reimburse the Plaintiffs for all costs or expenses, including

9    attorneys' fees, that they have incurred and will incur for the testing, investigation,

10   abatement, remediation and removal of hazardous substances contamination from the

11   structures, soils, subsoils, surface water, and groundwater at and in the vicinity of the

12   Plaintiffs' Site, Omega Site, McKesson Site and the Omega Plume.

13   171.    The grounds for such declaratory relief are that Plaintiffs currently own

14   and/or operated property adjacent to the McKesson Site, Omega Site, and enveloped

15   by the Omega Plume, and Defendants owned and/or operated on the McKesson Site,

16   Omega Site or one or more facilities which generated the hazardous substances or

17   wastes that were disposed of or released, at or near the McKesson Site, Omega Site,

18   or Omega Plume, or transported, generated and/or arranged for the disposal of

19   hazardous substances, at or near the Omega Site, McKesson Site and/or Omega

20   Plume that resulted in both onsite and offsite soil and groundwater contamination to

21   the Plaintiffs' Site, Omega Site, McKesson Site, and Omega Plume.

22   172.    Plaintiffs are informed and believe, and thereon allege, that Defendants

23   caused contamination and pollution of the structures, soil, subsoil, surface water and

24   groundwater at and in the vicinity of the Plaintiffs' Site, Omega Site, McKesson Site

25   and the Omega Plume through the negligent, improper, illegal and unreasonable

26   transport, generation, handling, usage, storage, disposal and/or release of hazardous

27   substances, hazardous wastes, VOCs and petroleum hydrocarbons waste and

28   products.

28

173.    Plaintiffs are informed and believe that, at all material times, Defendants through various spills and Releases, the handling of various chemicals, Releases from tankers, trucks and trailers, the rinsing of drums, leaking underground storage tanks and disposal of chemicals and hazardous substances released millions of gallons of hazardous substances into the environment, including the Plaintiffs' Site, Omega Site, McKesson Site and the Omega Plume, among other adjacent properties.  The Releases of Hazardous Substances caused and continues to cause contamination to Plaintiffs' Site and underlying soil and groundwater through the migration of hazardous substances on the surface, through the vadose zone, and in the groundwater.

174.    Plaintiffs are informed and believe and thereon allege that, at all material times, Defendants negligently, oppressively, fraudulently, maliciously, recklessly and/or intentionally caused soil and groundwater contamination. Defendants released and dumped chemicals into the environment negligently, oppressively, fraudulently, maliciously, recklessly and/or intentionally knowing or being aware of the fat the chemical they were dumping would or may cause contamination to soil, groundwater and surrounding properties.  Defendants negligently, oppressively, fraudulently, maliciously, recklessly and/or intentionally concealed the nature and extent of the releases and the extent of the contamination.

175.    At all times mentioned, Defendants knew of their release of hazardous chemicals created an unreasonably dangerous condition.  Despite such knowledge, Defendants willfully and recklessly, in conscious disregard of the rights and safety of Plaintiffs, the public, its customers and employees, continued to release hazardous substances, concealed the release of hazardous substances, concealed the nature and extent of the release of hazardous substances, and failed to take corrective action to repair the damage caused by the releases.  At all times mentioned, Defendants conduct in committing the releases, concealing the facts and failing to take corrective action of the damage and contamination caused by its conduct was intended by Defendants to cause injury to Plaintiffs, the public and the environment, or the

29

1 | despicable conduct was carried on by the Defendants with a willful and conscious
2 | disregard of the rights and safety of others.  At all times mention, Defendants'
3 | despicable conduct subjected Plaintiffs to cruel and unjust hardship in conscious
4 | disregard of Plaintiffs' and others' rights.  At all times mention, Defendants' conduct
5 | in covering up the nature, extent and cause of the underlying contamination
6 | amounted to intentional misrepresentations, deceit, or concealment of material facts
7 | known to Defendants.

8 |      176.    Plaintiff Greve is informed and believes, and on that basis alleges that
9 | Robert Berg, Donna Berg, Pearl Rosenthal and the Estate of Arnold Rosenthal
10 | (collectively, the "Berg Defendants") were former owners of the Plaintiffs' Site and
11 | were former employees, officers, directors and/or shareholders of Angeles and
12 | participated in the management, control and operation of Angeles, including the use,
13 | handling and release of petroleum hydrocarbons and hazardous waste on the
14 | Plaintiffs' Site.

15 |      177.    Plaintiffs have provided notice under RCRA and will be filing an
16 | amended complaint including RCRA claims after the notice requirement has been
17 | satisfied.

18 | **FIRST CLAIM FOR RELIEF**
19 | **(Recovery of Response Costs)**
20 | **(Pursuant to CERCLA §§ 107(a)(1-4)(B) - Plaintiffs against all Defendants)**

21 |      178.    Plaintiffs refer to and reallege paragraphs 1 through 177 of this
22 | Complaint and incorporate them herein by reference.

23 |      179.    Pursuant to the provisions of CERCLA, 42 U.S.C §§ 9601-9675,
24 | Defendants, as prior owners and/or operators of the Omega Site, Plaintiffs' Site,
25 | and/or McKesson Site from which Hazardous Substances were released, and as
26 | transporters, handlers, generators, users, disposers, releasors or storers, are liable for
27 | Response Costs appropriate to the Plaintiffs' Site, Omega Site, McKesson Site,
28 | Omega Plume and surrounding properties, and to reimburse the United States or the
State of California if either undertakes such activity.

180.   Plaintiffs, who are "persons" as defined in CERCLA § 101(21), 42 U.S.C. § 9601(21), and SWDA § 1004(15), 42 U.S.C. § 9603(15), have been and currently remain engaged in conducting studies and other activities designed to develop an appropriate response plan for removal and/or remedial action with regard to the Release of Hazardous Substances.  Plaintiffs have incurred, and will continue to incur, substantial Response Costs to be determined according to proof at trial.  To date, Plaintiffs have incurred Response Costs to fully characterize the Plaintiffs' Site, including, but not limited to, soil sampling; installation of groundwater monitoring wells; sampling such wells and having all samples analyzed; drilling soil borings in order to define the groundwater configuration, contamination and flow direction all of which is designed to provide adequate information for a feasibility study of remedial alternatives.  In addition, Plaintiffs will incur an as yet undetermined amount to address existing and future groundwater issues.  All such Response Costs incurred and that will be incurred have been and will continue to be necessary and consistent with the NCP.

181.   Each Defendant did, over extended periods of time, generate, transport, handle, use, store, dispose of, release and/or cause the Disposal of Hazardous Substances directly into the Environment and/or in such other manner at the Plaintiffs' Site, Omega Site, McKesson Site and/or Omega Plume, so as to cause the Release or exacerbation of the release of Hazardous Substances into the Environment.

182.   Each establishment owned and/or operated by each Defendant was, and is a Facility.

183.   At relevant times, each Defendant was the operator of its respective facility because each Defendant exercised control over and managed its establishment, and determined and implemented the policies and procedures by which its establishment operated.

1   184.    Each Defendant is a "person" as that term is defined in CERCLA § 101

2   (21), 42 U.S.C. § 9601 (21), and SWDA § 1004(15), 42 U.S.C. § 9603(15), who

3   operated its establishment at the time waste were Disposed of at and from its Facility.

4   185.    Each Defendant was, and is, the owner and/or operator of its respective

5   facility.

6   186.    At all relevant times herein, there were Releases of Hazardous

7   Substances from Defendants Facilities located at or adjacent to the Plaintiffs' Site,

8   Omega Site, McKesson Site and/or Omega Plume.

9   187.    The Releases of Hazardous Substances from the Defendants caused and

10  continue to cause Plaintiffs to incur Response Costs on Plaintiffs' Site and for the

11  underlying groundwater, including the Omega Plume, and for off-site contamination

12  down gradient from Plaintiffs Site, including but not limited to the McKesson Site.

13  Plaintiffs have not caused any release to the deeper groundwater underlying

14  Plaintiffs' Site.

15  188.    Pursuant to 42 U.S.C. § 9707(a), Defendants, and each of them, are

16  jointly and severally liable to Plaintiffs for all necessary Response Costs incurred by

17  Plaintiffs in responding to the Release of Hazardous Substances.

18                          **SECOND CLAIM FOR RELIEF**

19          **(Declaratory Relief Under Federal Law - Against All Defendants)**

20  189.    Plaintiffs refer to and reallege paragraphs 1 through 188 of this

21  Complaint and incorporate them by reference.

22  190.    A dispute has arisen and an actual controversy exists between Plaintiffs

23  and Defendants in that Plaintiffs claim that Defendants, and each of them, jointly and

24  severally, are obligated to indemnify Plaintiffs against and reimburse Plaintiffs for,

25  all necessary Response Costs and any other costs and attorneys' fees, past or future,

26  incurred by Plaintiffs in responding to the released and/or threatened release of

27  Hazardous Substances and/or Hazardous Waste or taking any other removal or

28  remedial action as a result of Defendants' acts and conduct.

32

191.   Substantial costs will be incurred by Plaintiffs over time and after conclusion of this action.  Unless declaratory relief is granted, it will be necessary for Plaintiffs to commence many successive actions against Defendants, and each of them, to secure compensation for the costs incurred and damages sustained, thus requiring a multiplicity of suits.

192.   Plaintiffs are entitled to and hereby seek a declaratory judgment, pursuant to CERCLA § 107, 42 U.S.C. § 9607, of Defendants' liability to Plaintiffs for all Response Costs incurred or to be incurred by Plaintiffs in implementing the remedial action plan for responding to the Releases of Hazardous Substances and/or Hazardous Waste and adverse environmental consequences at issue.

193.   Plaintiffs are entitled to and hereby seek a declaratory judgment, pursuant to SWDA § 1002, 42 U.S.C. § 6972, of Defendants' liability to Plaintiffs for all Response Costs incurred or to be incurred by Plaintiffs in removing and/or remediating Plaintiffs' Site due to the Release of Hazardous Substances and/or Hazardous Waste which pose an immediate and substantial endangerment to health and the environment.

194.   The Plaintiffs are entitled to, and hereby seek, a judicial determination pursuant to the Federal Declaratory Relief Act, 28 U.S.C. § 2201, of Plaintiffs' right to reimbursement from and indemnification by  Defendants, and each of them, for all costs, jointly and severally, which Plaintiffs may incur resulting from Defendants Release of Hazardous Substances and/or Hazardous Waste into the Environment.

## THIRD CLAIM FOR RELIEF

### (For Public and Private Nuisance-Plaintiffs Against All Defendants)

195.   Plaintiffs reallege and incorporate by this reference paragraphs 1 through 194 of this Complaint.

196.   Defendants' tortious and unlawful actions and omissions constitute an unreasonable use of the Plaintiffs' Site, Omega Site, McKesson Site, and/or Omega Plume and have caused a condition that is injurious to the health and offensive to the

33

1  senses, and which was and is an obstruction of the free use of Plaintiffs' Site, so as to
2  interfere with Plaintiffs' comfortable use and enjoyment of the  property.

3      197.    Defendants' acts and omissions have created or assisted in the creation
4  of a continuing nuisance which continues to damage the property and the Plaintiffs
5  on a daily basis.  Each actual and/or threatened Release and migration of the
6  contamination gives rise to a new CLAIM FOR RELIEF until such time as the
7  contamination is completely remediated.

8      198.    The nuisance is specifically injurious to Plaintiffs and any damages and
9  injuries resulting from it are different in type and effect than any damages and
10  injuries to the entire community or neighborhood.

11      199.    The nuisance has caused and will continue to cause special injuries to
12  the Plaintiffs to the extent Plaintiffs incurred or will continue to incur expenses to
13  investigate, assess or monitor, remove, remediate and abate the nuisance, and to the
14  extent the nuisance has injured the subject property.

15      200.    Plaintiffs have requested and continue to seek to have Defendants, and
16  each of them, abate the nuisance, but Defendants have failed to abate the nuisance
17  and it continues to exist.

18      201.    If the nuisance is not abated, Plaintiffs will suffer irreparable harm and
19  injury.  Any hardship imposed on Defendants in abating the nuisance will not be
20  disproportionate to the hardship Plaintiffs have suffered and will continue to suffer as
21  a result of the nuisance.

22      202.    Plaintiffs are informed and believe and on that basis allege that the
23  contamination caused by Defendants' actions and inactions, and each of them, may
24  be subjecting adjacent and nearby properties and owners and residents to damage and
25  injury.  Defendants' failure to timely abate the nuisance and contamination will
26  increase the damage and injury to the Plaintiffs' Site and to adjacent properties, as
27  well as cause potential damage and injury to the groundwater beneath the properties,
28  including the Omega Plume.

203.    As a direct, proximate and foreseeable result of the acts and omissions of Defendants, and each of them, Plaintiffs have suffered general, consequential and compensatory damages in amounts that are not yet fully ascertained.  These damages include, but are not limited to the following:

a. Damage to the soil and groundwater on their property;

b. Damage for the loss of use of their property and particularly during the assessment and remediation period; and

c.   Any and all amounts Plaintiffs have incurred or will incur for the investigation, assessment, monitoring, removal and remediation of the contamination.  These amounts are in excess of the minimum jurisdictional amounts of this Court and will be established according to proof at the time of trial.

204.    Plaintiffs hereby request that a mandatory and/or prohibitory injunction be issued, requiring said Defendants to enjoin and also abate the nuisance and/or to perform such investigation, assessment, monitoring, removal and remediation, and if necessary to abate the nuisance.  The public also continues to be endangered by Defendants' releases and continuing releases as described herein.  Plaintiffs' would request a preliminary and permanent injunction restraining Defendants' continued endangerment of the public.

205.    Moreover, as Defendants' conduct was and continues to be negligent, oppressive, reckless, malicious, fraudulent, intentional and/or illegal, Plaintiffs, and each of them, are entitled to punitive damages and/or exemplary damages to the extent that they are an available remedy under the law.

## FOURTH CLAIM FOR RELIEF

### (For Trespass-Plaintiffs Against All Defendants)

206.    Plaintiffs reallege and incorporate by this reference paragraphs 1 through 205 of this Complaint.

207.   The Release of Hazardous Substances and/or Hazardous Waste, the resulting contamination and the continued migration of such Hazardous Substances and/or Hazardous Waste has constituted and continues to constitute a continuing unauthorized trespass onto the Plaintiffs' Site in violation of Plaintiffs' rights.

208.   Plaintiffs are informed and believe and on that basis allege that Defendants, and each of them, acted intentionally in undertaking the conduct that caused the trespass in failing to abate the trespass, and in allowing the trespass to continue.

209.   Plaintiffs have requested and continue to seek to have Defendants, and each of them, abate and discontinue the trespass, but Defendants have failed to do so and the trespass continues to exist.

210.   If the trespass is not abated and discontinued, Plaintiffs will suffer irreparable harm and injury.  Any hardship imposed on Defendants in abating and discontinuing the trespass will not be disproportionate to the hardship Plaintiffs have suffered and will continue to suffer as a result of the trespass.

211.   As a direct, proximate and foreseeable result of the acts and omissions of Defendants, and each of them, Plaintiffs have suffered general, consequential and compensatory damages in amounts that are not yet fully ascertained.  These damages include, but are not limited to the following:

      a.   Damage to the soil and groundwater on the subject property;

      b.   Damage for the loss of use of the Plaintiffs' Site and particularly during the assessment and remediation period; and

      c.   Any and all amounts Plaintiffs have incurred or will incur for the investigation, assessment, monitoring, removal and remediation of the contamination.  These amounts are in excess of the minimum jurisdictional

1        amounts of this court and will be established according to

2        proof at the time of trial.

3        212.    Plaintiffs hereby request that a mandatory and/or prohibitory injunction

4    be issued, requiring Defendants, and each of them, to abate the nuisance and/or to

5    perform such investigation, assessment, monitoring, removal and remediation, as is

6    necessary to abate the nuisance.

7        213.    Moreover, as Defendants' conduct was and continues to be negligent,

8    oppressive, reckless, malicious, fraudulent, intentional and/or illegal, Plaintiffs, and

9    each of them, are entitled to punitive damages and/or exemplary damages to the

10   extent that they are an available remedy under the law.

11                        **FIFTH CLAIM FOR RELIEF**

12          **(Equitable Indemnity - Plaintiffs Against All Defendants)**

13       214.    Plaintiffs refer to and reallege paragraphs 1 through 213 of this

14   Complaint and incorporates them by reference.

15       215.    Plaintiffs have been, and will continue to be, compelled by the operation

16   of applicable Federal and State laws to incur necessary Response Costs consistent

17   with the NCP and other abatement costs to investigate, study, and remove the

18   pollutants from the surface and sub-surface soils and groundwater beneath and

19   adjacent to the property and to take other response actions necessary to protect public

20   health and the environment, and to enforce the liability schemes set forth in RCRA,

21   CERCLA and in State and local laws.

22       216.    Defendants, and each of them, are entirely liable for that contamination

23   as a result of the Release of Hazardous Substances and/or Hazardous Wastes into the

24   Environment.  The Release of Hazardous Substances and/or Hazardous Wastes into

25   the Environment by Defendants was negligent, careless, wrongful, and unlawful.

26   Plaintiffs' statutory liability for the costs of environmental assessment clean-up and

27   remediation is solely the result of Defendants' negligent, careless, wrongful and

28   unlawful conduct in the course of their profit-making activities.  The Defendants

1 have benefitted monetarily from their inexpensive but environmentally irresponsible

2 methods of Disposing of their toxic wastes.

3      217.   Defendants, and each of them, are therefore bound and obligated, jointly

4 and severally to indemnify and hold harmless Plaintiffs from and against any and all

5 Response Costs and any other costs heretofore or hereafter incurred by Plaintiffs to

6 responding to the Release of Hazardous Substances and Hazardous Wastes by

7 Defendants.

8 **SIXTH CLAIM FOR RELIEF**

9 **(Declaratory Relief Under State Law - Plaintiffs Against All Defendants)**

10      218.   Plaintiffs refer to and reallege paragraphs 1 through 217, of this

11 Complaint and incorporate them by reference.

12      219.   A dispute has arisen and an actual controversy exists between Plaintiffs

13 and Defendants in that Plaintiffs claim that Defendants are jointly and severally

14 obligated to indemnify Plaintiffs against, and reimburse Plaintiffs for, all Response

15 Costs and any other costs heretofore or hereafter incurred by Plaintiffs in removing

16 the Hazardous Substances and/or Hazardous Waste or taking any other removal or

17 remedial action as a result of Defendants' conduct complained of herein, and

18 Defendants deny such obligation.

19      220.   Substantial costs will be incurred by Plaintiffs over time and after

20 conclusion of this action. Unless declaratory relief is granted, it will be necessary to

21 commence many successive actions against Defendants to secure compensation for

22 damages sustained, thus requiring a multiplicity of suits.

23      221.   Plaintiffs request a judicial determination pursuant to California Code of

24 Civil Procedure Section 1060 of Plaintiffs' right to reimbursement and

25 indemnification by Defendants for all costs heretofore or hereafter incurred by

26 Plaintiffs as a result of Defendants' conduct complained of herein

27      WHEREFORE, Plaintiffs pray for judgment as against Defendants, and each of

28 them, as follows:

## AS TO THE FIRST CLAIM FOR RELIEF FOR
## PRIVATE RECOVERY UNDER CERCLA

1. For Plaintiffs' Response Costs under CERCLA;

2. For attorneys' fees; and

3. For costs of suit incurred herein.

## AS TO THE SECOND CLAIM FOR RELIEF FOR
## DECLARATORY RELIEF UNDER FEDERAL LAW

4. For a declaration that Defendants, jointly and severally, are obligated to pay to Plaintiffs all past and future Response Costs and any other costs incurred by Plaintiffs hereafter in response, removal or remediation efforts incurred pursuant to a state or federal agency-issued and/or court-approved remedial action plan that is required by the NCP in order to properly respond to the discharge of Hazardous Waste and Hazardous Substances by Defendants;

5. For attorneys' fees; and

6. For costs of suit incurred herein.

## AS TO THE THIRD CLAIM FOR RELIEF
## DAMAGES FOR PRIVATE NUISANCE

7. For a mandatory, preliminary and permanent injunction ordering the Defendants to undertake, at their expense, all of the environmental engineering investigation, studies, monitoring and response actions necessary to respond to, abate and remediate fully and promptly the nuisance condition resulting from the release of Hazardous Waste and/or Hazardous Substances at and emanating from the Property in a manner consistent with the NCP or as otherwise provided by law;

8. For nuisance abatement and cleanup costs from Defendants, jointly and severally, in an amount equal to all Response Costs and all other costs incurred in response to the nuisance condition resulting from the discharge of contaminants by Defendants, according to proof at trial;

9. For compensatory damages according to proof, including, but not limited to, lost profits and economic loss, loss of use, diminution of fair market

1  value of the property, damage related to the inability to resell the property, and

2  stigma;

3       10.    For incidental and consequential damages according to proof;

4       11.    For pre-judgment interest at the legal rate;

5       12.    For attorneys' fees;

6       13.    For costs of suit incurred therein;

7       14.    For nuisance abatement and cleanup costs from Defendants, jointly and

8  severally, in an amount equal to all Response Costs and all other costs incurred in

9  response to the public nuisance condition resulting from the discharge of

10  contaminants by Defendants, according to proof at trial; and

11       15.    Moreover, as Defendants' conduct was and continues to be negligent,

12  oppressive, reckless, malicious, fraudulent, intentional and/or illegal, Plaintiffs, and

13  each of them, are entitled to punitive damages and/or exemplary damages to the

14  extent that they are an available remedy under the law.

15                  **AS TO THE FOURTH CLAIM FOR RELIEF**

16                          <u>**FOR TRESPASS**</u>

17       16.    For damages from Defendants, jointly and severally, in an amount

18  equal to all Response Costs and all other costs incurred in removal or remediation

19  efforts in response to the discharge of pollutants by Defendants according to proof at

20  trial;

21       17.    For compensatory damages according to proof, including, but not

22  limited to, lost profits and economic loss, loss of use, diminution of fair market

23  value of the property, damages related to the inability to resell the property, and

24  stigma;

25       18.    For incidental and consequential damages according to proof.

26       19.    For pre-judgment interest at the legal rate;

27       20.    For attorneys' fees;

28       21.    For costs of suit incurred herein; and

1    22.    Moreover, as Defendants' conduct was and continues to be negligent,

2 oppressive, reckless, malicious, fraudulent, intentional and/or illegal, Plaintiffs, and

3 each of them, are entitled to punitive damages and/or exemplary damages to the

4 extent that they are an available remedy under the law.

5              **AS TO THE FIFTH CLAIM FOR RELIEF**

6                     **EQUITABLE INDEMNITY**

7    23.    For a declaration that Plaintiffs are entitled to full indemnity from

8 Defendants, jointly and severally, for all Response Costs and any other costs

9 incurred in removal or remediation efforts in response to the discharge of pollutants

10 by Defendants.

11    24.    For attorneys' fees; and

12    25.    Costs of suit incurred herein.

13              **AS TO THE SIXTH CLAIM FOR RELIEF**

14            **DECLARATORY RELIEF UNDER STATE LAW**

15    26.    For a declaration that Defendants, jointly and severally, are

16 obligated to pay to Plaintiffs all past and future Response Costs and any

17 other costs incurred by Plaintiffs hereafter in response, removal or

18 remediation efforts incurred pursuant to a state or federal agency-issued

19 and/or court-approved remedial action plan that is required by the NCP

20 in order to properly respond to the discharge of pollutants by Defendant

21 and as otherwise provided by law;

22    27.    For attorneys' fees; and

23    28.    For costs of suit incurred herein.

24 / / /

25 / / /

26 / / /

27 / / /

28 / / /

## AS TO ALL CLAIMS FOR RELIEF

29.   Demand for Jury Trial.

30.   For damages in an amount that is yet to be ascertained.

31.   For such other and further relief as this Court deems just and proper.


DATED:  November 6, 2007

Caufield & James, LLP

Jeffery L. Caufield, Esq.
Attorneys for Plaintiffs

42

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Virginia A. Phillips and the assigned discovery Magistrate Judge is John Charles Jr. Rayburn.

The case number on all documents filed with the Court should read as follows:

## EDCV07- 1471 VAP (JCRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] Western Division<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] Southern Division<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [X] Eastern Division<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

**ORIGINAL**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Angeles Chemical Company, Inc., a California Corporation; John Locke, an individual; Greve Financial Services, Inc., a California Corporation

**DEFENDANTS**
Omega Chemical PRP Group LLC; Omega Chemical PRP Group; McKesson Corp.; Robert Berg; Donna Berg; The Estate of Arnold Rosenthal; Pearl Rosenthal; Harvey Sorkin; Seymour Moslin, et al.

**(b)** County of Residence of First Listed Plaintiff (Except in U.S. Plaintiff Cases):
Los Angeles

County of Residence of First Listed Defendant (In U.S. Plaintiff Cases Only):
Los Angeles

**(c)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
CAUFIELD & JAMES, LLP
2851 Camino Del Rio South, Suite 250
San Diego, California 92108
(619) 325-0441

Attorneys (If Known)

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No     ☑ **MONEY DEMANDED IN COMPLAINT:** $ proof at trial

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Declaratory Relief, Public and Private Nuisance, Trespass, Equitable Indemnity, Private Recovery Under CERCLA

---

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service |  | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities /Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise |  | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY |  | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☑ 893 Environmental Matters | ☐ 210 Land Condemnation |  | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure |  |  |  | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment |  |  |  | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land |  |  |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability |  |  |  | ☐ 871 IRS-Third Party 26 USC 7609 |
|  | ☐ 290 All Other Real Property |  |  |  |  |

---

**VIII(a). IDENTICAL CASES:** Has this action been previously filed and dismissed, remanded or closed? ☑ No  ☐ Yes

If yes, list case number(s):

**FOR OFFICE USE ONLY:** Case Number: _____

EDCV07-1471

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT O.   ALIFORNIA
CIVIL COVER SHEET

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

---

**VIII(b).  RELATED CASES:** Have any cases been previously filed that are related to the present case? ☐ No  ☑Yes

If yes, list case number(s):  CV 01-10532 TJH (Ex); CV 04-1340-TJH (JWJx); CV 00-12471 CAS (CTx)

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☑A.  Arise from the same or closely related transactions, happenings, or events; or

   ☑B.  Call for determination of the same or substantially related or similar questions of law and fact; or

   ☐C.  For other reasons would entail substantial duplication of labor if heard by different judges; or

   ☐D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

---

**IX. VENUE:** List the California County, or State if other than California, in which EACH named plaintiff resides (Use an additional sheet if necessary)

☐ Check here if the U.S. government, its agencies or employees is a named plaintiff.
   Los Angeles County

List the California County, or State if other than California, in which EACH named defendant resides.  (Use an additional sheet if necessary).

☐ Check here if the U.S. government, its agencies or employees is a named defendant.
   Los Angeles County, San Francisco County, Delaware, Pennsylvania, Santa Clara County, Orange County, Alameda County, New Jersey, Riverside County, New York, Illinois, Nevada, Ohio, Washington, San Diego County, Merced County, Michigan, San Bernardino County, Placer County, Maryland, Massachusetts, Wisconsin, Contra Costa County, Nevada, Texas, Indiana

List the California County, or State if other than California, in which EACH claim arose.  (Use an additional sheet if necessary)
**Note:** In land condemnation cases, use the location of the tract of land involved.
   Los Angeles County

---

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date _____ 11/07/07

   **Notice to Counsel/Parties:**  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but  is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program.  (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

---