Jeffery L. Caufield (SBN 166524)
jeff@caufieldjames.com
Kenneth E. James (SBN 173775)
ken@caufieldjames.com
CAUFIELD & JAMES, LLP
2851 Camino Del Rio South, Suite 410
San Diego, California 92108
Telephone: 619-325-0441
Facsimile : 619-325-0231

Attorneys for Plaintiffs, Angeles
Chemical Company, Inc., John Locke,
and Greve Financial Services, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELES CHEMICAL COMPANY, INC., a California corporation, JOHN LOCKE, an individual, GREVE FINANCIAL SERVICES, INC., a California corporation,<br><br>        Plaintiffs,<br><br>        v.<br><br>OMEGA CHEMICAL PRP GROUP LLC; OMEGA CHEMICAL PRP GROUP; *et al.*;<br><br>        Defendants | CASE NO. EDCV 07-1471 (TJH) (JWJx)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO LIFT STAY AND FOR LEAVE TO FILE FIRST AMENDED COMPLAINT<br><br>Date:  August 18, 2008<br>Time: Under Submission<br>Room:  17<br>Judge:  Hon. Terry J. Hatter, Jr.<br><br>Discovery Cut-Off:    TBD<br>Pre-Trial Conference:  TBD<br>Trial Date:            TBD |

## Table of Contents

I.    Introduction...............................................................................................1

II.   Factual and Procedural History...........................................................2

    A.   Angeles Filed The Instant Complaint Seeking Recovery Of Past,
          Present and Future Response Costs........................................................2

    B.   Defendants Filed Motion to Stay Litigation Based on Doctrine of
          Primary Jurisdiction..............................................................................3

    C.   This Court Dismissed Angeles' Claims for Injunctive Relief In
          Angeles v. McKesson And Granted The Omega Defendants Motion
          To Stay This Action..............................................................................4

    D.   Angeles' Proposed First Amended Complaint Removes All Claims for
          Injunctive Relief...................................................................................4

III.  Legal Analysis....................................................................................5

    A.   Leave to File an Amended Complaint Should Be Freely Granted at
          This Early Stage of Litigation...............................................................5

    B.   The Court Should Lift The Stay and Allow Angeles' Monetary Claims
          for Relief to Go Forward.......................................................................6

        1.  Removal of Injunctive Claims Renders The Doctrine of Primary
            Jurisdiction Null as Only The Court Can Resolve Angeles'
            Monetary Claims..........................................................................6

        2.  Defendants' Concerns of "Judicial Economy" Are No Longer an
            Issue..............................................................................................7

        3.  Discovery Should Proceed as The EPA's Efforts Will Not
            Otherwise Affect This Case...........................................................9

    C.   Angeles Will Be Prejudiced if It is Forced to Incur Actual and
          Substantial Costs While Being Denied The Opportunity to Obtain
          Relief..................................................................................................10

    D.   Defendants' Concerns are Unfounded.................................................11

i

1               1. Angeles' Request to Lift Stay and File an Amended Complaint

2                   Removing Injunctive Claims for Relief is Not a Motion For

3                   Reconsideration.........................................................................11

4               2. Angeles Will Not Add Injunctive Claims in The Future Absent

5                   Court Approval...........................................................................12

6        E.     Meet and Confer.............................................................................12

7  IV.    Conclusion..............................................................................................13

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

Table of Authorities

2

**CASES**

3

Bennett v. International Paper Co.

4

No. Civ. 05-38RHKRLE2006 WL 1116124 (D.Minn. 2006)................8-9

5

Big Bear Lodging Ass'n v. Snow Summit, Inc.

6

182 F.3d 1096 (9th Cir.1999)......................................................5

7

Carson Harbor Village, Ltd. v. Unocal Corp.

8

270 F.3d 863 (9th Cir. 2001).....................................................10

9

Grenell v. UPS Health and Welfare Package

10

390 F.Supp.2d 932 (C.D. Cal. 2005)..........................................1, 5

11

Kelley v. EPA

12

15 F.3d 1100 (D.C. Cir. 1994)....................................................6

13

Mercury Motor Express, Inc. v. Brinke

14

475 F.2d 1086 (5th Cir. 1973).....................................................6

15

Morongo Band of Mission Indians v. Rose

16

893 F.2d 1074 (9th Cir.1990)......................................................5

17

Ryan v. Chemlawn Corp.

18

935 F.2d 129 (7th Cir. 1991)...........................................1, 6-7, 9, 11

19

Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.

20

857 F.Supp. 838 (D.N.M. 1994)................................................6, 7

21

Shinault v. American Airlines, Inc.

22

936 F.2d 796 (5th Cir. 1991).......................................................7

23

Tassy v. Brunswick Hosp. Center, Inc.

24

296 F.3d 65 (2d Cir. 2002)...................................... 7-8

25

U.S. v. Burlington Northern & Santa Fe Ry. Co.

26

520 F.3d 918 (9th Cir. 2008)....................................................10

27

28

PLAINTIFFS' MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

1  **STATUTES & CODES**

2  Fed. R. Civ. P.  15(a)(2)............................................................................5

3  Local Rule 7-3.......................................................................................12

4  Local Rule 7-18......................................................................................11

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

# I.    INTRODUCTION

Angeles Chemical Co., Inc., John Locke, and Greve Financial Services, Inc. (collectively "Angeles") hereby request that this Court lift the stay of litigation imposed on March 31, 2008 and permit Angeles to file a First Amended Complaint.

First, Angeles requests leave to file a First Amended Complaint wherein Angeles has (1) removed <u>all</u> prior claims for injunctive relief, (2) dropped a number of Defendants, and (3) corrected certain minor defects. (Declaration of Santino Tropea "Tropea Decl." at ¶ 2; Exhibit "Exh." 1). Policy favoring amendment is "applied with extreme liberality." <u>Grenell v. UPS Health and Welfare Package</u>, 390 F.Supp.2d 932, 936 (C.D. Cal. 2005). Provided that this lawsuit is in its preliminary stage and that only one Complaint has been filed in this litigation, leave should be freely granted.

Second, the removal of all claims for injunctive relief justifies lifting the stay in place to allow Angeles to pursue its monetary claims. Defendants sought, and were granted, a stay of this litigation pursuant to the doctrine of primary jurisdiction until the United States Environmental Protection Agency ("EPA") completes a Record of Decision ("ROD"). Case law is clear that once a plaintiff drops its claims for injunctive relief, the EPA no longer has a role in litigation, and thus the doctrine no longer applies. <u>Ryan v. Chemlawn Corp.</u>, 935 F.2d 129, 131 (7th Cir. 1991). In this regard, any concerns of judicial economy are also unavailing absent claims for injunctive relief. Rather, judicial economy and CERCLA's purpose of ensuring prompt cleanup "will be better served by allowing the plaintiff the opportunity to recover damages …from the only forum that can provide them, the court." <u>Id</u>. at 132.

Third, Angeles will be irreparably prejudiced if it is not permitted to pursue damages against Defendants. Angeles is expending hundreds of thousands of dollars cleaning up the contamination beneath its site, which Angeles alleges is caused by Defendants' actions. Furthermore, as the regional groundwater plume

1   expands in size over time, Angeles' liability for Defendants' contamination that has
2   migrated off its site increases as well. Since the EPA's ROD does not affect
3   Angeles' claims for relief, the prejudice to Angeles in delaying this litigation for
4   years substantially outweighs any benefit of being able to review the EPA's ROD.

5       For these reasons and those more fully articulated below, Angeles
6   respectfully requests that this Court lift the stay imposed and permit Angeles to file
7   its First Amended Complaint.

8   **II.   FACTUAL AND PROCEDURAL HISTORY**

9       **A.   Angeles Filed The Instant Complaint Seeking Recovery of**
10          **Past, Present and Future Response Costs**

11      Angeles brought the instant action against Defendants on November 7, 2007.
12  (See Angeles' Request for Judicial Notice "RJN" at ¶ 1). All Defendants were
13  named by the EPA as potentially responsible parties ("PRPs") for the groundwater
14  contamination at issue. Angeles believes and asserts in its Complaint that during the
15  Omega Chemical Corporation's years of operations, Defendants handled,
16  generated, transported and disposed of hazardous waste on and into the Omega Site,
17  thereby contributing to the regional plume and thus impacting the deep groundwater
18  contamination that has migrated onto and off of the Angeles site. (Complaint at ¶¶
19  155, 157, 161, 171-175; 187).

20      The Complaint seeks recovery of response costs previously and presently
21  being incurred at the Angeles site pursuant to CERCLA § 107(a). (Complaint at ¶¶
22  165, 169, 178-188). The Complaint also seeks declaratory relief under federal and
23  state law for indemnification of future response costs, and asserts additional state
24  law claims under theories of nuisance, trespass and equitable indemnity.
25  (Complaint at ¶¶ 189-221).   Angeles' nuisance and trespass claims previously
26  demanded that a "mandatory and/or prohibitory injunction be issued" which
27  required that Defendants take action to enjoin and abate their nuisance and trespass.
28  (See Complaint at ¶¶ 200, 204, 209, 212).

**B.   Defendants Filed Motion to Stay Litigation Based on Doctrine of Primary Jurisdiction**

On or about February 8, 2008, Defendants Omega Chemical PRP Group LLC, et al. filed a Motion to Stay this litigation under the theory of "primary jurisdiction," and until the EPA issues a ROD selecting a regional groundwater remedy.[1] (RJN at ¶ 2; Notice of Motion and Motion to Stay at 3:13-16). Specifically, Defendants sought a stay of litigation

> on grounds that the Court should apply the primary jurisdiction doctrine and stay this litigation to allow the United States Environmental Protection Agency to resolve certain technical issues through its specialized expertise, prior to judicial consideration of the legal claims in the litigation. (Id. at 3:17-21).

Defendants contended that (1) the Court should stay this case because primary jurisdiction belongs with the EPA (RJN at ¶ 3; Defendants' Points & Authorities in support of Stay at 6:13-10:15); (2) execution of a groundwater remedy selected in this litigation would be prohibited by statute (Id. at 10:16-11:6); and (3) deferring to the EPA under the doctrine of primary jurisdiction is supported by interests of judicial economy. (Id. at 12:3-13:11). All theories concerned Angeles' claims for injunctive relief. Defendants even conceded that "[t]he application of primary jurisdiction is particularly suitable to the Angeles Plaintiffs' state claims for injunctive relief [nuisance and trespass]." (Id. at 14:18-20).

Angeles opposed the request for stay on multiple grounds, the most poignant reason here being that the doctrine of primary jurisdiction, if applicable, only applies to claims for injunctive relief. Since only Angeles' third and fourth claims included an injunctive component, Angeles submitted that the motion to stay all monetary claims, along with the injunctive claims, should be denied.

---

[1] Defendants also filed Motions to Dismiss the Complaint on identical and other grounds, which were denied by the Court on March 31, 2008.

1    While Defendants identified no authority to the contrary in their moving

2    papers, Defendants cited two cases in their Reply brief in support of the contention

3    that the Court may also stay monetary claims for relief if it determines that the

4    injunctive claims should not go forward.[2] Defendants did not cite any legal

5    authority providing for a stay of monetary claims *only,* since that was not an issue

6    in the case. Angeles is unaware of any such authority.

7    **C.**    **This Court Dismissed Angeles' Claims for Injunctive Relief**

8          **In Angeles v. McKesson And Granted The Omega**

9          **Defendants Motion To Stay This Action**

10   During the pendency of the Motion for Stay, this Court dismissed Angeles'

11   claims for injunctive relief in the *Angeles v. McKesson* action on March 10, 2008

12   pursuant to a similar primary jurisdiction argument made by McKesson

13   Corporation. (RJN at ¶ 6). Shortly thereafter, on March 31, 2008, the Court granted

14   a stay of this litigation, presumably based upon Defendants' contentions that there

15   would exist a potential for conflicting remedies between Angeles' demand that

16   Defendants take action to enjoin and abate their nuisance and trespass, and the

17   EPA's proposed remedy. (RJN at ¶ 7).

18   **D.**    **Angeles' Proposed First Amended Complaint Removes All**

19          **Claims for Injunctive Relief**

20   In order to resolve this Court's and Defendants' concerns, Angeles

21   respectfully requests that the Court lift the stay in place and permit Angeles to file a

22   First Amended Complaint, wherein Angeles removed all claims for injunctive

23   relief. In order to reduce the need for further amendment, Angeles has also dropped

24   additional parties who have dissolved since the government began investigating the

25   Omega Superfund Site in the 1980's, and corrected certain minor defects (such as

26   changes in Defendants' corporate names). See Exhibit 1.

27   As briefed by Defendants themselves, Angeles should "move the Court to

28   _____

[2] See RJN at ¶ 5; Reply at 5:23-6:14.

4

PLAINTIFFS' MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

1    reactivate the litigation at any time they believe such a step to be warranted." (RJN

2    at ¶ 5; Reply at 12:26-28). The removal of <u>all</u> requests for injunctive relief complies

3    with this Court's orders in both this and the *Angeles v. McKesson* litigation,

4    eliminates any possibility of conflicting remedies between this Court and the EPA,

5    thereby eliminating <u>any</u> applicability of the doctrine of primary jurisdiction, yet

6    allows Angeles to obtain relief for monetary damages that have been and are

7    presently being incurred cleaning up the Angeles' property.

8    **III.   LEGAL ANALYSIS**

9           **A.    <u>Leave to File an Amended Complaint Should Be Freely</u>**

10                  **<u>Granted at This Early Stage of Litigation</u>**

11          "Federal policy strongly favors determination of cases on their merits,

12   accordingly, the policy favoring amendment is "applied with extreme liberality.'"

13   <u>Grenell v. UPS Health and Welfare Package</u>, 390 F.Supp.2d 932, 936 (C.D. Cal.

14   2005); citing <u>Morongo Band of Mission Indians v. Rose</u>, 893 F.2d 1074, 1079 (9th

15   Cir.1990). "Leave to amend should be freely granted when justice so requires." See

16   FRCP 15(a)(2).

17          This lawsuit is in its preliminary stage. Angeles has filed only one Complaint

18   in this litigation on November 11, 2007, and a number of defendants have not even

19   answered yet. See <u>Big Bear Lodging Ass'n v. Snow Summit, Inc.</u>, 182 F.3d 1096,

20   1105 (9th Cir.1999) ("Because this litigation is still in its early stages, leave should

21   be liberally granted").  As outlined below, the proposed amendments resolve any

22   concerns of conflicting remedies or judicial economy, and allow Angeles to recover

23   the costs related to its real and present liability for the contamination beneath its site

24   and within the Omega plume. Therefore, Angeles requests that this Court grant it

25   leave to file a First Amended Complaint.

26

27

28

PLAINTIFFS' MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

**B.     The Court Should Lift The Stay and Allow Angeles'**
**Monetary Claims for Relief to Go Forward**

    **1.  Removal of Injunctive Claims Renders The Doctrine of**
        **Primary Jurisdiction Null as Only The Court Can**
        **Resolve Angeles' Monetary Claims**

Defendants sought, and were granted, a stay of this litigation pursuant to the doctrine of primary jurisdiction. (RJN at ¶¶ 2-3, 7). The doctrine of primary jurisdiction "comes into play when a court and an administrative agency have concurrent jurisdiction over the same matter, and no statutory provision coordinates the work of the court and of the agency." Mercury Motor Express, Inc. v. Brinke, 475 F.2d 1086, 1091 (5th Cir. 1973). "Courts refuse to defer jurisdiction if the plaintiff is seeking damages for injury to property or person, as this is the type of relief courts routinely consider." Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co., 857 F.Supp. 838, 843 (D.N.M. 1994); Kelley v. EPA, 15 F.3d 1100, 1105 (D.C. Cir. 1994)("Liability issues are to be decided by the court"). Absent claims for injunctive relief, courts do not recognize primary jurisdiction as grounds to stay litigation.

Directly on point is Ryan v. Chemlawn Corp., 935 F.2d 129 (7th Cir. 1991). In Ryan, the plaintiff filed suit for compensatory damages, punitive damages, and injunctive relief, alleging that exposure to defendant's lawn pesticide products had caused plaintiff to suffer physical injuries. Id. at 130. The district court granted the defendant's motion to dismiss, finding that the plaintiff's claims fell within the primary jurisdiction of the EPA. Id. However, after plaintiff dropped her claims for injunctive relief, the appellate Court reversed, holding that the doctrine no longer applied:

    We do not agree with the district court that this is a case where the
    primary jurisdiction doctrine should be invoked. First, the **plaintiff**
    **has dropped her claim for injunctive relief against the defendant.**

PLAINTIFFS' MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

1    **Therefore, hers is a claim that seeks only monetary damages, and**
2    **as both parties agree that the EPA cannot provide the plaintiff**
3    **with any form of compensatory or punitive damages, we fail to**
4    **understand what role the EPA can play in this suit nor has the**
5    **district court given this court any reason to rule otherwise**. Ryan
6    v. Chemlawn Corp., 935 F.2d 129, 131 (7th Cir. 1991)(emphasis
7    added).

8    Here, Angeles has similarly removed all claims for injunctive relief in its
9    First Amended Complaint to allow its monetary claims to proceed. See Shinault v.
10   American Airlines, Inc., 936 F.2d 796, 804 (5th Cir. 1991) (Court invoked primary
11   jurisdiction to stay claim for injunctive relief while permitting plaintiff to proceed
12   with claim for monetary damages against airline carrier); Schwartzman, 857
13   F.Supp. at 843 (Court stayed proceedings with respect to the injunctive relief
14   requested, yet Plaintiff could pursue monetary damages which would include any
15   costs necessary for cleanup). As a result, the EPA has **no jurisdiction** to entertain
16   Angeles' claims, and Defendants' prior contentions regarding potentially
17   conflicting remedies are no longer applicable. Therefore, Angeles requests that the
18   Court lift the stay to allow Angeles to pursue its monetary claims for relief only.

19   **2. Defendants' Concerns of "Judicial Economy" Are No**
20   **Longer an Issue**

21   Defendants also contended that Angeles' claims should be stayed because it
22   would be "far more efficient" to allow the EPA to conclude its Remedial
23   Investigation/Feasibility Study ("RI/FS") and remedy selection. (Motion for Stay at
24   13:19-14:16). Concerns of judicial economy are irrelevant to the doctrine of
25   primary jurisdiction. In Tassy v. Brunswick Hosp. Center, Inc., 296 F.3d 65, 68 (2d
26   Cir. 2002), the dissent similarly argued that the court should consider judicial
27   economy in regards to primary jurisdiction. The majority opinion swiftly rejected
28   this theory:

1   Despite ample opportunity during the ninety-five years since it created

2   the doctrine, **the Supreme Court has *never* identified judicial**

3   **economy as a relevant factor.** <u>Tassy</u>, 296 F.3d at 68 (internal

4   citations omitted)(emphasis added).

5   Regardless, Angeles' First Amended Complaint cures any conflict that could

6   have potentially resulted in wasted resources. In their reply brief, Defendants relied

7   on <u>Bennett v. International Paper Co.</u>, Not Reported in F.Supp.2d, 2006 WL

8   1116124 (D.Minn. 2006) [3](refusing to continue a stay for two years or until the

9   EPA selects a final remedy) as authority to stay all claims, including an injunctive

10  *and* CERCLA claim, pending completion of a risk assessment. (RJN at ¶ 5; Reply

11  at 5:23-6:7). The parties in <u>Bennett</u> conceded that "courts do not ordinarily refuse to

12  hear cases regarding damages." <u>Id</u>. at * 3. The Court in <u>Bennett</u> similarly rejected

13  the notion that monetary claims cannot go forward on grounds of judicial economy:

14      The Court's initial decision to stay the damages claims in the June

15      Order stemmed from its concern that proceeding on those claims

16      without the aid of the Risk Assessment Report "would necessarily be

17      duplicating much of the work that is being completed now under the

18      direction and expertise of the EPA." While Defendants may argue that

19      the ongoing EPA involvement at the Site could affect the amount of

20      damages ultimately due to Plaintiffs (if any), that further remediation

21      may be ordered **cannot prevent a jury from considering Plaintiffs'**

22      **claims**. <u>Id</u>. (internal citations omitted)(emphasis added).

23  Defendants' own case law provides that a continued stay of this litigation is

24  inappropriate because their prior contentions of "judicial economy," even if

25  _____

26  [3] Angeles had no opportunity to respond to Defendants' new case law (entirely inapplicable) or the Declaration of Christopher Lichens (providing a timeline for

27  EPA action which has already been extended), both submitted with their Reply. Ironically, the Court in <u>Bennett</u> criticized the party for waiting until reply to submit

28  declarations that could have been brought with the motion. See <u>Bennett</u> at *3, fn 8.

8

1   relevant, can no longer apply to Angeles' First Amended Complaint. Rather,
2   "judicial economy will be better served by allowing the plaintiff the opportunity to
3   recover damages …from the only forum that can provide them, the court." <u>Ryan v.</u>
4   <u>Chemlawn Corp.</u>, 935 F.2d 129, 132 (7th Cir. 1991).

5              **3. Discovery Should Proceed as The EPA's Efforts Will Not**
6                          **Otherwise Affect This Case**

7         As outlined above, the EPA's ROD selecting a cleanup remedy is irrelevant
8   since Angeles no longer seeks to compel affirmative action with respect to
9   groundwater cleanup. Any EPA work cannot conflict with this Court's
10  determination of liability because, regardless of what and when a final plan is
11  implemented, the *Court* must determine how to allocate the costs among parties.
12  This will be based on information already available, such as the EPA's estimates of
13  tonnage sent to the Omega Site by all defendants, testing records, and other data in
14  possession of the Defendants and EPA regarding the regional plume.

15        However, Defendants have also alleged that the EPA's RI/FS will influence
16  other aspects of this case. For example, Defendants claim that (1) the RI/FS will
17  "develop the evidence needed to adjudicate the claims"; (2) the regional
18  groundwater contamination will be a "complicated problem" to diagnose and
19  repair; and (3) Angeles would seek to re-take any "early" discovery once the EPA's
20  full data and conclusions are available. (RJN at ¶ 5, Reply at 4:25-5:11). As in
21  <u>Bennett</u>, "Defendants are essentially arguing that the Court should not allow
22  Plaintiffs' damages claims to go forward because the valuation of the properties
23  'cannot be performed until cleanup is completed.' **There is no support for this**
24  **proposition.**" <u>Bennett v. International Paper Co.</u>, supra, at *3 (internal citations
25  omitted) (emphasis added).

26        First, the EPA's RI/FS does not "investigate" the sites further. The purpose
27  of the RI/FS is to report and summarize the *existing* testing data and summarize it
28  in a single document for review. The EPA's final assessment will provide guidance

1   regarding a final allocation figure (which will be reached long after the EPA's
2   findings), but it is no longer relevant to Angeles' monetary claims for relief.
3   Accordingly, the RI/FS has nothing to do with any further investigation. The
4   testing data already exists, and can be discovered and analyzed by the parties'
5   experts immediately.

6      Second, the RI/FS will not discuss the various parties' chemical handling,
7   shipment and/or relative contributions, which is information that can be developed
8   entirely separate and apart from the RI/FS. Liability will turn on Defendants' roles
9   and conduct—facts which are uncovered through discovery and not the EPA's
10  groundwater remedy selection. Delaying that discovery until after the RI/FS will
11  unnecessarily prolong the underlying litigation and cleanup of the actual plume for
12  years, by delaying the trial and/or final adjudication of the relative liabilities. The
13  central purpose of CERCLA is to recover the cost of contamination and to ensure
14  the prompt and effective cleanup of waste disposal sites. Carson Harbor Village,
15  Ltd. v. Unocal Corp., 270 F.3d 863, 880 (9th Cir. 2001); U.S. v. Burlington
16  Northern & Santa Fe Ry. Co., 520 F.3d 918, 939 (9th Cir. 2008). There is no
17  reason why discovery should not proceed.

18     Third, the EPA's "full data" to be used the RI/FS is already available. Again,
19  the EPA simply takes existing data and summarizes it in a single document for
20  review. Therefore, speculation that the parties will need to re-take early discovery
21  because all the data already exists is unfounded.

22  **C.    Angeles Will Be Prejudiced if It is Forced to Incur Actual**
23  **        and Substantial Costs While Being Denied The Opportunity**
24  **        to Obtain Relief**

25     The continued prejudice to Angeles stemming from postponement of
26  litigation also justifies lifting the stay. Angeles is expending hundreds of thousands
27  of dollars cleaning up the contamination beneath its site, which expert evidence
28  suggests is caused by Defendants' chemicals. In fact, Defendants' contamination

1    not only continues to damage the Angeles site on a recurring basis, but also exposes

2    Angeles to increased liability to other parties each day that the regional

3    groundwater plume expands. If Angeles' monetary claims for relief remain stayed,

4    Angeles would have no remedy in any venue. As identified above, the EPA does

5    not have authority to allocate liability under CERCLA, award damages, attorneys'

6    fees, grant declaratory relief, or remedy any of the other claims for relief requested

7    in Angeles' Complaint. See <u>Ryan v. Chemlawn Corp.</u>, 935 F.2d 129, 131 (7th Cir.

8    1991). Angeles is potentially liable for contamination that has migrated onto and

9    off of its site <u>now</u>. Absent any potential conflict with the EPA's efforts, the

10   prejudice to Angeles supports a lift of the stay.

11       **D.**    **Defendants' Concerns are Unfounded**

12           **1. Angeles' Request to Lift Stay and File an Amended**

13              **Complaint Removing Injunctive Claims for Relief is Not**

14              **a Motion For Reconsideration**

15       A minority of the Defendants who responded to Angeles' meet and confer

16   wrongly allege that this Motion seeks reconsideration of the Court's March 31,

17   2008 Order under Local Rule 7-18.  This is not the case. This Court was previously

18   presented with the issue of whether Angeles' injunctive requests (i.e. that

19   Defendants clean up and abate their contamination) should be stayed and, if so,

20   whether all claims for monetary relief may be stayed as well pursuant to the

21   doctrine of primary jurisdiction. (RJN at ¶¶ 2-4 ). This Court was not, and could not

22   have been presented with the issue of whether claims for monetary relief *only* may

23   be stayed. While some subject matter may overlap, the instant motion is not one for

24   reconsideration.

25       Even assuming this argument has merit, the First Amended Complaint and

26   removal of all claims for injunctive relief constitute new facts under Local Rule 7-

27   18(b) that should compel the Court to lift the stay. Defendants stated in their Reply

28   brief that "Plaintiffs would be free to move the Court to reactivate the litigation at

PLAINTIFFS' MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

1   any time they believe such a step to be warranted." (RJN at ¶ 5; Reply at 12:26-28).

2   Angeles believes that a lift of the stay is warranted pursuant to the Amended

3   Complaint, and Defendants should be bound by their prior representations.

### 2.  Angeles Will Not Add Injunctive Claims in The Future
### Absent Court Approval

6   During the meet and confer process, Defendants wrongly implied that

7   Angeles seeks to circumvent to the Court's order by dropping the injunctive claims

8   only *temporarily*, until after the stay is lifted. In order to abide by the Court's orders

9   in this and the *Angeles v. McKesson* litigation, Angeles has dropped its injunctive

10  claims for relief so that it may pursue monetary damages only. If the law or factual

11  circumstances change during the course of litigation, Angeles reserves the right to

12  add injunctive claims in the future. However, Angeles has no intention of doing so

13  at this time. Moreover, the Defendants may oppose, and the Court has discretion to

14  deny, any request to add claims in the future if one was ever brought. Therefore,

15  Defendants' "scare tactics" should be rejected.

### E.   Meet and Confer

17  Defendants showed little interest in the instant Motion during the meet and

18  confer process. Angeles sent a letter to all defendants regarding the instant Motion

19  on April 16, 2008. (Tropea Decl. at ¶ 3). A vast majority of the Defendants did not

20  respond within the twenty (20) days afforded by Local Rule 7-3, or at all,[4] and

21  others indicated they would rather have a teleconference than respond in writing.[5]

22  (Tropea Decl. at ¶¶ 6-7). As a courtesy, Angeles held an additional teleconference

---

[4] For example, Universal City Studios and Walt Disney Pictures finally responded to Angeles' meet and confer on May 23, 2008 (37 days later), Firmenich, Inc. responded on May 28, 2008 (42 days later), and McKesson Corp. never responded. (Tropea Decl. at ¶¶ 4-5).

[5] The Omega Chemical PRP Group LLC, et. al indicated they did not wish to articulate their issues/concerns in writing, thus a teleconference was held per their request on May 21, 2008.

PLAINTIFFS' MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

on May 21, 2008.[6] (Tropea Decl. at ¶ 8). Following the teleconference, no Defendants agreed to stipulate to lift the stay or for the filing of an Amended Complaint. Therefore, this Motion followed.

## IV.    CONCLUSION

For the foregoing reasons, Angeles respectfully requests that this Court lift the stay of litigation and permit Angeles to file a First Amended Complaint removing all claims for injunctive relief.


Presented By:                                    Caufield & James LLP


Dated: July 25, 2008

                                                 Santino M. Tropea, Esq.
                                                 Attorneys for Plaintiffs

---

[6] Only counsel for the Omega Chemical PRP Group LLC, et. al, Mattel, Inc. et. al, NMB Technologies and Hexcel Corp. responded to Angeles' April 16, 2008 meet and confer in accordance with the Local Rules. (Tropea Decl. at ¶ 9). While it appeared that only these Defendants expressed an interest in Angeles' Motion, a number of additional Defendants participated in the teleconference as well.

13

PLAINTIFFS' MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT