1  Larry G. Gutterridge (SBN 105734)
   lgutterridge@hanmor.com
2  Scott Lehecka (SBN 128261)
   slehecka@hanmor.com
3  HANNA AND MORTON LLP
   444 South Flower Street, Suite 1500
4  Los Angeles, California 90071-2916
   Telephone:  (213) 628-7131
5  Facsimile:  (213) 623-3379

6  Keith F. Millhouse (SBN 126082)
   MILLHOUSE LAW GROUP
7  kmillhouse@mlglaw.net
   2801 Townsgate Road, Suite 215
8  Westlake Village, California 91361
   Telephone:  (805) 230-2280
9  Facsimile:  (805) 230-2281

10 Attorneys for Defendants
   OMEGA CHEMICAL PRP GROUP LLC;
11 OMEGA CHEMICAL PRP GROUP;
   3M COMPANY; AVERY DENNISON
12 CORPORATION; BOURNS, INC.;
   CALSONIC CLIMATE CONTROLS, INC.;
13 GEORGE INDUSTRIES; HARSCO
   CORPORATION; HILTON HOTELS
14 CORPORATION; HUBBELL, INC.;
   HUNTINGTON PARK RUBBER STAMP
15 CO.; JAN-KENS ENAMELING
   COMPANY; KOLMAR LABORATORIES,
16 INC.; LONZA, INC.; MEDEVA
   PHARMACEUTICALS, INC.; PACIFIC
17 PRECISION METALS, INC.; QUALITY
   CARRIERS, INC.; RATHON
18 CORPORATION; REMET
   CORPORATION; ROGERS
19 CORPORATION; TENSION ENVELOPE
   CORPORATION; L-3 SERVICES, INC.
20 NAMED HEREIN AS TITAN
   CORPORATION; UNION PACIFIC
21 RAILROAD COMPANY; WARNER
   LAMBERT COMPANY; AND YORK
22 INTERNATIONAL, INC.

23

24              **UNITED STATES DISTRICT COURT**

25 **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANGELES CHEMICAL
COMPANY, INC., a California
corporation, *et al.*,

          Plaintiffs,

    v.

OMEGA CHEMICAL PRP GROUP
LLC, *et al.*,

          Defendants.

CASE NO.  EDCV 07-1471 (TJH) (Ex)

DEFENDANTS OMEGA CHEMICAL
PRP GROUP LLC; OMEGA CHEMICAL
PRP GROUP; 3M COMPANY; AVERY
DENNISON CORPORATION; BOURNS,
INC.; CALSONIC CLIMATE
CONTROLS, INC.; GEORGE
INDUSTRIES; HARSCO
CORPORATION; HILTON HOTELS
CORPORATION; HUBBELL, INC.;
HUNTINGTON PARK RUBBER STAMP
CO.; JAN-KENS ENAMELING
COMPANY; KOLMAR
LABORATORIES, INC.; LONZA, INC.;
MEDEVA PHARMACEUTICALS, INC.;
PACIFIC PRECISION METALS, INC.;
QUALITY CARRIERS, INC.; RATHON
CORPORATION; REMET
CORPORATION; ROGERS
CORPORATION; TENSION ENVELOPE
CORPORATION; L-3 SERVICES, INC.
NAMED HEREIN AS TITAN
CORPORATION; UNION PACIFIC
RAILROAD COMPANY; WARNER
LAMBERT COMPANY; AND YORK
INTERNATIONAL, INC.'S OPPOSITION
TO PLAINTIFFS' MOTION TO LIFT
STAY AND FOR LEAVE TO FILE
FIRST AMENDED COMPLAINT;
DECLARATION OF LARRY G.
GUTTERRIDGE
[filed concurrently herewith]

Date:  August 18, 2008
Time:  UNDER SUBMISSION
Judge:  Honorable Terry J. Hatter, Jr.
Courtroom: 17

2

1    / / /

2

3         Defendants Omega Chemical PRP Group LLC; Omega Chemical PRP Group;

4    3M Company; Avery Dennison Corporation; Bourns, Inc.; Calsonic Climate

5    Controls, Inc.; George Industries; Harsco Corporation; Hilton Hotels Corporation;

6    Hubbell, Inc.; Huntington Park Rubber Stamp Co.; Jan-Kens Enameling Company;

7    Kolmar Laboratories, Inc.; Lonza, Inc.; Medeva Pharmaceuticals, Inc.; Pacific

8    Precision Metals, Inc.; Quality Carriers, Inc.; Rathon Corporation; Remet

9    Corporation; Rogers Corporation; Tension Envelope Corporation; L-3 Services,

10   Inc. named herein as Titan Corporation; Union Pacific Railroad Company; Warner

11   Lambert Company; and York International, Inc. (hereinafter collectively referred to

12   as "Omega Group Defendants") submit this Opposition to Plaintiffs' Motion to Lift

13   Stay and for Leave to File First Amended Complaint.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OMEGA GROUP DEFENDANTS' OPPOSITION TO MOTION TO LIFT
STAY AND FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

# **TABLE OF CONTENTS**

Page

I.   SUMMARY OF ARGUMENT ......................................................................... 4

II.   THE MOTION TO LIFT STAY IS, IN EFFECT, A MOTION FOR
RECONSIDERATION, FOR WHICH PLAINTIFFS HAVE FAILED TO SHOW
ANY BASIS, IN VIOLATION OF LOCAL RULE 7-18. ........................................ 6

III.   THE MOTION TO STAY WAS BASED UPON TWO ADEQUATE AND
INDEPENDENT GROUNDS – PRIMARY JURISDICTION AND THE
COURT'S INHERENT AUTHORITY TO CONTROL CASES ON ITS DOCKET
– EACH OF WHICH IS SUFFICIENT TO SUPPORT THE STAY ORDER......... 8

A. The Stay is Properly Supported by the Court's Inherent Discretionary Authority
to Manage Its Docket........................................................................................ 8

B. The Doctrine Of Primary Jurisdiction Applies To Plaintiffs' Claims For
Monetary Relief, Whether Or Not They Are Joined With Claims For
Injunctive Relief. ............................................................................................. 9

C. This Court Retains Primary Authority to Adjudicate Plaintiffs' Claims............ 12

IV.   THE MAINTENANCE OF THE STAY, TO ALLOW EPA TO COMPLETE
ITS RI/FS AND ROD, WILL ASSIST THE RESOLUTION OF THIS CASE AND
WILL NOT PREJUDICE THE PLAINTIFFS ......................................................... 14

V.   IF THE MOTION FOR LEAVE TO AMEND IS GRANTED, PLAINTIFFS
CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE REMOVED FROM THE
CASE WITH PREJUDICE.......................................................................................... 16

VI.   CONCLUSION............................................................................................. 17

i

1

# TABLE OF AUTHORITIES

2

3

**CASES**

*Bennett v. Int'l Paper Co.*, 2005 U.S. Dist. LEXIS 12185 (D. Minn., 2005) ............................................... 10,11

*Citimasters Co. v. Country Club Communications,* 1997 U.S. Dist. LEXIS 17238 (C.D. Calif., July 21, 1997) ..... 9,13

*Davel Communications, Inc. v. Qwest Corp.*, 460 F.3d 1075 (9th Cir., 2006)................................................ 10

*Landis* v. *North America Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936)................................................. 8

*Massachusetts v. Blackstone Valley Electric Co.*, 67 F.3d 981 (1st Cir., 1995)....................................... 10,11

*Reiter v. Cooper*, 507 U.S. 258, 268; 113 S. Ct. 1213, 1220; 122 L. Ed. 2d 604, 617 (1993)................... 10,13

*Roberts v. ChemLawn Corporation*, 716 F. Supp. 364 (N.D. Ill. 1989)........................................................ 12

*Ryan v. ChemLawn Corporation*, 935 F.2d 129 (7th Cir., 1991) ........................................................... 11,12

*Schwartzman Inc. v. Atchison, Topeka & Santa Fe Railway Co.*, 857 F. Supp. 838 (D. N.M., 1994) ............................ 9

*Syntek Semiconductor Co., Ltd. v. Microchip Technology, Inc.*, 307 F.3d 775, 781 (9th Cir., 2002) .......................... 10

*U.S. ex rel. Holder v. Special Devices, Inc.*, 296 F. Supp.2d 1167, 1168 (C.D. Cal. 2003) ............................ 7

*United States v. Western P. R. Co.*, 352 U.S. 59,77 S. Ct. 161, 1 L. Ed. 2d 126 (1956) ............................ 10

*Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 241 (5th Cir. 1976)........................................................ 13

*West Coast Home Builders, Inc. v. Aventis Cropscience USA, Inc.*, 2006 U.S. Dist. LEXIS 48021 (N.D. Cal. July 6, 2006)............................................................................................................................... 10,11

4

5

6

7

8

9

10

11

**STATUTES**

42 U.S.C. § 9607(a)............................................................................................................................ 12

42 U.S.C. §9622(e)(6) ........................................................................................................................ 15

CERCLA §107(a).............................................................................................................................. 12

CERCLA §122 (e)(6) ........................................................................................................................ 15

12

13

14

**FEDERAL RULES**

Fed. R. Civ. Pro. 15(a)(2) ................................................................................................................. 17

15

16

**RULES**

Local Rule 7-18 ................................................................................................................... 4, 6, 7, 8

Local Rule 7-18(a)............................................................................................................................. 7

Local Rule 7-18(b) ............................................................................................................................ 7

Local Rule 7-18(c)............................................................................................................................. 7

17

18

19

20

21

22

23

24

25

26

27

28

ii

1

## I.   SUMMARY OF ARGUMENT

2

On March 27, 2008, the Court granted the Omega Group Defendants' Motion

3

to Stay all claims in this case, pending the completion by the U.S. Environmental

4

Protection Agency ("EPA") of a Record of Decision ("ROD") for the regional

5

groundwater contamination in an area including the Plaintiffs' Site and the Omega

6

Site.  Omega Group Defendants' Motion to Stay and Memorandum of Points and

7

Authorities Thereon, at p. 15; Plaintiffs' Request for Judicial Notice in Support of

8

Motion to Lift Stay, Ex. A.  (Hereinafter cited as "Motion to Stay".)  Now, less than

9

four months later, Plaintiffs have filed a Motion to Lift Stay.  There has been no

10

material change in the facts or circumstances since the Stay Order was issued –

11

EPA remains on track to complete its ROD by the previously announced target of

12

September 2009.  As recently as June 2008, EPA issued a Fact Sheet for the public

13

regarding the regional ground water investigation, referenced as Operable Unit Two

14

(OU-2), stating: "The EPA is near completion of the OU-2 RI, which will be

15

released for public review in mid 2008.  The OU-2 FS is expected to be complete in

16

late 2008 or early 2009."  EPA, Omega Chemical Superfund Site – Proposed Plan

17

for Soil Cleanup, June, 2008, at p. 2; Declaration of Larry G. Gutterridge in

18

Support of Opposition to Motion to Lift Stay, at Exhibit 1.  The only new "fact"

19

Plaintiffs have identified to justify lifting the current stay is their desire to amend

20

their Complaint to drop their claims for injunctive relief.  For the reasons shown

21

below, this argument has no merit and the Motion to Lift Stay should be denied.

22

First, Plaintiffs' Motion, coming so quickly after the Stay Order and

23

presenting no material change of facts or law, is nothing more than a Motion for

24

Reconsideration of the Stay Order.  The Motion violates Local Rule 7-18 because

25

Plaintiffs have failed to show any basis for reconsideration as required by Local

26

27

28

4

1   Rule 7-18, and have merely reasserted the same arguments they previously made in

2   opposition to the Motion to Stay.[1]

3       Second, the Motion to Stay was founded upon two alternative legal grounds:

4   primary jurisdiction and the Court's inherent discretionary authority to stay

5   litigation in the management of its docket. Motion to Stay, at p. 12; Reply in

6   Support of Motion to Stay, at pp. 4 & 7. The Court's inherent case management

7   authority provides an adequate and independent basis for the Stay Order. Plaintiffs'

8   Motion does not identify any grounds to challenge this basis for the stay, and the

9   Motion should be denied on that basis alone.

10      Third, the Stay Order is supported by the doctrine of primary jurisdiction.

11  Contrary to Plaintiffs' assertions, primary jurisdiction is applicable to claims for

12  solely monetary relief, and the proposed Amended Complaint does not eliminate

13  the grounds to apply primary jurisdiction in this case. There are no other new facts

14  or circumstances since the Court entered the Stay Order, and Plaintiffs have shown

15  no reason to vacate or modify the stay at this time.

16      Fourth, the considerations that supported the Court's Stay Order continue to

17  be present. It would materially aid the disposition of this case to allow EPA to

18  complete its RI/FS and ROD to select a remedy for the regional groundwater. In

19  addition, the Plaintiffs will not be substantially prejudiced by the stay. Plaintiffs'

20  have not shown any reason to lift the stay at this time, and their Motion should be

21  denied.

22

23

---

24  [1] As the Omega Group Defendants acknowledged in their Reply in Support of
    Motion to Stay, at 12:26-28, the Plaintiffs have the opportunity to move to lift the

25  stay at an appropriate time. However, as shown herein, there has been no change of
    circumstances material to the stay, and there is no basis to lift or modify the stay at

26  this time. Omega Group Defendants' Reply to Plaintiffs' Opposition to Motion to

27  Stay, at p. 12, lines 26-28; Plaintiffs' Request for Judicial Notice in Support of
    Motion to Lift Stay, Ex. C. (Hereinafter cited as "Reply in Support of Motion to

28  Stay".)

5

## II.   THE MOTION TO LIFT STAY IS, IN EFFECT, A MOTION FOR RECONSIDERATION, FOR WHICH PLAINTIFFS HAVE FAILED TO SHOW ANY BASIS, IN VIOLATION OF LOCAL RULE 7-18.

Plaintiffs' proposed Amended Complaint does not materially change the facts and circumstances bearing on the stay.  The proposed Amended Complaint is based upon the same alleged facts and causes of action as the original Complaint. Plaintiffs would propose simply to withdraw their requests for injunctive relief from the Third (nuisance) and Fourth (trespass) Causes of Action.[2]  However, all of the claims and allegations in the proposed Amended Complaint were also in the original Complaint.  There is nothing <u>new</u> in the proposed Amended Complaint; there is just a bit <u>less</u>.

The grounds for staying each of Plaintiffs' claims, including their claims for monetary relief, were briefed and submitted to the Court before the Stay Order. The Omega Group Defendants' Motion to Stay, at pp. 13-14, discussed each claim for relief and the reasons why each claim should be stayed.  Therefore, all of Plaintiffs' claims and requested remedies were before the Court and were ruled upon in the Stay Order.

In substance, therefore, the Motion to Lift Stay is actually a Motion for Reconsideration of the Stay Order.  As a Motion for Reconsideration, the Motion is subject to Local Rule 7-18, which specifies the only permissible grounds for a Motion for Reconsideration:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that

---

[2]  The proposed Amended Complaint would also drop a few defendants and correct the identification of others.  Proposed Amended Complaint, Declaration of Santino Tropea in Support of Motion to Lift Stay, Ex. 1.  The proposed Amended Complaint would also delete references to a potential RCRA cause of action. However, because the RCRA cause of action was not actually asserted in the original Complaint, this change does not involve any material difference between the original Complaint and the proposed Amended Complaint.

1
2
3
4
5
6

presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. No motion for reconsideration shall in any manner repeat any oral or written argument made in support of or in opposition to the original motion.

7    None of the requirements of Local Rule 7-18 is satisfied here. First, the

8    Motion to Lift Stay does not identify any <u>material</u> difference in fact or law from

9    that presented to the Court before the issuance of the Stay Order. The only change

10   cited in the Motion to Lift Stay is the proposed amendment of Plaintiffs'

11   Complaint. All of the other facts and law cited in the Motion to Lift Stay were in

12   existence and were argued (or available for argument) by Plaintiffs at the time of

13   the Stay Order. *See, e.g., U.S. ex rel. Holder v. Special Devices, Inc.*, 296 F.

14   Supp.2d 1167, 1168 (C.D. Cal. 2003) (rejecting Motion for Reconsideration

15   because it presented "no new arguments, facts or law.").

16   The proposed Amended Complaint is not a material change with respect to

17   the Stay Order because, as argued more fully below: (1) primary jurisdiction

18   remains applicable to Plaintiffs' claims for monetary relief, whether or not they are

19   joined with additional claims for injunctive relief; and (2) the Court's inherent

20   authority to manage litigation supplies an adequate and independent basis for the

21   stay, and Plaintiffs have not suggested that the proposed Amended Complaint has

22   any impact on this basis for the Stay Order.[3]

23   For the same reasons, the proposed Amended Complaint is not a <u>material</u>

24   new fact, which could be said to have "emerged" for purposes of Local Rule 7-

25   18(b). Finally, Local Rule 7-18(c) is inapplicable because Plaintiffs have not

26
27
28

[3] In addition, Plaintiffs have not explained why the tactic of amending their Complaint "in the exercise of reasonable diligence could not have been known to the party moving for reconsideration" at the time of the Stay Order, as required by Local Rule 7-18(a).

7

1   presented any basis in their Motion to support "a manifest showing of a failure to
2   consider material facts" before the Stay Order was entered.  Having failed to meet
3   the requirements of Local Rule 7-18, the Motion – which in substance seeks
4   reconsideration of the Stay Order – should be denied.

5   **III.   THE MOTION TO STAY WAS BASED UPON TWO ADEQUATE**
6          **AND INDEPENDENT GROUNDS – PRIMARY JURISDICTION AND**
7          **THE COURT'S INHERENT AUTHORITY TO CONTROL CASES ON**
            **ITS DOCKET – EACH OF WHICH IS SUFFICIENT TO SUPPORT**
8          **THE STAY ORDER.**

9          Plaintiffs' Motion to Lift Stay incorrectly states the basis for the Stay Order.
10  The Motion to Stay was founded not only upon the doctrine of primary jurisdiction,
11  but also upon the Court's inherent discretionary authority to issue stays of litigation
12  and to control its docket.  Motion to Stay at p. 12; Reply in Support of Motion to
13  Stay at pp. 4 & 7.  Each ground is independently sufficient to support the stay.

14
15         **A.     The Stay is Properly Supported by the Court's Inherent**
                   **Discretionary Authority to Manage Its Docket**
16
17         The Motion to Lift Stay entirely ignores the fact that the Motion to Stay was
18  based on the Court's inherent authority to stay the litigation.[4]  Courts have
19  frequently used stays in CERCLA litigation to control the orderly progress of the
20  case, including stays to allow the completion of RI/FS activities.  Reply in Support
21  of Motion to Stay at p. 7, and cases cited therein.

22
    _____
23  [4] For example, the Omega Group Defendants' Reply in Support of Motion to Stay,
24  at 4:18-23, stated:

25       The Court's discretionary authority to stay is a tool for the just and efficient
          resolution of litigation. *Landis* v. *North America Co.,* 299 U.S. 248, 254, 57
26        S. Ct. 163, 166 (1936).  A stay, whether based upon primary jurisdiction or
27        inherent authority, is appropriate here, pending the completion of the EPA's
          groundwater RI/FS and remedy selection, because EPA's investigation and
28        remedy selection will fundamentally affect all aspects of this case.

1   Plaintiffs' Motion completely fails to address this basis for the stay or to
2   show that the proposed Amended Complaint affects the application of the Court's
3   inherent discretionary authority as the basis for the Stay Order. On that basis alone,
4   the Motion to Lift Stay should be denied.

5   For example, the complementary nature of the two doctrines was highlighted
6   in *Citicasters Co. v. Country Club Communications*, 1997 U.S. Dist. LEXIS 17238
7   (C.D. Calif., July 21, 1997) (Judge Robert J. Kelleher). In that case, Judge Kelleher
8   issued a stay pending a decision by the U.S. Patent and Trademark Office's
9   Trademark Trial and Appeal Board ("TTAB") on cancellation of the trademark at
10  issue in the litigation. The Court noted that within the Ninth Circuit, the District
11  Courts are given "wide latitude" to order stays pending administrative or other
12  proceedings. The Court rested its decision on "the accepted canon that a decision to
13  stay rests primarily within the district court's discretion -- either under the briefed
14  "primary jurisdiction" doctrine or through the court's power to monitor its own
15  docket." *Citicasters*, 1997 U.S. Dist. LEXIS 17238, at *2.  (A copy of the
16  *Citicasters* decision is attached hereto as Exhibit A.)

17  **B.    The Doctrine Of Primary Jurisdiction Applies To Plaintiffs'**
18  **Claims For Monetary Relief, Whether Or Not They Are Joined**
19  **With Claims For Injunctive Relief.**

20  The Motion to Lift Stay is based upon Plaintiffs' erroneous view of the
21  doctrine of primary jurisdiction. Primary jurisdiction is applicable to claims for
22  monetary relief, whether or not they are joined with claims for injunctive relief.
23  Some cases have identified the presence of claims for injunctive relief as one factor
24  favoring the application of primary jurisdiction. *See, e.g., Schwartzman Inc. v.*
25  *Atchison, Topeka & Santa Fe Railway Co.*, 857 F. Supp. 838 (D. N.M., 1994)
26  (identifying the nature of the relief sought as one of five factors that the Court
27  considered). But Plaintiffs' assertion that "[a]bsent claims for injunctive relief,

28

9

1    courts do not recognize primary jurisdiction as grounds to stay litigation", Motion

2    to Lift Stay at 6:15-17, is flatly wrong.[5]

3         In fact, many of the leading cases applying the doctrine of primary

4    jurisdiction have involved claims for monetary relief. See, e.g., *Reiter v. Cooper*,

5    507 U.S. 258; 113 S. Ct. 1213; 122 L. Ed. 2d 604 (1993) (motor carrier's action to

6    collect shipping charges set by tariff); *United States v. Western P. R. Co.*, 352 U.S.

7    59,77 S. Ct. 161, 1 L. Ed. 2d 126 (1956) (railroads' action to collect shipping

8    charges set by tariff); *Davel Communications, Inc. v. Qwest Corp.*, 460 F.3d 1075

9    (9th Cir., 2006) (claims for reimbursement of telephone charges).

10        Further, courts have applied primary jurisdiction to stay CERCLA cost

11   recovery claims. In *Massachusetts v. Blackstone Valley Electric Co.*, 67 F.3d 981

12   (1st Cir., 1995), the Court of Appeals applied the doctrine of primary jurisdiction to

13   a CERCLA cost recovery claim, and stayed all proceedings pending EPA

14   proceedings. In *West Coast Home Builders, Inc. v. Aventis Cropscience USA, Inc.*,

15   2006 U.S. Dist. LEXIS 48021 (N.D. Cal. July 6, 2006), the Court granted a stay of

16   CERCLA cost recovery claims pending a California Department of Toxic

17   Substances Control investigation, on complementary grounds of primary

18   jurisdiction and judicial economy. In *Bennett v. Int'l Paper Co.*, 2005 U.S. Dist.

19   LEXIS 12185 (D. Minn., 2005), the court stayed all proceedings, including

20

21   [5] Note that the four factors traditionally applied in the Ninth Circuit regarding
22   primary jurisdiction do not specifically refer to the nature of the relief sought.
     Under the Ninth Circuit test, the doctrine applies where there is: (1) the need to
23   resolve an issue that (2) has been placed by Congress within the jurisdiction of an
     administrative body having regulatory authority (3) pursuant to a statute that
24   subjects an industry or activity to a comprehensive regulatory scheme that (4)
     requires expertise or uniformity in administration. *Davel Communications, Inc. v.*
25   *Qwest Corp.*, 460 F.3d 1075, 1086-1087 (9th Cir., 2006); *Syntek Semiconductor*
26   *Co., Ltd. v. Microchip Technology, Inc.*, 307 F.3d 775, 781 (9th Cir., 2002).  Given
     the wide latitude of the Court's discretion, other considerations such as injunctive
27   relief may be a factor in some cases, but the relief sought is not necessarily the
28   determining factor.                                    10

1    CERCLA cost recovery claims, pending completion of certain RI/FS activities.[6]

2    (The Court discussed the application of primary jurisdiction with apparent approval,

3    but ultimately based its stay order on the Court's inherent authority.)  There were

4    no claims for injunctive relief involved in the *Massachusetts v. Blackstone* case.

5    There were claims for injunctive relief present in the *West Coast* and *Bennett* cases,

6    but there is no indication in the opinions that the Court's analysis was affected by

7    the mere pendency of those claims.

8         Plaintiffs cite *Ryan v. ChemLawn Corporation*, 935 F.2d 129 (7th Cir., 1991)

9    for the proposition that after plaintiff in that case dropped her claims for injunctive

10   relief, "the doctrine [of primary jurisdiction] no longer applied".  Motion to Lift

11   Stay at 6:24-25.  However, the relief sought in *Ryan* was only one of several factors

12   that influenced the Court's decision, and the facts of that case are readily

13   distinguishable.  The *Ryan* Court recognized that the application of primary

14   jurisdiction lies within the court's discretion, and should involve a case-by-case

15   determination based on a variety of factors.  *Ryan*, 935 F.2d at 131.  The most

16   significant factor in the Court's decision was a lack of relevance between EPA's

17   administrative proceeding (regarding registration of a pesticide) and plaintiff's

18   claims for negligent misapplication of that pesticide.  The Court stated:

19

20   ───────────────
     [6]  There were two decisions in the *Bennett* case that addressed a stay.  The first
21   decision, dated June 21, 2005, granted a stay pending EPA's completion of a risk
     assessment, which is a component of the RI/FS process.  The second decision, dated
22   April 25, 2006, lifted the stay at a time when EPA's risk assessment had been
     substantially completed.  "The Court determines that the progress that the parties
23   and the EPA have made toward the issuance of the final Risk Assessment Report
     supports Plaintiffs' Motion to Lift the Stay."  *Bennett v. Int'l Paper Co.*, 2005 U.S.
24   Dist. LEXIS 12185, at *13 (D. Minn., 2006).  But, the Court delayed the end of the
25   stay for an additional two months to allow for the resolution of comments and
     finalization of EPA's risk assessment.  *Bennett*, at *16.  The court declined to
26   extend the stay for an even longer time, based on other considerations that the court
27   found unpersuasive on the facts.  It is the second *Bennett* decision that is cited in
28   Plaintiffs' Motion to Lift Stay, at p. 8-9.  11

1
2
3
4
5

> However, whether a particular pesticide meets the EPA's registration requirements or whether the EPA's regulation of a pesticide is somewhat flawed are not at issue, and the plaintiff is not required to prove either in order to prevail on her complaint. ... [T]he plaintiff's complaint involves a garden variety personal injury suit based on the defendant's alleged negligence, and as such, there is no reason for the EPA to be brought in.

6   *Ryan*, 935 F.2d at 132. The Court also identified the likelihood of delay as

7   another factor in its decision, and cited a related case, *Roberts v. ChemLawn*

8   *Corporation*, 716 F. Supp. 364 (N.D. Ill. 1989) for support. In fact, the *Roberts*

9   decision discloses that the EPA proceedings at issue in both *Ryan* and *Roberts* were

10  not then pending, and if begun were not likely to conclude for <u>over a decade</u>.

11  *Roberts*, 716 F.Supp. at 365-366.

12          In this case, by contrast, EPA's RI/FS is already in progress according to an

13  established and relatively short time schedule. More importantly, EPA's RI/FS and

14  ROD are directly relevant to Plaintiffs' claims. They will have a direct effect on

15  issues that go to the heart of Plaintiffs' CERCLA cost recovery claim, including the

16  costs to be incurred by Plaintiffs and others to implement EPA's selected remedy,

17  the allocation of those costs among numerous parties, and whether the costs

18  incurred by Plaintiffs and others to implement EPA's selected remedy were

19  "necessary" and "consistent with the national contingency plan." CERCLA

20  §107(a), 42 U.S.C. § 9607(a). Thus, the facts presented in the *Ryan* case were far

21  different from this case, and the *Ryan* decision provides no support for Plaintiff's

22  Motion to Lift Stay and should not be a guide for this Court's exercise of its

23  discretion.

24  **C.    This Court Retains Primary Authority to Adjudicate Plaintiffs'**
25        **Claims**

26          Plaintiffs argue that this case should not be stayed because EPA cannot

27  adjudicate their claims for cost recovery. Motion to Lift Stay at pp. 6-7. That

28  argument has no merit. The Supreme Court has confirmed that primary jurisdiction

12

"is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an administrative agency." *Reiter v. Cooper*, 507 U.S. 258, 268; 113 S. Ct. 1213, 1220; 122 L. Ed. 2d 604, 617 (1993).  Neither primary jurisdiction nor the Court's inherent discretionary authority to order a stay hinges upon the agency's jurisdiction or capacity to adjudicate the litigation.  To the contrary, the court retains the authority to finally resolve the litigation:

> What bears continual emphasis is that the Court neither passes off final decision to another tribunal nor escapes from its ultimate duty to decide.  For after the exercise of primary jurisdiction determination by the agency concerned, the case comes back in a suitable way for the Court, as a Court, to act.

*Usery v. Tamiami Trail Tours, Inc.*, 531 F.2d 224, 241 (5th Cir. 1976) (Brown, C.J., concurring).  *See also, Citicasters Co. v. Country Club Communications*, 1997 U.S. Dist. LEXIS 17238 (C.D. Calif., July 21, 1997), at *5 (emphasis added):

> Yet, ultimately, the court rests on precedent that does not require that the relevant administrative body's decisions bind or control -- or even create presumptions that effect -- its determinations.  **In granting the motion to stay, the court is confident that the TTAB will exercise its specialized knowledge in effecting a determination that will prove valuable to this court.**

There is no question that this Court (absent a settlement or other resolution such as a consent decree) will adjudicate Plaintiffs' claims following the lifting of the stay, but in making that adjudication, the Court and the parties will benefit from the results of EPA's RI/FS and remedy selection for the regional groundwater contamination.

Moreover, given the fact that the EPA will pursue a regional settlement and consent decree following the completion of the RI/FS and ROD -- likely including more Potentially Responsible Parties ("PRPs") that have not yet been named by Plaintiffs as defendants -- it behooves this Court from the standpoint of judicial

13

1   economy to continue the stay in effect in order to allow the EPA to complete its

2   process and resolve many of the issues in this case and perhaps eliminate the basis

3   for this case completely.  The matter will still come back to the Court for final

4   resolution, but with a range of issues advanced toward that resolution. An EPA-

5   driven resolution of the regional problem makes much more sense than an Angeles

6   Chemical Company-driven resolution.

7        Thus, primary jurisdiction applies to this case, regardless of the Plaintiffs'

8   attempt to amend their Complaint.  The Stay Order is supported by both the

9   doctrine of primary jurisdiction and the Court's inherent authority, notwithstanding

10  Plaintiffs' proposed amendment of their Complaint.

11  **IV.   THE MAINTENANCE OF THE STAY, TO ALLOW EPA TO**
    **COMPLETE ITS RI/FS AND ROD, WILL ASSIST THE**
12  **RESOLUTION OF THIS CASE AND WILL NOT PREJUDICE THE**
    **PLAINTIFFS**
13

14       The considerations that supported the Court's Stay Order continue to be

15  present.  It would materially aid the disposition of this case to allow EPA to

16  complete its RI/FS and ROD to select a remedy for the regional groundwater.  The

17  RI/FS will develop data concerning the regional groundwater within OU-2 needed

18  to adjudicate Plaintiffs' claims. The Plaintiffs' property and the Omega Site are

19  over 1.5 miles apart, and Plaintiffs' claims are based on alleged groundwater

20  migration between the two sites.  Determination of those migration issues will

21  require complex data concerning a large area.  Moreover, EPA has issued General

22  Notice Letters (GNLs) to ten (10) companies within OU-2 that are not involved in

23  this case but are the subjects of EPA's investigation and may be involved in EPA's

24  Record of Decision.  Email from Linda Ketellapper, Superfund Division, U.S.

25  Environmental Protection Agency, to Keith Millhouse dated, June 13, 2008,

26  attaching list of all OU-2 GNLs that have been issued.  Declaration of Larry G.

27  Gutterridge at Ex. 3.  It will be unworkable for the parties, through discovery and

28

14

1  their own uncoordinated efforts, to investigate the groundwater under many
2  different properties in a three square-mile area.

3      Moreover, knowledge of EPA's selected remedy is critical to an allocation of
4  CERCLA response costs and damages. Due to the size (approximately three square
5  miles) and complexity (numerous potential sources, multiple contaminants, and
6  variations in geological and hydrological conditions) of the regional groundwater
7  contamination, there is a significant possibility that different response actions may
8  be required at different sites. It would be unworkable to allocate the parties' fair
9  share of the regional groundwater response costs without understanding such basics
10 as what response actions will be taken, at what locations, which contaminants will
11 be targeted, who will take the response actions in the first instance, whether each
12 party's response costs were necessary and consistent with the national contingency
13 plan, and who is most responsible for causing the incurrence of each party's
14 response costs. All of those issues are under investigation by EPA and will have a
15 significant impact on the CERCLA cost recovery claims, but they cannot be
16 determined prior to EPA's remedy selection in the ROD. Further, it is likely that
17 any "early" discovery taken before EPA's remedy selection would have to be
18 retaken once EPA's full data and conclusions are available.

19      Plaintiffs will not be substantially prejudiced by the stay. Allowing EPA to
20 complete its RI/FS and ROD will assist the resolution of this litigation. In addition,
21 the stay will not delay the cleanup of Plaintiffs' property. A regional solution will
22 be needed to clean up the regional groundwater beneath Plaintiffs' property, and
23 EPA's RI/FS and ROD will be necessary to implement the regional groundwater
24 cleanup. Due to the effect of CERCLA §122 (e)(6), 42 U.S.C. §9622(e)(6), which
25 prohibits the implementation of other remedies without EPA's approval once EPA
26 has begun an RI/FS, it is unlikely that a regional groundwater remedy will occur
27 prior to the completion of EPA's remedy selection.

28

1    Further, in its General Notice Letter to the Angeles Plaintiffs, EPA indicated

2    that it does not intend to take legal action against the PRPs concerning the alleged

3    regional groundwater contamination until after the RI/FS is completed and the

4    remedy is selected.  EPA's letter stated that following the ROD, EPA plans to open

5    negotiations with all of the Omega Chemical PRPs, in which it will seek to have the

6    PRPs implement the groundwater remedy.  EPA August 9, 2007 General Notice

7    Letter to Plaintiffs, at pp. 2-3; Declaration of Larry G. Gutterridge at Ex. 2.  The

8    process EPA has proposed is consistent with the history of the Omega Superfund

9    Site.  Much of the remedial work previously taken at the Omega Site has been done

10   pursuant to consent decrees reached between EPA and various PRPs.  Complaint at

11   ¶ 155, 157, & 158.  For this reason, Plaintiffs are unlikely to incur substantial costs

12   to remediate the regional groundwater during the stay (as opposed to costs of

13   response actions on other areas of their site or testing costs ancillary to their

14   litigation with McKesson).[7]

15       All of these considerations were advanced in support of the Motion to Stay

16   (at pp. 13-14) and Reply in Support of Motion to Stay (at pp. 4-5), and the proposed

17   Amended Complaint has no impact on these facts.  Therefore, there is no basis to

18   lift the stay at this time.

19   **V.    IF THE MOTION FOR LEAVE TO AMEND IS GRANTED,**

20   **       PLAINTIFFS CLAIMS FOR INJUNCTIVE RELIEF SHOULD BE**

21   **       REMOVED FROM THE CASE WITH PREJUDICE**

22       Aside from their objections to Plaintiffs' Motion to Lift Stay, the Omega

23   Group Defendants do not object to the Motion for Leave to Amend, if the purpose

24   is truly to remove their injunctive relief claims.  However, the Omega Group

25   Defendants would object strenuously if the amendment were merely used as a

26   subterfuge.  Plaintiffs should not be allowed to switch their Complaint repeatedly at

27   [7] In their Motion, Plaintiffs stated that they are incurring response costs at their

28   site, but they did not specifically claim that they are incurring costs to actually clean

     up the regional groundwater.  See, e.g., Motion to Lift Stay at 10:26-28.

1   the whims of pretrial maneuvering.  In particular, Plaintiffs should not be allowed

2   to remove their claims for injunctive relief now, in support of their Motion to Lift

3   Stay, and later be allowed to amend their complaint again to reassert the same

4   claims.

5   Fed. R. Civ. Pro. 15(a)(2) provides, with respect to granting leave to amend:

6   "The court should freely give leave when justice so requires."  Attempts to abuse

7   the process by eliminating and later restoring the same claims would not be in the

8   interest of justice and should not be countenanced under Rule 15(a).  For this

9   reason, if the Court grants leave to amend, it should provide that the Plaintiffs'

10  withdrawal of their claims for injunctive relief would be with prejudice.

11  **VI.   CONCLUSION**

12  For the foregoing reasons, the Omega Group Defendants request the Court to

13  deny the Motion to Lift Stay.[8]

14

15

16

17

18

19

20

21

22  [8] Some of Plaintiffs' statements concerning the meet and confer process preceding

23  this Motion are misleading.  Motion to Lift Stay, at pp. 12-13.  Plaintiffs did not
    initially convene a true meet and confer process; rather, they sent a letter dated

24  April 16, 2008, announcing their intention to file a Motion, without any further

25  attempt at discussion.  *See*, Declaration of Santino Tropea in Support of Motion to
    Lift Stay, Ex. 2.  The Omega Group Defendants objected to this procedure and

26  requested a teleconference that would accommodate the large number of parties in

27  this case, as documented by letter dated April 22, 2008.  *See*, Declaration of Santino
    Tropea in Support of Motion to Lift Stay, Ex. 5.  It was only after Defendants'

28  objection that the Plaintiffs consented to a conference call among the parties.  *Id.*

17

1    Dated: August 3, 2008          HANNA AND MORTON LLP

2

3                                      By:

4                                        Larry G. Gutterridge
                                       Scott Lehecka

5

6                                    MILLHOUSE LAW GROUP

7

8                                        By:
                                       Keith F. Millhouse

9                                      Attorneys for Defendants

10                                      OMEGA CHEMICAL PRP GROUP
LLC; OMEGA CHEMICAL PRP

11                                      GROUP; 3M COMPANY; AVERY
DENNISON CORPORATION;

12                                      BOURNS, INC.; CALSONIC
CLIMATE CONTROLS, INC.;

13                                      GEORGE INDUSTRIES; HARSCO
CORPORATION; HILTON HOTELS

14                                      CORPORATION; HUBBELL,
INC.;HUNTINGTON PARK RUBBER

15                                      STAMP CO.; JAN-KENS
ENAMELING COMPANY; KOLMAR

16                                      LABORATORIES, INC.; LONZA,
INC.; MEDEVA

17                                      PHARMACEUTICALS, INC.;
PACIFIC PRECISION METALS, INC.;

18                                      QUALITY CARRIERS, INC.;
RATHON CORPORATION; REMET

19                                      CORPORATION; ROGERS
CORPORATION; TENSION

20                                      ENVELOPE CORPORATION; L-3
SERVICES, INC. NAMED HEREIN

21                                      AS TITAN CORPORATION; UNION
PACIFIC RAILROAD COMPANY;

22                                      WARNER LAMBERT COMPANY;
AND YORK INTERNATIONAL, INC.

23

24

25

26

27

28

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

19

LEXSEE 1997 U.S. DIST. LEXIS 17238, 4

**CITICASTERS CO., Plaintiff, v. COUNTRY CLUB COMMUNICATIONS, a California corporation, Defendant.**

**Case No. 97-0678 RJK**

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**1997 U.S. Dist. LEXIS 17238; 44 U.S.P.Q.2D (BNA) 1223**

**July 21, 1997, Decided**
**July 21, 1997, Filed**

**DISPOSITION:**    [*1] Motion to stay granted. Plaintiff's motion for a preliminary injunction and defendant's ex parte application for a continuance denied, the former without prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant communications corporation requested that the court stay the proceeding so as to await the resolution of the United States Patent and Trademark Office's (PTO's) pending cancellation proceeding involving the mark in dispute. Plaintiff broadcaster filed a motion for a preliminary injunction.

**OVERVIEW:** The communications corporation sought the stay on the grounds that the court had discretion and because some of the issues would be discussed by the PTO's Trademark Trial and Appeal Board in making its decision. The court held that the decision to stay rested primarily within its discretion either under the "primary jurisdiction" doctrine or through the court's power to monitor its own docket. The broadcaster suggested that a period of additional years would have resulted had the court stayed the matter. However, the court held that the broadcaster provided no support for the supposition and failed to show demonstrable harm if the stay was granted. The court granted the stay, further holding that because of the efficiencies generated by the board first addressing the issues involved in the matter, and holding that any minor delay was countered by the speed at which the court would ultimately decide the issues. The court held that there would be little in the way of new discovery and the legal issues, though not disposed of, would be clearly set out.

**OUTCOME:** The court granted the stay of the proceeding, because there was no demonstrable harm and the opinion of the board would prove valuable in determining the outcome of the case. The court therefore denied broadcaster's motion for the preliminary injunction.

**COUNSEL:** For CITICASTERS CO, plaintiff: Alexander H Rogers, Gray Cary Ware Freidenrich, San Diego, CA.

For COUNTRY CLUB COMMUNICATIONS, defendant: Donald M Cislo, Daniel M Cislo, Cislo & Thomas, Santa Monica, CA.

For COUNTRY CLUB COMMUNICATIONS, counter-claimant: Donald M Cislo, Daniel M Cislo, Cislo & Thomas, Santa Monica, CA.

For CITICASTERS CO, counter-defendant: Alexander H Rogers, Gray Cary Ware Freidenrich, San Diego, CA.

**JUDGES:** Robert J. Kelleher, United States District Court.

**OPINION BY:** Robert J. Kelleher

**OPINION**

MEMORANDUM OF DECISION AND ORDER GRANTING COUNTRY CLUB'S MOTION TO STAY

Defendant Country Club Communications asks the court to stay these proceedings so as to await the resolution of the United States Patent and Trademark Office's (the "PTO's") pending cancellation proceeding involving the KIIS Mark in dispute. Defendant and Plaintiff Citicasters present to the court a number of decisions -- some

Case 5:07-cv-01471-TJH-E   Document 675   Filed 08/03/08   Page 23 of 23

Page 2

1997 U.S. Dist. LEXIS 17238, *; 44 U.S.P.Q.2D (BNA) 1223

of which suggest deference to administrative panels, while others instruct that courts do not generally defer [*2] to the PTO's Trademark Trial and Appeal Board ("TTAB"). *See e.g., Driving Force, Inc. v. Manpower, Inc.,* 498 F. Supp. 21 (E.D. Pa. 1980) (ordering stay pending TTAB resolution of opposition proceeding); *C-Cure Chem. Co. v. Secure Adhesives Corp.,* 571 F. Supp. 808 (W.D.N.Y. 1983). *Compare with, Goya Foods, Inc. v. Tropicana Products, Inc.,* 846 F.2d 848 (2d Cir. 1988) (finding that a PTO proceeding was not a proper basis to stay the law suit); *E & J Gallo Winery v. F. & P. S.p.A.,* 899 F. Supp. 465 (E.D. Cal. 1994) (adopting the analysis set out in *Goya Foods*). It appears to the court that these contrasting holdings merely reinforce the accepted canon that a decision to stay rests primarily within the district court's discretion -- either under the briefed "primary jurisdiction" doctrine or through the court's power to monitor its own docket.

The Ninth Circuit has held that "[a] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, [*3] administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Leyva v. Certified Grocers of Cal., Ltd,* 593 F.2d 857, 863-64 (9th Cir. 1979) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.,* 342 U.S. 180, 72 S. Ct. 219, 96 L. Ed. 200 (1952); *Landis v. North American Co.,* 299 U.S. 248, 254-55, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (additional citations omitted)). The court went on to state: "In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." 593 F.2d at 864. The Ninth Circuit is yet to back off from the wide latitude given to district courts under this practical rule, most recently upholding the language of *Leyva* in *Agcaoili v. Gustafson,* 844 F.2d 620, 624 (9th Cir. 1988), *rev'd on other grounds,* 870 F.2d 462 (9th Cir. 1989). In affirming the district court's power to regulate its docket, the Supreme Court has recently stated "the District Court has broad discretion to stay proceedings as an incident to its power to control its own [*4] docket. *Clinton v. Jones,* 137 L. Ed. 2d 945, 117 S. Ct. 1636, 1639 (1997) (citing *Landis v. North American*

*Co.,* 299 U.S. 248, 254, 57 S. Ct. 163, 165-66, 81 L. Ed. 153 (1936)). Though in *Clinton,* the Supreme Court overruled the grant of a stay, the court recognized that a stay is acceptable when the court properly takes into account the effect of delay and the stage of proceedings.

Because of the lack of demonstrable harm if a stay should be granted, and because of the efficiencies generated by the TTAB first addressing the issues involved in this matter, the court hereby stays the current proceedings. As to potential harm, plaintiff suggests that a period of additional years will result should the court stay the matter. Plaintiff provides no support for this supposition. Certainly, however, plaintiff is correct that deferring to an administrative body over which this court will eventually exercise *de novo* review will result in some time passing before this court makes its determinations. Yet the court finds that any minor delay is countered by the speed at which this court will ultimately be able to decide the issues herein, after the TTAB has offered its essentially [*5] advisory opinion. There will be little in the way of new discovery and the legal issues, though not disposed of, will be clearly set out.

The court acknowledges the reasoning present in such cases as *American Bakeries Co. v. Pan-O-Gold Baking Company,* 650 F. Supp. 563, 566 (D. Minn. 1986) (noting that "the proceedings and determinations of the PTO are of limited importance in a federal court proceeding"). Yet, ultimately, the court rests on precedent that does not require that the relevant administrative body's decisions bind or control -- or even create presumptions that effect -- its determinations. In granting the motion to stay, the court is confident that the TTAB will exercise its specialized knowledge in effecting a determination that will prove valuable to this court. Commensurate with this order, plaintiff's motion for a preliminary injunction and defendant's ex parte application for a continuance are denied, the former without prejudice.

IT IS SO ORDERED.

Date: JUL 21 1997

Robert J. Kelleher

United States District Court