1  Jeffery L. Caufield (SBN 166524)
   jeff@caufieldjames.com
2  Kenneth E. James (SBN 173775)
   ken@caufieldjames.com
3  CAUFIELD & JAMES, LLP
   2851 Camino Del Rio South, Suite 410
4  San Diego, California 92108
   Telephone: 619-325-0441
5  Facsimile : 619-325-0231

6  Attorneys for Plaintiffs, Angeles
   Chemical Company, Inc., John Locke,
7  and Greve Financial Services, Inc.

8
                **UNITED STATES DISTRICT COURT**
9
            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
10

11  ANGELES CHEMICAL COMPANY,        )  CASE NO. EDCV 07-1471 (TJH)
    INC., a California corporation, JOHN )  (JWJx)
12  LOCKE, an individual, GREVE       )
    FINANCIAL SERVICES, INC., a       )  REPLY IN SUPPORT OF
13  California corporation,            )  PLAINTIFFS' MOTION TO LIFT
                                       )  STAY AND FOR LEAVE TO FILE
14            Plaintiffs,              )  FIRST AMENDED COMPLAINT
                                       )
15      v.                            )  Date: August 18, 2008
                                       )  Time: Under Submission
16  OMEGA CHEMICAL PRP GROUP          )  Room: 17
    LLC; OMEGA CHEMICAL PRP           )  Judge: Hon. Terry J. Hatter, Jr.
17  GROUP; et al.;                    )
                                       )  Discovery Cut-Off:      TBD
18            Defendants              )  Pre-Trial Conference:   TBD
                                       )  Trial Date:             TBD
19                                     )
                                       )
20

21

22

23

24

25

26

27

28

Table of Contents

I.    Introduction................................................................................1

II.   The Doctrine Of Primary Jurisdiction, Which Was The Basis Of Defendants'
      Prior Motion, Does Not Support A Continued Stay Absent Injunctive
      Relief................................................................................3

      A. Defendants Brought Their Prior Motion On Grounds Of Primary
         Jurisdiction....................................................................3

      B. The Primary Jurisdiction Doctrine Does Not Support A Continued Stay
         Absent Any Potential For Concurrent Jurisdiction...........................4

      C. Defendants' Case Law Actually Supports Angeles' Motion To Lift The
         Stay...........................................................................4

III.  This Court Should Not Impose An Indefinite Stay Under Its Inherent
      Authority To Control Its Docket................................................6

      A. Defendants Offer No Legal Authority Or Plausible Reason Why The
         Court Should Stay This Case In Order To Control Its Docket...............6

      B. The EPA's Selection Of A Groundwater Remedy Will Have No Effect
         On This Court's Allocation Of Liability And Will Not Otherwise Assist
         The Resolution Of This Case..................................................7

            1.   A Pending Record Of Decision Is Irrelevant To The Amended
                 Complaint And Does Not Justify A Stay..............................8

            2.   A Pending Remedial Investigation/Feasibility Study Does Not
                 Justify A Stay......................................................9

            3.   Defendant's Sole And Only Case In Support Of The Stay Is Off
                 Point And Irrelevant................................................10

            4.   Even If A Completed Remedial Investigation/Feasibility Study
                 And Record Of Decision Would Assist In This Litigation, The
                 Relatively Small Amount Of Aid That Would Be Provided Does
                 Not Justify The Length Of This Stay................................11

REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

1
2
   C. The EPA Is Not An Impartial Body And This Court Should Not Be
      Guided Solely By The EPA's Efforts…………………………………11

3
4
IV. The Prejudice To Angeles And The Public Requires Resolution Of This
    Matter Now………………………………………………………………...12

5
6
   A. The Continued Harm To The Public Supports Lifting The
      Stay……………………………………………………………….......12

7   B. Angeles Has No Redress Absent Litigation………………………12

8   C. Angeles' Liability Expands Each Day This Litigation Is Stayed………13

9
10
   D. Defendants' Claims Of Ripeness Are Inaccurate And Have Already Been
      Rejected……………………………………………………………13

11
12
   E. Discovery Should Proceed Due To The Serious Potential For Loss Of
      Evidence………………………………………………………………...14

13
14
15
   F. The Policy Behind CERCLA Is To Allow Both The EPA's Investigation
      And Private Litigation To Proceed Side By Side To Maximize Efficiency
      And Avoid Harm To The Public……………………………………16

16  V. Defendants' Procedural Arguments Are Unfounded………………………17

17   A. Angeles' Motion Is Timely……………………………………………...17

18   B. Angeles' Motion Is Not One For Reconsideration……………………17

19
20
   C. Angeles' Claims For Injunctive Relief Should Be Removed Without
      Prejudice………………………………………………………………...18

21  VI. Not All Defendants Oppose Lifting The Stay………………………………...18

22  VII. Conclusion………………………………………………………………19

23
24
25
26
27
28

REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

Table of Authorities

**<u>CASES</u>**

<u>Bennett v. International Paper Co.</u>

No. Civ. 05-38RHKRLE, 2005 WL 1459656 (D.Minn. Jun 21, 2005)……...5

vacated by:

No. Civ. 05-38RHKRLE, 2006 WL 1116124 (D.Minn. Apr 25, 2006)……..5

<u>Blue Cross and Blue Shield of Alabama v. Unity Outpatient Surgery Center, Inc.</u>

490 F.3d 718 (9th Cir. 2007)………………………………………………7

<u>Boeing Co. v. Cascade Corp.</u>

207 F.3d 1177 (9th Cir. 2000)……………………………………………14

<u>Carson Harbor Village, Ltd. v. Unocal Corp.</u>

270 F.3d 863 (9th Cir. 2001)………………………………………..…16

<u>Citicasters Co. v. Country Club Communications,</u>

No. 97-0678 RJK, 1997 WL 715034 (C.D.Cal. Jul 21, 1997)…………….....10

<u>Dependable Highway Exp., Inc. v. Navigators Ins. Co.</u>

498 F.3d 1059 (9th Cir. 2007)……………………………………6, 11

<u>DMJ Associates, LLC v. Capasso</u>

228 F.Supp.2d 223 (E.D.N.Y. 2002)……………………………………6

<u>Field Entertainment, Inc. v. ASPCA</u>

523 F.Supp.2d 1 (D.D.C. 2007)…………………………………………11

<u>Kelley v. EPA</u>

15 F.3d 1100 (D.C. Cir. 1994)…………………………………………4

<u>Keystone Coke Co. v. Pasquale</u>

No. Civ. A. 97-6074, 1999 WL 126917 (E.D.Pa. Mar 09, 1999)………….13

<u>Landis v. North American Co.</u>

299 U.S. 248 (1936)……………………………………………..6-7

<u>Leyva v. Certified Grocers of California, Ltd.</u>

593 F.2d 857 (9th Cir. 1979)…………………………………………11

REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

Lockyer v. Mirant Corp.

    398 F.3d 1098 (9th Cir. 2005)……………………………………………..6-7

Massachusetts v. Blackstone Valley Electric Co.

    67 F.3d 981 (1st Cir. 1995)………………………………………………..5

Mercury Motor Express, Inc. v. Brinke

    475 F.2d 1086 (5th Cir. 1973)……………………………………………4

Pagtalunan v. Galaza

    291 F.3d 639 (9th Cir. 2002)……………………………………………15

Ryan v. Chemlawn Corp.

    935 F.2d 129 (7th Cir. 1991)……………………………...............1, 4

Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.

    857 F.Supp. 838 (D.N.M. 1994)………………………………….......4

United States v. Burlington Northern & Santa Fe Ry. Co.

    520 F.3d 918 (9th Cir. 2008)…………………………...………………16

**STATUTES & CODES**

42 U.S.C. § 9613(g)………………………………………………………..24

Local Rule 7-18………………………………………………………17

REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

## I.    INTRODUCTION

Angeles Chemical Co., Inc., John Locke, and Greve Financial Services, Inc. (collectively "Angeles") respectfully request that this Court lift the stay of litigation and permit Angeles to file a First Amended Complaint.

First, the removal of <u>all</u> prior claims for injunctive relief renders the doctrine of primary jurisdiction inapplicable. The EPA has **no role** in litigation that seeks only monetary damages or allocation of liability. See <u>Ryan v. Chemlawn Corp.</u>, 935 F.2d 129, 131 (7th Cir. 1991). Case law is clear: Absent any potential for *concurrent jurisdiction* between the EPA and a Court, primary jurisdiction does not support a stay of a CERCLA action. Defendants do not cite a single case that states differently. Therefore, the basis for Defendants' prior motion is moot, and the stay should be lifted.

Second, this Court should not entertain Defendants' request that this Court continue the stay pursuant to its inherent authority to manage its docket. Defendants do not make any showing of "hardship or inequity" as required to stay an action under the Court's inherent authority to manage its docket. Rather, Defendants simply request that the Court stay this case until the EPA issues a Record of Decision (ROD) —for up to three years or more—under the false impression that any EPA activity will *assist* the parties and the Court. Even if this is taken as true, convenience alone is not a legal ground for staying litigation. However, the EPA's selection of a remedy has **no effect** on the Court's *allocation* of regional liability to implement that remedy, has no effect on the assessment of damages incurred in *past* and *ongoing* cleanup on the Angeles site, and will not otherwise assist the parties' experts in reaching their own opinions independent from that of the EPA. Rather, the EPA's issuance of a ROD is simply an arbitrary date selected by Defendants to further delay a cleanup they should have begun over twenty-five years ago.

Third, serious concerns of irreparable prejudice should compel lifting the stay. Angeles is expending hundreds of thousands of dollars cleaning up the

1   contamination beneath its site, which expert evidence suggests is caused by
2   Defendants' chemicals and their continuing and recurring impact on the
3   groundwater beneath the Angeles site. Angeles has no redress absent litigation.
4   Moreover, Defendants' persistent contamination exposes Angeles to increased
5   regional liability <u>each day</u> that the regional groundwater plume expands. It is for
6   this reason that declaratory relief actions regarding allocation of liability are
7   litigated *contemporaneously* with EPA action. Combined with other prejudicial
8   concerns such as the loss of Potentially Responsible Parties (PRPs), many of whom
9   have filed for bankruptcy and dissolved, witnesses dying and memories fading, and
10  the risk that physical evidence will be lost or destroyed during a lengthy stay
11  (pending litigation involving massive liability), this Court should lift the stay so
12  discovery may proceed immediately.

13          Lastly, a continued stay contravenes the central purpose of CERCLA, which
14  is to ensure the prompt and effective cleanup of waste disposal sites.  Allowing
15  CERCLA actions and EPA investigation to run contemporaneously furthers this
16  intent by coordinating discovery in the lawsuit with data development in the EPA
17  investigation. A lengthy stay of a CERCLA litigation would set a dangerous
18  precedent—it would allow big companies to pollute the environment, contaminate
19  the drinking water of many thousands of residents, and postpone any liability until
20  completion of governmental agency "action"—as has happened for the last twenty-
21  five (25) or more years. Therefore, Angeles respectfully requests that this Court lift
22  the stay imposed and permit Angeles to file its First Amended Complaint.

23  //
24  //
25  //
26  //
27  //
28  //

REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

## II. THE DOCTRINE OF PRIMARY JURISDICTION, WHICH WAS THE BASIS OF DEFENDANTS' PRIOR MOTION, DOES NOT SUPPORT A CONTINUED STAY ABSENT INJUNCTIVE RELIEF

### A. Defendants Brought Their Prior Motion on Grounds of Primary Jurisdiction

Defendants sought, and were granted, a stay of this litigation pursuant to the doctrine of <u>primary jurisdiction</u>. This is clearly articulated in Defendants' notice of motion and motion to stay, filed February 8, 2008:

> **The motion will be brought on grounds that the Court should apply the primary jurisdiction doctrine and stay this litigation** to allow the United States Environmental Protection Agency to resolve certain technical issues through its specialized expertise, prior to judicial consideration of the legal claims in the litigation. (Request for Judicial Notice "RJN" at ¶ 2; Notice of Motion at 3:17-21)(emphasis added).[1]

In an effort to abide by the principles underlying the Court's order, Angeles has removed all claims for injunctive relief in its First Amended Complaint to allow its monetary claims to proceed. In light of this change, the primary jurisdiction doctrine no longer applies to this litigation, and the fundamental basis for Defendants' Motion to Stay is moot.

//

//

---

[1] Since Defendants' prior Motion to Dismiss, Motion to Stay, and all accompanying pleadings clearly provided that their stay was based solely on the application of the "primary jurisdiction" doctrine, the Court's Order was presumably based on the same. Defendants' current assertion that "the Motion to Stay was based on the Court's inherent authority to stay the litigation" is unfounded and contrary to its own pleadings. (See Omega PRP Group, LLC's Opposition "Omega Oppo" at 8:17-18). For the reasons further articulated below, this Court should not now invoke its inherent authority to stay the litigation.

### B. The Primary Jurisdiction Doctrine Does Not Support A Continued Stay Absent Any Potential for Concurrent Jurisdiction

Case law is clear that CERCLA cases for monetary relief *only* may not be stayed pursuant to the doctrine of primary jurisdiction. See Ryan v. Chemlawn Corp., 935 F.2d 129, 131 (7th Cir. 1991) (holding that the doctrine no longer applied once the plaintiff has dropped claims for injunctive relief). This is because the doctrine of primary jurisdiction "comes into play when a court and an administrative agency have ***concurrent jurisdiction*** over the same matter. . . ." Mercury Motor Express, Inc. v. Brinke, 475 F.2d 1086, 1091 (5th Cir. 1973)(emphasis added). *Ryan* makes clear that the EPA **has no role** in a lawsuit seeking monetary damages or an allocation of liability because liability issues may only be decided by the Court. Ryan at 131; Kelley v. EPA, 15 F.3d 1100, 1105 (D.C. Cir. 1994). In fact, "Courts refuse to defer jurisdiction if the plaintiff is seeking damages for injury to property or person, as this is the type of relief courts routinely consider." Schwartzman, Inc. v. Atchison, Topeka & Santa Fe Ry. Co., 857 F.Supp. 838, 843 (D.N.M. 1994); Kelley, 15 F.3d at 1105 ("Liability issues are to be decided by the court"). Therefore, **the fundamental principle behind the doctrine cannot apply because the EPA has no jurisdiction to entertain Angeles' claims**, **let alone concurrent jurisdiction.** Defendants have provided no argument or case law stating differently.

### C. Defendants' Case Law Actually Supports Angeles' Motion to Lift The Stay

Defendants continue to allege that this litigation is somehow dependent on the EPA. These sweeping claims are patently false. Defendants do not explain what authority or jurisdiction the EPA still has in this litigation absent claims for injunctive relief. Defendants cite no case law in support of the theory that the primary jurisdiction doctrine may apply absent concurrent jurisdiction. In fact,

1    Defendants admit that nearly all of their cases allegedly supporting a stay of

2    monetary claims for relief actually involved injunctive claims as well. (See Omega

3    Oppo at 11:5).

4        Particularly confusing is Defendants' reliance on <u>Bennett v. International

5    Paper Co.</u>, Not Reported in F.Supp.2d, 2005 WL 1459656 (D.Minn. Jun 21, 2005)[2]

6    as supporting a stay pending EPA's risk assessment. First, the case was decided

7    pursuant to the Court's "inherent power" and not primary jurisdiction. <u>Id</u>. at *4.

8    More importantly, **this case was vacated** by <u>Bennett v. International Paper Co.</u>,

9    Not Reported in F.Supp.2d, 2006 WL 1116124 at * 3 (D.Minn. Apr 25, 2006) (cited

10   in Angeles' brief), wherein the Court **<u>refused</u>** to continue a stay for two years or

11   until the EPA selects a final remedy.  Since this case was vacated for the <u>exact</u>

12   proposition which Defendants' offer it, it appears that Defendants have attempted to

13   pull the wool over the Court's eyes.

14       Defendants also cite <u>Massachusetts v. Blackstone Valley Electric Co</u>, 67 F.3d

15   981 (1st Cir. 1995) as the only example of a case that was stayed without involving

16   claims for injunctive relief. It is unclear how Defendants jump to the conclusion

17   that <u>Blackstone</u> did not involve injunctive claims. A review of <u>Blackstone</u> reveals

18   that the Court provides <u>no discussion</u> of any claims for relief. In any event,

19   <u>Blackstone</u> is easily distinguishable as it involved deference to the EPA's

20   interpretation of "cyanides," an issue could not be answered as matter of law. <u>Id</u>. at

21   986. This case hardly supports Defendants' cause as there are no similar issues in

22   this litigation that only the EPA can answer, and no issues in which this Court lacks

23   expertise. Only the Court may allocate liability and provide monetary damages.

24   This should not be genuinely in dispute. Plaintiffs' and Defendants' experts

25   evaluate the existing data and assist the Court in allocating responsibility. The EPA

26   is <u>not</u> the "ultimate expert" in this litigation.

27

28
---
[2] Defendants cite the LEXIS version of this case but do not attach it in violation of
the local rules. Angeles has provided the WestLaw citations for each.

REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

1    Defendants have completely failed to provide any authority that would

2    support a continued stay of a CERCLA action pursuant to the doctrine of primary

3    jurisdiction absent any potential for concurrent jurisdiction.   Therefore, Angeles

4    requests that this Court lift the stay and proceed to adjudicate the CERCLA action

5    absent claims for injunctive relief.

6    **III.    THIS COURT SHOULD NOT IMPOSE AN INDEFINITE STAY**

7    **UNDER ITS INHERENT AUTHORITY TO CONTROL ITS DOCKET**

8    **A. <u>Defendants Offer No Legal Authority or Plausible Reason Why</u>**

9    **<u>The Court Should Stay This Case in Order to Control Its</u>**

10   **<u>Docket</u>**

11   The Court should similarly decline to continue the stay for reasons of "docket

12   management" as Defendants' request.[3]   A federal court has a general duty to

13   adjudicate all controversies properly before it. <u>DMJ Associates, LLC v. Capasso,</u>

14   228 F.Supp.2d 223, 227 (E.D.N.Y. 2002).   A stay pursuant to docket management

15   is generally applied only when there exist pending independent *proceedings*—

16   judicial, administrative, or arbitral in character—which bear upon the case. See

17   <u>Dependable Highway Exp., Inc. v. Navigators Ins. Co.</u>, 498 F.3d 1059, 1066 (9th

18   Cir. 2007). Even in those circumstances, stays are a drastic and disfavored measure,

19   and should be entered only where the facts are especially compelling.   <u>DMJ</u>

20   <u>Associates</u>, *supra,* at 232; <u>Landis v. North American Co.</u>, 299 U.S. 248, 255

21   (1936)(a stay of litigation is granted only in "rare circumstances").   In determining

22   whether to grant a motion to stay, "the competing interests which will be affected

23   by the granting or refusal to grant a stay must be weighed." <u>Lockyer v. Mirant</u>

24   <u>Corp.</u>, 398 F.3d 1098, 1110 (9th Cir. 2005).[4] The moving party must "make out a

25   _____

26   [3] In recognition of the inapplicability of the primary jurisdiction doctrine,
     Defendants now try to switch the basis for their original motion to maintain the

27   stay. This is in bad faith and misrepresentative of their prior motion.
     [4] These interests include: 1) the possible damage which may result from the

28   granting of a stay, 2) the hardship or inequity which a party may suffer in being
     required to go forward, and 3) the orderly course of justice measured in terms of the

1   clear case of hardship or inequity in being required to go forward." <u>Landis</u>, 299

2   U.S. at 255; <u>Lockyer</u>, 398 F.3d at 1109 (emphasis added).

3       The EPA's investigation and preparation of a Record of Decision is not a

4   pending judicial, administrative, or arbitral proceeding requiring the stay of this

5   litigation while the rights of a party are decided in another forum, thus there are no

6   legal grounds to invoke the Court's inherent authority to stay this litigation.

7   Moreover, **Defendants do not even attempt to argue that proceeding with**

8   **litigation would cause hardship or inequity.** On these grounds alone, the stay

9   should be lifted as a matter of law.

10      Instead, Defendants request that this case stayed in favor of docket

11  management by alleging that litigation would essentially be easier once the EPA

12  completes its ROD. **Case management alone is not sufficient grounds to stay**

13  **proceedings**. *See* <u>Lockyer v. Mirant Corp.</u>, 398 F.3d 1098, 1112 (9th Cir. 2005)

14  (holding that a stay was inappropriate where grounds other than judicial economy

15  were offered and found to lack merit). Because "lengthy and indefinite stays place a

16  plaintiff effectively out of court," a stay creates a "danger of denying justice by

17  delay." <u>Blue Cross and Blue Shield of Alabama v. Unity Outpatient Surgery</u>

18  <u>Center, Inc.</u>, 490 F.3d 718, 723 (9th Cir. 2007). Neither the law nor the facts here

19  support a continued and lengthy stay on such grounds. Moreover, the EPA's action

20  will not make this litigation any "easier" as explained below.

21      **B. <u>The EPA's Selection of a Groundwater Remedy Will Have No</u>**

22         **<u>Effect on This Court's Allocation of Liability and Will Not</u>**

23         **<u>Otherwise Assist The Resolution of This Case</u>**

24      Defendants continue to paint an oversimplified and inaccurate picture of the

25  EPA's function and purpose in this litigation. This case is presently stayed pending

26  the EPA's submittal of an Remedial Investigation and Feasibility Study (RI/FS) and

27  _____

28  simplifying or complicating of issues, proof, and questions of law which could be
    expected to result from a stay. <u>Id</u>.

REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

completion of a Record of Decision (ROD), which Defendants go so far as to claim will "resolve many of the issues in this case and perhaps eliminate the basis for this case completely." (Omega Oppo at 14:2-3). Univar filed a separate opposition, even claiming that a stay of litigation will avoid "potentially inconsistent decisions." (Univar Oppo at 10:3). This is impossible, and represents a misunderstanding of the claims asserted in the Amended Complaint, the function of the EPA, and their role in this litigation.

### 1. A Pending Record of Decision is Irrelevant to The Amended Complaint and Does Not Justify A Stay

The EPA's Record of Decision selecting a cleanup remedy is entirely irrelevant since Angeles no longer seeks to compel affirmative action with respect to groundwater cleanup.

The Record of Decision (ROD) is a public document that explains which cleanup alternatives will be used to clean up a Superfund site. A ROD contains site history, site description, site characteristics, community participation, enforcement activities, past and present activities, contaminated media, the contaminants present, scope and role of response action and the remedy selected for cleanup. (Supplemental Declaration of Santino Tropea "Supp Decl." at ¶ 2; Exh. 8)

All information that is contained in a ROD is immediately discoverable now. **The EPA's breakdown of that information three or more years from now does not justify staying the litigation simply because it will be more convenient to review the information in summarized form**.

The only information that is not known now is what remedy the EPA will ultimately select. As detailed in Angeles' moving papers, the remedy has **no effect** on the Court's *allocation* of regional liability or on damages incurred in past and ongoing cleanup on the Angeles site. Defendants would have this Court believe that

1    depending on the remedy, the damages will differ. However, any allocation is based

2    on percentages. Whether the EPA selects method #1 costing $1 million or method

3    #2 costing $100 million, the EPA's remedy will have **no effect** on this Court's

4    allocation of liability for those costs. (The remedy would only be relevant to an

5    order requiring Defendants abate the contamination—which is no longer sought).

6    Furthermore, if the EPA's representations are even close to accurate regarding the

7    time it will take to complete the RI/FS and ROD, the Court's allocation will occur

8    long after the EPA selects a remedy for the regional plume. A stay of litigation will

9    only serve to delay the eventual cleanup of the groundwater. It is for this reason that

10   private CERCLA causes of action and EPA investigations should proceed

11   concurrently.

12            **2.  A Pending Remedial Investigation/Feasibility Study Does**

13                 **Not Justify A Stay**

14           Similarly, finalization of the EPA's RI/FS will not assist this litigation and

15   thus does not justify a continued stay. The purpose of the RI/FS is to report and

16   "evaluate *existing* data" and summarize it in a single document for review. (Supp.

17   Decl. at ¶ 3, Exh. 9)(emphasis added).  The RI/FS will not discuss or determine the

18   various parties' chemical handling, shipment and/or relative contributions, which is

19   information that is developed in an entirely separate court proceeding regarding a

20   final allocation figure.  Liability will turn on Defendants' roles and conduct—facts

21   which are uncovered through discovery, not through the EPA's groundwater

22   investigation and remedy selection. Accordingly, the RI/FS has nothing to do with

23   the  fact-finding  necessary  to  determine  liability.  Delaying  discovery  will

24   unnecessarily prolong the underlying litigation and cleanup of the actual plume for

25   years by delaying the final adjudication of the relative liabilities. Defendants offer

26   no justification why discovery should not proceed now.

27

28

REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

### 3. Defendant's Sole and Only Case in Support of The Stay is Off Point and Irrelevant

In support of their contention that the Court should stay this case pursuant to the Court's inherent authority to control its docket, the Omega Defendants cite and attach a single, two-page, unreported decision regarding a stay involving a trademark issue. See Omega Oppo at 9:6, citing Citicasters Co. v. Country Club Communications, Not Reported in F.Supp., 1997 WL 715034 (C.D.Cal. Jul 21, 1997).[5] Citicasters provides little fact or background, and does not involve a CERCLA case. In that case, the Court granted a stay to allow the United States Patent and Trademark Office to *resolve a pending cancellation dispute.* In other words, the PTO would be acting in a judicial capacity and making factual determinations. Thus, the court merely articulated that a stay of the case may be appropriate "pending resolution of independent proceedings which bear upon the case"—whether judicial, administrative or arbitral in character. Id. The rationale behind a stay pending administrative proceedings of this type is that the administration may perform fact-finding and determine an issue bears on the case.

This is completely distinguishable from the EPA's issuance of an RI/FS and ROD. As noted *supra,* the EPA will not determine factual issues or determine the rights and liabilities of the parties. Rather, the EPA will merely summarize all the data and information that has been gathered, and select the cheapest cleanup remedy available. Thus, the rationale of Citicasters simply does not apply, and Citicasters should not be followed. Therefore, since Defendants have provided no authority which supports a stay for "docket management" purposes under the facts of this case, their request should be denied.

---

[5] Univar cites no relevant case other than those merely articulating the standard.

**4.  Even if A Completed Remedial Investigation/Feasibility Study and Record of Decision Would Assist in This Litigation, The Relatively Small Amount of Aid That Would be Provided Does Not Justify The Length of This Stay**

In light of the general policy favoring stays of short, or at least reasonable, duration, it is improper to issue a stay without any indication that it will only last for a reasonable time.  <u>Dependable High Exp., Inc. v Navigators Ins. Co.</u>, *supra,* at 1066-1067.  There is no indication that a stay pending the EPA's issuance of an RI/FS and ROD will only last for a reasonable time in this matter.  While Defendants originally alleged that the RI would be completed by June 2008, it is now three months past that deadline and there is still no sign of an RI. (Supp. Decl. at ¶ 4; Exh. 10; Declaration of Christopher W. Lichens at ¶ 7).   Effectively, the length of this stay is uncertain, and is based on whatever amount of time it takes the EPA to produce an RI/FS and ROD.  Case law makes clear that **stays should not be of an indefinite nature**. See <u>Dependable High Exp. Inc. v. Navigators Ins. Co.,</u> *supra,* at 1066-1067; <u>Field Entertainment, Inc. v. ASPCA,</u> 523 F.Supp.2d 1, 5 (D.D.C. 2007); <u>Leyva v. Certified Grocers of California, Ltd.,</u> 593 F.2d 857 (9th Cir. 1979).

**C.  <u>The EPA is Not an Impartial Body and This Court Should Not Be Guided Solely by The EPA's Efforts</u>**

Defendants have also confusingly portrayed the EPA as a final arbiter of many issues relating to this litigation and placed it atop a pedestal on which it does not belong. The EPA discovered the source of the contamination at issue in the 1980's. (Supp. Decl. at ¶ 5; Exh. 11). Nonetheless, **<u>the EPA has not done anything in responding to the Omega Plume in over twenty-five (25) years</u>**. There has been no action to clean up the groundwater or protect the public. Not a drop of regional groundwater has been remediated. Rather, the EPA and the hundreds of large companies responsible for the massive contamination in Los

Angeles County have sat by without having to answer to anyone for the contamination that has since spread over three miles in length and enveloped Angeles' site. It is for this type of inexplicable delay that the Courts are assigned sole responsibility for deciding issues of liability—not a government-run entity that is subject to the influence of large companies and has completely failed to protect the public. Besides not having the expertise or authority to allocate liability, the EPA is simply not an independent body such as the Court.[6] Defendants have enjoyed not pursuing this issue for over a quarter of a century, however this Court should not stand by waiting for the EPA any longer.

## IV.   THE PREJUDICE TO ANGELES AND THE PUBLIC REQUIRES RESOLUTION OF THIS MATTER NOW

### A. The Continued Harm to The Public Supports Lifting The Stay

The Omega Plume was not always three miles long. Each day of inactivity, the regional groundwater plume expands and further contaminates the regional drinking water. By determining an allocation of responsibility, this case is set to determine cleaning-up the drinking water of highly dense industrial, commercial and residential population. The health and safety of the environment and a large general population of many thousands of residents within Los Angeles County are impacted. These environmental issues should be decided now before this Court.

### B. Angeles Has No Redress Absent Litigation

The continued prejudice to Angeles stemming from further delay also supports lifting the stay. Angeles is expending hundreds of thousands of dollars relating to soil sampling, installation of groundwater monitoring wells, sampling such wells and having all samples analyzed, drilling soil borings for the purposes of cleaning up the contamination beneath its site—contamination which expert evidence proves is caused by Defendants' chemicals.  As it stands, Angeles has no

---

[6] Moreover, the PRPs to the Omega Plume consist of over a dozen governmental bodies, including the city and county of Los Angeles, United States Departments of Defense and Agriculture, etc.

redress in any venue. In <u>Keystone Coke Co. v. Pasquale,</u> No. Civ. A. 97-6074, 1999 WL 126917 (E.D.Pa. Mar 09, 1999), the Eastern District Court of Pennsylvania refused to stay a case pending a defendant's negotiation of a settlement with the EPA for this exact reason.  The Court noted that granting stays pending EPA action would have the undesired result that "a claim for contribution by a party with substantial cleanup costs could easily be frustrated." <u>Keystone</u> at *5. Absent any further potential for conflict with the EPA's efforts, there is no justification to continue to preclude and delay Angeles' recovery of its damages.

### C. <u>Angeles' Liability Expands Each Day This Litigation is Stayed</u>

Defendants' contamination not only continues to damage the Angeles site on a recurring basis, but also exposes Angeles to increased liability to other parties each day that the regional groundwater plume expands. The EPA has informed Angeles that it is potentially liable for contamination that has migrated onto and off of its site <u>now</u>. (Supp. Decl. at ¶ 6; Exh. 12). Defendants have already alleged that Angeles contaminated its own site. This claim, albeit incorrect, proves that Defendants intend to lay blame on Angeles for contamination to the Omega plume. **Each day the plume increases in size, contaminates another piece of property, and is not cleaned up, Defendants intend to blame Angeles for that contamination.  At the same time, Defendants refuse to allow Angeles to pursue cleanup remedies.** This double standard is fundamentally unfair and should not be allowed.

### D. <u>Defendants' Claims Of Ripeness Are Inaccurate and Have Already Been Rejected</u>

Defendants also claim that the Court should continue the stay because the EPA indicated it does not intend to take legal action until after a remedy is selected. (Oppo at 16:1-14). This argument is improper and lacks merit on a number of grounds.

REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

First and most importantly, this exact claim of ripeness was raised pursuant to Defendants' Motions to Dismiss. (Supp. Decl. at ¶ 7; Exh. 13). This Court has already rejected it, and the argument is improperly re-asserted here. (Request for Judicial Notice at ¶ 7).

Second, as stated immediately above, Angeles is potentially liable for contamination that has migrated onto and off of its site now. The EPA has already initiated action against Angeles. Angeles' declaratory relief action regarding allocation of liability is arguably *required* to be litigated contemporaneously with EPA action. In cost recovery actions, "the court **shall** enter a declaratory judgment on liability for response costs ... that will be binding on any subsequent action or actions to recover further response costs...." 42 U.S.C. § 9613(g), emphasis added; Boeing Co. v. Cascade Corp., 207 F.3d 1177, 1191 (9th Cir. 2000). "CERCLA was intended to encourage quick response and to place the costs on those responsible. Declaratory relief serves these purposes because all parties…will know their share of costs before they are incurred. . . ." Boeing, 207 F.3d at 1191. "The costs and time involved in relitigating issues as complex as these, where new costs are incurred, would be massive and wasteful. Declaratory relief allocating future costs is therefore consistent with the broader purposes of CERCLA." Id.

The policy behind CERCLA does not support a stay of litigation pending EPA action, but rather exactly the opposite. Defendants' far-reaching arguments to the contrary must fail in light of this policy.

## E. Discovery Should Proceed Due to The Serious Potential for Loss of Evidence

Significantly, Defendants offer no plausible argument why discovery cannot proceed. The Omega Chemical Corporation began operating over thirty years ago, from 1976 through 1991. (Supp. Decl. at ¶ 5). When combined with the normal duration of discovery in environmental case, well over thirty years will have passed from the time information was first available. Additional unnecessary delay caused

1   by a stay "inherently increases the risk that witnesses' memories will fade and

2   evidence will become stale." <u>Pagtalunan v. Galaza</u>, 291 F.3d 639, 643 (9th Cir.

3   2002). "[I]n some cases plaintiffs may go out of business awaiting recovery or face

4   irreparable harm during the time that their suits are on ice." <u>Id</u>.

5         Here, these concerns are already a reality, and will only be compounded by

6   further delay. A number of witnesses in the *Angeles v. McKesson* litigation have

7   either passed away or been stricken with illnesses which will not allow them to

8   testify. (See also Declaration of Larry Gutteridge at Exhibit 3, page 34, ¶ 4). Quite

9   frankly, given the number of parties to this litigation and the time period of

10  concern, there is a probable risk that additional witnesses may pass away,

11  documents will be misplaced, lost or destroyed, and that Plaintiffs' rights will

12  therefore be severely impaired. Plaintiff John Locke is over 80 years old and seeks

13  to resolve these issues as soon as possible so his children don't have to.

14        Moreover, as can be seen from the Amended Complaint, Angeles has

15  removed a number of defendants that already filed for bankruptcy, dissolved, or

16  have disappeared. (Tropea Decl. at Exhibit 1). Each of those Defendants bore some

17  responsibility for the regional groundwater problem. Further delay after this lawsuit

18  has been filed will simply encourage smaller, equally responsible Defendants to do

19  the same.

20        Lastly, the risk that physical evidence will be lost or destroyed if this

21  litigation is postponed is very real.  As briefed to this Court on prior occasions,

22  McKesson used the time period during a lengthy tolling agreement as an

23  opportunity to destroy thousands of operational documents relating to the then-

24  pending litigation. (Supp. Decl. at ¶ 8; Exh. 14). Thus, there is a real concern that

25  further delay would prejudice all parties to this litigation, and yet another reason

26  why this Court should lift the stay.

27        Defendants do not address these issues, but rather offer only a brief,

28  unsupported theory that "any 'early discovery' taken before EPA's remedy

selection would have to be retaken." (Omega Oppo at 15:16-18). Defendants cite no authority for the proposition that a *potential* for retaking discovery justifies a stay of an entire litigation for upwards three years. Nonetheless, as briefed in Angeles' moving papers, the EPA's "full data" to be used the RI/FS and ROD is already available. Again, the EPA simply takes existing data and summarizes it in a single document for review. (Supp. Decl. at ¶ 3; Exh. 9). Discovery will not change or need to be retaken from any parties. Only discovery from the EPA itself would differ over time. However, supplemental discovery requests from governmental agencies occur in every CERCLA case, as agencies provide comments and reports throughout the litigation and <u>until the cleanup is complete</u>. Governmental investigation simply does not affect the merits of litigation. Delay until all EPA input is complete would be unworkable and would contravene the very purpose of CERCLA.

**F. <u>The Policy Behind CERCLA Is To Allow Both The EPA's Investigation and Private Litigation to Proceed Side By Side To Maximize Efficiency and Avoid Harm To The Public</u>**

Lastly, a continued stay contravenes the central purpose of CERCLA, which is to recover the cost of contamination and to ensure the prompt and effective cleanup of waste disposal sites. <u>Carson Harbor Village, Ltd. v. Unocal Corp.</u>, 270 F.3d 863, 880 (9th Cir. 2001); <u>United States. v. Burlington Northern & Santa Fe Ry. Co.</u>, 520 F.3d 918, 939 (9th Cir. 2008). CERCLA's policy of prompt cleanup will not be served if Defendants delay the commencement of the action. Rather, CERCLA actions and the EPA's investigation should proceed side by side as the issues involved in each are mutually exclusive. A stay of litigation will simply allow big companies to pollute the environment and continue to get away with it— as has happened for the last twenty-five (25) or more years.

REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT

1    **V.    DEFENDANTS' PROCEDURAL ARGUMENTS ARE UNFOUNDED**

2        **A. <u>Angeles' Motion Is Timely</u>**

3        The Omega Group filed an opposition arguing that Angeles' motion was

4    improper because it was filed "so quickly after the Stay Order." (Omega Oppo at

5    4:22). Univar filed a separate opposition claiming that Angeles's motion should be

6    stricken as "untimely" due to its "unreasonable delay." (Univar Oppo at 3:25-4:9).

7    While the Defendants' own arguments are inconsistent and disorganized, the fact is

8    that Defendants themselves stated that "Plaintiffs would be free to move the Court

9    to reactivate the litigation at any time they believe such a step to be warranted."

10   (RJN at ¶ 5; Reply at 12:26-28). Angeles believes that a lift of the stay is warranted

11   pursuant to the Amended Complaint, and Defendants should be bound by their

12   prior representations.

13       **B. <u>Angeles' Motion Is Not One for Reconsideration</u>**

14       The instant motion is not one for reconsideration. This Court was previously

15   presented with the issue of whether Angeles' injunctive requests (i.e. that

16   Defendants clean up and abate their contamination) should be stayed and, if so,

17   whether all claims for monetary relief may be stayed as well pursuant to the

18   doctrine of primary jurisdiction. (RJN at ¶¶ 2-4). Neither Angeles nor any

19   Defendants briefed the issues contained in Angeles' moving papers. A brief review

20   of Angeles' Opposition to the Stay and Motion to Lift the Stay makes clear that the

21   arguments are different. While some of the case law may overlap, Local Rule 7-18

22   does not preclude further and alternative use of a case simply because it was

23   presented in a prior motion.

24       In any event, the First Amended Complaint and removal of all claims for

25   injunctive relief constitute new facts under Local Rule 7-18(b) that should compel

26   the Court to lift the stay. It does not matter that Defendants erroneously believe the

27   differences in fact are "just a bit less." (Omega Oppo at 6:11). **The removal of**

28   **Angeles' injunctive claims is a material change in fact that alters the entire**

1  **landscape of the litigation.** Therefore, this "reconsideration" argument does not

2  hold water.

3  **C. <u>Angeles' Claims for Injunctive Relief Should Be Removed</u>**

4  **<u>Without Prejudice</u>**

5  Angeles seeks to voluntarily withdraw its claims, with the intent of

6  ***permanently*** removing them from this litigation, so that it may pursue damages and

7  an allocation of regional liability. Environmental law has changed significantly over

8  the last decade, and environmental cases tend to last a number of years. If the law

9  or factual circumstances change during the course of this litigation, Angeles should

10  be permitted to re-assert injunctive claims in the future. Angeles made clear in its

11  Motion, and re-asserts here, that it has ***no intention*** of adding claims for injunctive

12  relief unless the law changes. Moreover, Defendants are protected because this

13  Court has the discretion to deny any request to add claims in the future if such a

14  request was ever brought.  Defendants' claims that Angeles is acting in "bad faith"

15  is simply baseless rhetoric and the same "scare tactic" forecasted in Angeles'

16  moving papers. This Court should allow removal of the injunctive claims without

17  prejudice.

18  **VI.   NOT ALL DEFENDANTS OPPOSE LIFTING THE STAY**

19  A number of Defendants do not oppose lifting the stay.[7] It appears that these

20  parties, including McKesson Corporation and the Sorkin Parties, share Angeles'

21  interest in re-activating this litigation, establishing Defendants' respective liability,

22  and removing the groundwater contamination in the region and beneath the Angeles

23

---

24  [7] Angeles did not receive an opposition or joinder relating to Angeles' Motion to
25  Lift Stay and for Leave to File First Amended Complaint from McKesson
   Corporation; Harvey Sorkin; Seymour Moslin; the Estate of Paul Maslin; Donna
26  and Robert Berg; Pearl Rosenthal; The Estate of Arnold Rosenthal; Datatronics
   Romoland Inc.; Macy's West (a division of Macy's Department Stores, Inc.)
27  successor-in-interest to Broadway Stores, Inc. and The May Department Stores
   Company, LLC; MICO, Inc.; or Federal-Mogul Corporation, former parent of Huck
28  Manufacturing Company.

1  site as quickly as possible.   Therefore, this Court should lift the stay and allow

2  Angeles to file a First Amended Complaint.

3  **VII.   CONCLUSION**

4         Based on the foregoing reasons and those articulated in Angeles' moving

5  papers, Angeles respectfully requests that this Court lift the stay of litigation and

6  permit Angeles to file a First Amended Complaint removing all claims for

7  injunctive relief.

8

9  Presented By:                              Caufield & James LLP

10

11  Dated: August 11, 2008

12                                            Santino M. Tropea, Esq.
                                              Attorneys for Plaintiffs

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY BRIEF IN SUPPORT OF MOTION TO LIFT STAY/FILE FIRST AMENDED COMPLAINT