# Exhibit 4



LEXSEE 1995 U.S. DIST. LEXIS 22308

ACME FILL CORPORATION, Plaintiff, vs. ALTHIN CD MEDICAL, INC., et al., Defendants. AND RELATED COUNTERCLAIMS AND CROSS-CLAIMS.

Case No. C 91-4268 MMC

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

*1995 U.S. Dist. LEXIS 22308*

**October 31, 1995, Decided**
**November 2, 1995, Filed**

**DISPOSITION:** [*1] Special master recommended that motion for Order Approving Settlements, Barring Contribution and /or Indemnity Claims Against Settling Defendants and Dismissing with Prejudice all Claims by and against Settling Defendants be granted.

**COUNSEL:** For ACME LANDFILL CORP., Plaintiff: Thomas H. Clarke, Jr., Robert G. Ittig, Ropers Majeski Kohn & Bentley, Redwood City, CA.

For GENERAL CHEMICAL CORPORATION, NEW HAMPSHIRE OAK, INC., NHO, INC., defendants: Ronald C. Hausmann, Margaret E. Deane, Munger Tolles & Olson, San Francisco, CA.

For ROHM AND HAAS CO., defendant: Ronald C. Hausmann, M. Elizabeth Deane, Munger Tolles & Olson, San Francisco, CA.

For SHELL OIL CO, defendant: John J. Verber, Larson & Burnham, Oakland, CA.

For SHELL OIL CO, defendant: Brian S. Haughton, James A. Bruen, R. Morgan Gilhuly, Michele S. Benson, Landels Ripley & Diamond LLP, San Francisco, CA.

For BENICIA, CITY OF, defendant: Shawn Mason, City of Benicia, Benicia, CA.

For PLEASANT HILL, CITY, defendant: Michelle Marchetta Kenyon, McDonough Holland & Allen, Oakland, CA.

For MARTINEZ SANITARY SERVICE, defendant: Anthony B. Varni, Varni Fraser Hartwell Lanferman & Rodgers, Hayward, CA.

For BOYD OLNEY, [*2] JR., defendant: Ken D. Little, Little & Saputo, Walnut Creek, CA.

For PHILLIPS PETROLEUM COMPANY, defendant: Barry S. Sandals, J. Edgar Pew, Sean M. Mahoney, Morrison & Foerster LLP, San Francisco, CA.

For SILVIO GARAVENTA, JR., defendant: Vincent L. Johnson, William A. Brockett, Legal Strategies Group, Emeryville, CA.

For UNITED STATES OF AMERICA, U.S. AIRFORCE, Third-party Defendants: Sylvia Quast, Washington, DC.

For USX CORPORATION, Counter-claimant: Gary J. Smith, Brett P. Moffatt, Beveridge & Diamond, San Francisco, CA.

For CONCORD, CITY OF, CONCORD DISPOSAL SERVICE, Counter-claimants: Vincent L. Johnson, William A. Brockett, Legal Strategies Group, Emeryville, CA.

Case 5:07-cv-01471-TJH-E   Document 773-4   Filed 02/02/10   Page 3 of 11

Page 2
1995 U.S. Dist. LEXIS 22308, *2

For ROHM AND HAAS CO., Counter-claimant: Ronald C. Hausmann, M. Elizabeth Deane, Munger Tolles & Olson, San Francisco, CA.

For GENERAL CHEMICAL CORPORATION, NEW HAMPSHIRE OAK, INC., NHO, INC., Counter-claimants: Ronald C. Hausmann, Margaret E. Deane, Munger Tolles & Olson, San Francisco, CA.

For PHILLIPS PETROLEUM COMPANY, Cross-defendant: Barry S. Sandals, J. Edgar Pew, Morrison & Foerster LLP, San Francisco, CA.

For MT. VIEW SANITARY DISTRICT, RODEO SANITARY DISTRICT, [*3] Cross-defendants: David J. Levy, Martinez, CA.

For ACME LANDFILL CORP., Cross-defendant: Thomas H. Clarke, Jr., Robert G. Ittig, Ropers Majeski Kohn & Bentley, Redwood City, CA.

For W-T UNIVERSAL ENG, Third-party Plaintiff: Randall D. Morrison, John Lynn Smith, Crosby Heafey Roach & May, Oakland, CA.

For ROHM AND HAAS CO., Cross-claimant: Ronald C. Hausmann, M. Elizabeth Deane, Munger Tolles & Olson, San Francisco, CA.

For GENERAL CHEMICAL CORPORATION, NEW HAMPSHIRE OAK, INC., NHO, INC., Cross-claimants: Ronald C. Hausmann, Margaret E. Deane, Munger Tolles & Olson, San Francisco, CA.

For FIBREBOARD CORPORATION, Cross-claimant: Joseph A. Darrell, Kristen A. Jensen, Sheppard Mullin Richter & Hampton, San Francisco, CA.

For SHELL OIL CO, Cross-claimant: John J. Verber, Larson & Burnham, Oakland, CA.

For SHELL OIL CO, Cross-claimant: Brian S. Haughton, James A. Bruen, R. Morgan Gilhuly, Michele S. Benson, Landels Ripley & Diamond LLP, San Francisco, CA.

For ACME LANDFILL CORP., Counter-defendant: Thomas H. Clarke, Jr., Robert G. Ittig, Ropers Majeski Kohn & Bentley, Redwood City, CA.

**JUDGES:** Richard Urdan (Ret.), Special Master.

**OPINION BY:** Richard Urdan

**OPINION**

[*4] FINDINGS AND RECOMMENDATION TO APPROVE SETTLEMENTS BETWEEN PLAINTIFF,ACME AND PHILLIPS PETROLEUM CORPORATION, TIDEWATER OIL COMPANY, GENERAL CHEMICAL CORPORATION, NEW HAMPSHIRE OAK, INC., NHO, INC., ALLIED SIGNAL INC.AND ROHM & HAAS, DEFENDANTS

**I-*INTRODUCTION***

Defendants, General Chemical Corporation, New Hampshire Oak, Inc., NHO, Inc., and Allied Signal ( collectively referred to hereafter as General) and plaintiff, Acme Fill Corp. (Acme) have agreed to settle the dispute that has arisen between them relating to the Acme Landfill in Martinez, California. New Hampshire and NHO, Inc. were named as parties as parent entities to General Chemical.

Defendants, Rohm & Haas, Phillips Petroleum Corporation (Phillips) and Tidewater Oil Company (Tidewater) likewise, have reached separate settlement agreements with plaintiff, Acme.

Chemical, Rohm & Haas, Phillips and Tidewater (Settling Defendants) each filed a motion for an Order Approving Settlements, Barring Contribution and /or Indemnity Claims Against Settling Defendants and Dismissing with Prejudice all Claims by and against Settling Defendants. Although there are separate motions they will be discussed together [*5] because each motion is for the entry of an Order with essentially the same provisions based upon application of the Uniform Comparative Fault Act (UCFA).

Defendants in the Industrial Group filed a notice of no opposition to the motions. Defendants, Municipal Group, Garaventa Group (Garaventa) and Waste Management (Waste) have filed oppositions to each proposed settlement. Garaventa partially opposes the motions to seek clarification of the scope of any order with respect to the effect of the settlement on cross-claims by and against Settling Defendants.

Acme filed a complaint against Settling Defendants and thirty some odd other non-settling defendants seeking to recover costs related to closure of the North Parcel of the Acme landfill. The North Parcel is a segment of the Acme landfill (the others are the South and East Parcels)

that accepted hazardous waste until 1987 and household waste until 1989. Acme has alleged that the Settling Defendants, among others, generated hazardous substances that were sent to the North Parcel for disposal. Based upon that allegation, Acme has claimed that Settling Defendants are liable to Acme for closure and post-closure costs

Acme's [*6] Third Amended Complaint asserts claims for cost recovery under Section 107 of CERCLA; contribution under Section 113 of CERCLA; injunctive relief and restitution under RCRA, declaratory judgment that all defendants are strictly, jointly and severally liable to Acme under Section 113(g) of CERCLA and under other state and federal legal principles; contribution under *Section 25363 of the California Health and Safety Code*; other equitable relief and attorneys' fees. Related cross-claims have been asserted against Settling Defendants by non-settling defendants

**II-*SETTLEMENT PROVISIONS***

Each Proposed Order Approving Settlements has these basic provisions:

1-Any and all cross-claims for contribution and/or indemnity arising under federal law or state law by any non-settling party against Settling Defendants are barred and dismissed with prejudice, and any cross-claims for contribution and/ or indemnity arising under federal law or state law by Settling Defendants are barred and dismissed with prejudice.

2-Any and all state law claims asserted by any non-settling party against Settling Defendants are dismissed with prejudice, and any state law claims by Settling [*7] Defendants are dismissed with prejudice.

3-The principles of the Uniform Comparative Fault Act (UCFA) shall govern the effect of settlement of both federal and state law claims on the non-settling parties. Pursuant to Section 6 of the UCFA, Acme's recovery, if any, on its asserted and assertable claims against the non-settling parties, whether arising under federal and state law and notwithstanding California Code of Civil Procedure Section 877, shall be reduced by the amount of the Settling Defendants' equitable and proportionate shares of liability, as will be determined later by the Court in the allocation of recoverable costs and damages incurred by Acme.

All parties agree that the courts have recognized a strong federal interest in promoting settlement of complex CERCLA actions. To facilitate early and complete settlements of private cost recovery actions, courts have used their settlement approval authority together with their ability to impose broad contribution bars to allow settling defendants to free themselves from the litigation. Federal courts have often ordered dismissal and bar of cross-claims against settling parties in order to facilitate settlement in environmental [*8] clean up cases. *Barton Solvents, Inc. v. Southwest Petro-Chem, Inc., 834 F. Supp. 342, 345 (D. Kan. 1993)*; *U.S. v. SCA Services of Indiana, Inc., 827 F. Supp. 526, 531 (N.D. Ind. 1993)*; *Comerica Bank-Detroit v. Allen Industries, Inc., 769 F. Supp. 1408, 1414-1416* (E.D. Mich. 1991.

In reviewing settlements courts have closely examined the impact of the settlement on the non-settling defendants, and to avoid unfair prejudice to non-settling defendants under a contribution bar, in many cases, have applied the Uniform Comparative Fault Act (UCFA). Section 6 of UCFA provides:

A release, covenant not to sue, or similar agreement entered into between a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other person liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2.

The advantages of UCFA have been enumerated as follows:

1-UCFA provides for equitable [*9] apportionment of responsibility, and where there is a partial settlement, the judgment is reduced by the proportionate fault of the settling defendant who is then discharged;

2-complex partial settlements involving multiple parties, claims, or theories are more easily resolved (without the imprecision of allocation prior to trial by the court under the pro tanto (UCATA) theory;

3-the need for a good faith hearing is eliminated as the proportionate credit is not based on the amount of the settlement;

4-total settlement is encouraged after partial settlement as a culpable non-settler cannot escape responsibility when a settling defendant pays more than his fair share and cannot gamble on a jury verdict in view of a guaranteed credit; this serves also to deter wrongful conduct. *United States v, Western Processing Co. Inc., 756 F. Supp. 1424 1430-31 (W.D. Wash. 1990)*.

The Ninth Circuit has not ruled that UCFA, UCATA, or some other standard should govern in CERCLA settlements. It has, however, applied the same scheme to securities cases. *Franklin v. Kaypro Corp., 884 F.2d 1222 (9th Cir. 1989)*.

Under the UCFA approach, a plaintiff's [*10] settlement with one defendant discharges that defendant from liability for contribution and reduces the plaintiff's claim against the non-settling defendants by the amount of the released persons equitable share of the obligation. If the settling parties liability is eventually adjudicated to be greater than the settlement amount, the plaintiff's total recovery will be reduced accordingly. Under the provisions of Section 6 of the UCFA Acme bears the risk that the ultimate liability of the Settling Defendants may exceed the settlement amount but because Acme's known reserves may be insufficient to fund that excess, should it occur, the possibility arises, as discussed below, that non-settling defendants, not Acme, could bear that risk.

Applying UCFA forces the plaintiff "to obtain a settlement that is closely related to the probable proportionate share for which the settling defendant would have been responsible.;" *Comerica Bank-Detroit v. Allen Indus., Inc., 769 F. Supp. 1408, 1414 (E.D. Mich. 1991)*. It is appropriate that the principles of UCFA govern the effect of settlement of both federal and state law claims in this case

### III-*THE OPPOSITION TO THE* [*11] *MOTIONS*

The Municipal Defendants and Waste Management raise two fundamental problems with the proposed settlements. One is what they characterize as the insufficient and unreliable data concerning the volume and toxicity of waste contributed by each Settling Defendant to the North Parcel which dictates against the approval of the settlements without first permitting additional discovery, followed by a fairness hearing.

The other is the potential impact of additional costs on the non-settling defendants that will arise if Acme cannot fund its share of the closure and post-closure costs even though the Settling Defendants state that by applying the UCFA these settlements do not create a risk that the non-settling defendants will pay more than their fair share.

A This issue is based upon a concern that UCFA does not provide adequate protection for non-settling defendants because Acme does not have the necessary funds for closure and post-closure. These settlement amounts will leave Acme with a large shortfall at the end of the case because Acme can only recover from the other parties their individual shares of liability. Waste and Municipal Defendants perceive a risk that [*12] at the end of the case Acme will be insolvent or bankrupt, and that it will abandon the landfill, leaving closure to the State of California or the EPA. Those agencies are then likely to pursue claims against the non-settling defendants, who ordinarily could seek contribution from other responsible parties, including the Settling Defendants, but the settlement contribution bar would prevent that. In that event, the non-settling defendants may be exposed to an enforcement action by Federal or state authorities to recover cleanup costs while Settling Defendants would be free from government claims by application of the settlement contribution bar.

This fear is not justified, however, where the state or federal government does step in to complete the cleanup and brings a cost recovery action. If the governmental agency brings an action to recover its costs incurred in closure it is agreed that the Settling Defendants and the non-settling defendants would be liable as the action would be one not arising out of Acme's claims. The contribution bar in the settlement agreements does not get the Settling Defendants out in that situation.

However, if the state or federal government [*13] steps in to have the remaining litigants other than the settling parties complete closure that would not be a suit by the government seeking recovery of its costs. That arguably would not be a government claim, but could be construed as governmental action arising out of Acme's claim in which case the non-settling defendants would have no contribution rights because of the contribution bar in the settlement agreements.

Another scenario is that Acme abandons the landfill, (and in the unlikely event that no governmental agency

steps in to complete the landfill closure), and money must be found to complete closure and post-closure. It appears that of reallocation of Acme's share to the non-settling defendants could occur under Sections 2 and 6 of the UCFA. Examples given of the application of those two sections indicate that a reallocation of an uncollectible share from one defendant to other defendants is available on motion to the court where there is a defendant who has liability but from whom the plaintiff cannot collect. In the event of Acme's inability to fund its share, on the same theory and applying the examples under Sections 2 and 6 a motion to reallocate that share among [*14] the non-settling defendants is conceivable. The Settling Defendants, because of the contribution bar in the settlement agreements would presumably be immune from reallocation participation. It is not known, however, whether the reallocation provisions of UCFA in the case of uncollectible amounts from defendants applies to a plaintiff. There is no reported case involving that situation. The examples in Section 2 and 6 of UCFA only relate to amounts uncollectible from defendants. It may be that no reallocation is contemplated in the case of a plaintiff unable to fund its share, but it is not clear.

From the above, it appears that these Settlements, with contribution bars, could, under two possible scenarios, conceivably adversely impact the non-settling defendants if Acme were unable to fund closure. This possibility, however, does not mean that the settlements should not be approved.. Settling Defendants have urged approval of the settlements under UCFA because the settlements pose no risk to the non-settling defendants. As that does not appear to be an ironclad guarantee, to specifically insure that the result intended by application of UCFA to the settlements is carried out, [*15] any Order approving settlement should give protection to the non-settling defendants against Settling Defendants in the event of a reallocation by the Court, or in the event of any governmental action deemed to arise out of Acme's claims, as well as any action against defendants that is in the nature of a third party claim.

B-The second major basis of objection to the settlements is that there is insufficient and unreliable information regarding the waste contribution of the Settling Defendants to the North Parcel..

As part of the discovery process in this case each party submitted a matrix specifying the quantity of waste it sent or transported to the North Parcel, together with a brief supporting the matrix and a declaration verifying the accuracy of the volumes reported together with a statement describing the steps taken to satisfy the due diligence requirement of a search for all documents relating to waste disposal at the North Parcel. The matrix submittals provided information documenting the volume and quality of waste contributed by each party to the North Parcel. Acme produced a matrix showing over 250,000 tons of waste deposited at the North Parcel. The Acme data came [*16] from manifests, utilized for the first time in 1976, on which the amount and type of waste was recorded as well as the place of deposit.

General deposited waste from its plant in Pittsburg, California which it bought from Allied Signal in 1986. General's matrix showed that waste was sent to the North Parcel between June and October of 1987 which consisted of 84.2 tons of filter cake and 1,391.4 tons of alum mud, a total of 1,475.6 tons.

While Allied signal owned the plant it deposited no hazardous wastes, designated wastes or industrial wastes at Acme's landfill according to a declaration of Alien's site remediation manager, Robert J. Ford.. Allied was dismissed as a defendant by Court order of December 1, 1992.

Rohm & Haas sent 38.10 tons of emulsion polymer material to the North Parcel in 1978 from its plant in Hayward, California. In connection with its matrix preparation Rohm & Haas and General had the materials sent by them to the North Parcel evaluated by Dr. David L. Leu, formerly of DTSC, State of California, responsible for all hazardous waste determination for California from 1984-1988. He concluded that the Rohm & Haas material was not a hazardous waste under [*17] state of federal law nor was General's alum mud. He did not classify the filter cake.

Phillips produced waste information from accounting records that showed disposal of fly ash and catalytic fines for February, 1973 through September, 1974 and the pick up of 19 boxes of catalytic fines in early March, 1976. Other Phillips records show disposal of 41 tons of fly ash during early 1975 and 1090 tons of fly ash on other occasions in 1975. Phillips had waste hauling contracts with Contra Costa Waste Service (CCWS), a transporter affiliated with Acme and with other landfills in the area. Although there were no manifests for Phillips as its ownership of Avon Refinery was during a period before manifests were in use, these contracts and accounting

Case 5:07-cv-01471-TJH-E   Document 773-4   Filed 02/02/10   Page 7 of 11

Page 6
1995 U.S. Dist. LEXIS 22308, *17

records provide available evidence regarding Phillips waste deposits. Neither the CCWS contracts nor the accounts payable records indicate where the waste was delivered. Assuming that waste documented by the available records was taken to the North Parcel, Phillips contribution was calculated, after employing conversion factors, to be 10,765 tons

Tidewater owned the Avon Refinery in Martinez from 1913 until its sale to Phillips in 1966. [*18] There are no manifests for Tidewater. Some documents were located by Tidewater that relate to its Avon Refinery operation, including hauling contracts with CCWS and some invoices. These documents show 413 boxes of fly ash and precipitate fines of waste disposed of at the North Parcel from October, 1965 to July, 1966. As with Phillips, the CCWS contracts do not indicate where the waste was delivered.

Based on all current studies closure and post-closure costs are estimated to be $ 32.465 million for the North Parcel and $ 14.627 million for the East and South Parcels, a total of $ 47.092 million. Acme's reserves are $ 23.5 million, or a potential shortfall of $ 23.592 million for the three parcels.

Opponents condemn the idea of settlement approval that is based upon only this waste-in data. The Tidewater data covers ten months in 1965 and 1966 while it operated the Avon Refinery for at least 12 years that Acme received industrial waste at the North Parcel. Phillips operated Avon for 11 years yet seeks settlement approval based on incomplete pre-1976 contract and invoice data. To fill the gaps in the data, by extrapolating from the known data; the 413 boxes of waste attributed [*19] to Tidewater for the 10 month period translates into 6,195 boxes of waste over a 12 year period and, as for Phillips the method increases its waste contribution from about 10,000 tons to over 20,000 tons. Other claimed deficiencies are General's failure to account for waste generated by Allied Signal, the prior owner of its plant, and the lack of any significant data from Rohm & Haas. As to General's failure to account for waste generated by its predecessor owner Allied Signal, even assuming General is require to account for the prior owner's waste contribution as part of the determination of its share, it must be noted that Allied was dismissed as a defendant in the case because it contributed no hazardous waste to the North Parcel. As to Rohm & Haas, it submitted a declaration attesting that its search for records showed waste deposits for the one year and evidence that none of the waste it deposited at the North Parcel was hazardous.

### IV-*ADDITIONAL DISCOVERY AND FAIRNESS HEARING*

Waste and Municipal Defendants propose that additional discovery be allowed as to the waste contributions of the parties to be followed by a fairness hearing. The proposed discovery would [*20] include depositions of various employees of the parties, requests for additional documents, analysis of product production history and chemical composition and the retention of experts who could analyze waste stream history, production history and analysis of probable use of alternative waste stream disposal sites. Thereafter, it is proposed that the court hold a fairness hearing to consider such matters as migratory/leachability, toxicity and other factors besides volume of waste, remedy/divisibility of harm, the uncertainty of closure and post-closure costs, issues of settlement premiums and orphan shares and the separate liability with regard to the South and East Parcels.

The settlements can be approved under the UCFA based on the present record before the court. A search for more information through an unlimited discovery process is not necessary. It is to speculate that by extrapolation or that with such discovery any additional data can be obtained that would be so significant in kind and character so as to place the Court in any better position to assess the reasonableness of the settlements, whether applying the UCFA concept, the concept set forth in UCATA, in C.C.P. [*21] Sections 877, 877.6 or by the application of any other mechanism.

The record reflects at this time (1) the amounts required for closure by the state agencies DTSC and Integrated Waste Management needed for closure; (2) Acme's known reserves; (3) the volume and quality of Settling Defendants waste determined from the matrix, the briefs and declarations that demonstrate that due diligence was exercised by all parties in their search for documentary information regarding waste deposited at the North Parcel; (4) the declaration of Robert Ittig, attorney for Acme, setting forth all matters considered by Acme as a predicate to entering into the settlements.

Mr. Ittig, counsel for Acme, submitted a declaration in support of the motions to approve settlements in which

he set forth factors that he considered in reaching the agreements with the Settling Defendants. He said that:

2 "In submitting settlement demands to the settling defendants I considered the following factors: the discovery responses and submittals by each of the settling defendants; the strength of the evidence against each of the settling defendants; the risk, costs and benefits of continued litigation against [*22] each of these settling defendants; the ability to demonstrate that the settling parties' waste contribution could be related to a threat of release; the amount of hazardous waste involved; the degree of toxicity of the hazardous waste involved; and the relevant closure and post-closure costs."

3. "Discovery has been conducted by all parties relative to the matters addressed in the pending settlements. I am satisfied that I have propounded discovery and received responses to discovery from the settling defendants which provided me with a sufficient basis to submit settlement demands to these settling defendants and to negotiate the settlements which are currently before the court. I would especially note that I propounded discovery to Phillips Petroleum and Tidewater Oil Company which was designed to discover information regarding their waste streams which were unmanifested. I am satisfied with the document search performed by Phillips and Tidewater as represented to me in correspondence by their respective counsel.

The fairness hearing, as proposed, would necessarily involve a determination of the allocation of the equitable share of liability of all parties. Waste concedes [*23] that the proper allocation for the four Settling Defendants cannot be determined in a vacuum, it can only be determined, by ascertaining the proper allocable share of liability for all parties There is an inability to isolate and to limit any discovery and any fairness hearing Given that inability, virtually unlimited discovery would result, followed by the functional equivalent of a trial to determine the equitable allocable share of response costs at the North Parcel for each party to the litigation. The Pandora's Box is thus opened, the settlement incentive is defeated and the policy of the statute that encourages early settlement and full extinguishment of a settling parties liability for al claims, state and federal would be nullified.

Under methods other than UCFA requiring an evaluation of the reasonableness of settlements, rarely does it happen that discovery or an evidentiary hearing such as requested by the Opponents take place. In California, the issue of good faith settlement, entitling settling defendants to a contribution bar may be determined by the court on affidavits. C.C.P. Sections 877, 877.6, *Tech-Bilt, Inc. v. Woodward-Clyde & Associates. 38 Cal. 3d 488, 500, 213 Cal. Rptr. 256, 698 P.2d 159 (1985).* [*24]

Allowing discovery and evidentiary hearings before confirming settlements would require something approaching full blown litigation. "The preparation for such 'mini-trials' and the uncertainty of the outcomes, would discourage parties from settling, and this would be contrary to CERCLA's policy of encouraging early settlement". *Comerica Bank-Detroit v. Allen Industries, Inc. 769 F. Supp. 1408, 1411 (E.D. Mich. 1991)*

The matters proposed to be considered at a fairness hearing would turn it into the "inevitably lengthy hearing that would either frustrate the express intent of Congress to encourage settlement or negate the entire settlement." *In re Acushnet River v. New Bedford Harbor, 712 F. Supp. 1019, 1031 (D. Mass. 1989).* Fairness hearings are generally long, complex evidentiary hearings which are considered a deterrent to settlement and inconsistent with CERCLA's policy of encouraging settlement". *Hillsborough County v. A & E Oiling Service,* 853 F. Supp. at 1409.

California courts have emphasized that "the court hearing the good faith motion (pursuant to Section 877.6) is not required to conduct an evidentiary hearing on [*25] the basis for the settlements allocation, but instead is accorded wide discretion to control the nature, extent and the procedure applicable to any challenges to the valuation placed on the settlement by the settling party" *Regan Roofing Co. v. Superior Court, 21 Cal. App. 4th 1685, 1701, 27 Cal. Rptr. 2d 62 (1994).* In exercising this discretion, courts have sought to avoid "converting the pretrial settlement approval into a full scale minitrial". *Tech Bilt*, 38 Cal. 3d at 499.

Applying the UCFA principles, considering the case authorities, taking into account the entire record before the court and the papers and argument of counsel offered at the hearing on the motions to approve settlement is a universe of information sufficient to form the basis for a determination regarding the reasonableness of these settlements.

Case 5:07-cv-01471-TJH-E   Document 773-4   Filed 02/02/10   Page 9 of 11

Page 8
1995 U.S. Dist. LEXIS 22308, *25

### V- *OTHER MATTERS*

A-Non-settling defendants challenge the application of the UCFA contribution bar to the state law claims. The rational for dismissal of all claims is that unless the related state claims that arise out of the same set of facts and involve identical subject matter are also dismissed, the finality of the settlement [*26] gained by applying UCFA becomes meaningless. As a result, "courts have held that the contribution protection accorded to defendants settling their liability under CERCLA discharges related claims made under state law." *Hillsborough County v. A&E Road Oiling Service, Inc. 853 F. Supp. 1402, 1408 (M.D. Fla. 1994)*. A settling defendant freed from federal contribution claims, but not from state law claims, would gain little from the settlement payment. The incentive to reach settlement in CERCLA actions would likely disappear under a policy that allowed related state law claims to survive imposition of a contribution bar. The CERCLA policy that encourages early settlement would be circumvented by lingering state law claims. In *United States v. Pretty Products, Inc., 780 F. Supp. 1488, 1496 (S.D. Ohio 1991)* the court explained that when cross claims, brought under legal theories other than contribution, serve to accomplish the same goal as the contribution claims, namely restitution for cleanup and remediation costs, the dismissal of cross-claims is extended to include the state law claims That case involved approval of a settlement between the United States [*27] and private parties but the rationale for dismissing related state law claims is applicable to settlement of claims between private parties.

Although the Ninth Circuit has, in some cases, allowed application of state law rather than federal common law it has allowed District Courts flexibility in deciding whether state or federal common law should apply in determining the reasonableness of settlements. In *Franklin v. Kaypro Corp., supra,* the court agreed with those courts that have called for the creation of Federal common law to govern the issue of the right to contribution in claims under state law and the Federal Securities Act of 1933.

The sensible view is that expressed in those cases that have found that state law claims as well as federal claims are extinguished under UCFA. That contribution protection mechanism is vital to the strong CERCLA settlement policy so that a uniform federal rule (UCFA) must be applied to state claims in the nature of contribution as well as to federal ones. CERCLA courts have applied federal common law rules despite the existence of state laws covering the same subject. *Akzo Coatings Inc. v. Aigner Corp., 803 F. Supp. 1380 (N.D. Ind. 1992)*, [*28] Section 113 of CERCLA bars state law contribution claims; *Allied Corp. v. Frola, 1993 U.S. Dist. LEXIS 13343 at 35 (D. N.J. 1993)*, contribution bar effected by Section 113 of CERCLA applies to equitable state law indemnification claims not based on express contract because such claims would constitute an end run around CERCLA's contribution bar.

Although cases have been cited urging application of state law to the state claims, they are distinguished for different reasons and they do not compel a different result. *Commercial Union Ins. Co. v. Ford Motor Co., 640 F.2d 210 (9th Cir. 1981)*, a diversity case with no federal claims and application of California contribution rules was not opposed. In *Federal Savings & Loan Ins. Co. v. Butler, 904 F.2d 505 (9th Cir. 1990)*, the choice of law issue was not considered. *Employers Ins. of Wausau v. Musick, Peeler and Garrett, 871 F. Supp. 381 (S.D. Cal. 1994)* did not involve a settlement; and, the Ninth Circuit in *Smith v. Mulvaney, 827 F.2d 558 (9th Cir 1987)* the application of C.C.P. 877 to pendent state law claims by the lower court was not considered on appeal.

The [*29] state law cross-claims that have been asserted in this case, including claims for negligence, nuisance, equitable indemnity, comparative indemnity, contribution declaratory relief and attorneys' fees all arise out of the same set of facts and subject matter as the CERCLA cross-claims and seek recovery of the same costs as the CERCLA cross claims.

The Ninth Circuit grants the district courts flexibility in applying the UCFA approach as a matter of federal law to achieve an appropriate final and comprehensive settlement; and, there is no Ninth Circuit, or other authority prohibiting application of the UCFA contribution bar to the state law and federal claims. Furthermore, there is no reason to treat the state claims differently than the federal claims. Failure to resolve and dismiss the state law claims would frustrate CERCLA's basic policy of encouraging early settlements.

B- A concern expressed by Waste and Municipal Defendants is that if these settlements were interpreted to fix the Settling Defendants volumetric share at a particular percentage of the total, that could be translated

into a percentage for them. Approval of the settlements, however, is not intended nor should [*30] it be construed to affect, in any way, what any other parties fair share is or should be; or, what the allocation attributable to any party is, one way or the other. The approval of these settlements would not constitute any such binding allocation or be the law of the case. The approved settlements would not constitute an allocation of shares among the defendants. At the hearing, Settling Defendants stated their agreement that that was the case.

C- Another question posed by Waste was whether, as a policy matter, the court should even consider a settlement where the plaintiff will be unable to fund its share of the liability and where the government inevitably will be required to step in to complete the closure of the landfill, turning then to the defendants to pay its costs. That might happen, but it could just as well happen after a trial, so the possibility is no reason to not consider the settlements now.

D- There is an issue as between Garaventa, one the one hand, and Phillips and Tidewater on the other. Phillips and Tidewater have cross-claims against Garaventa for contractual indemnity that Garaventa characterizes as one seeking allocation of the share of costs attributed [*31] to Phillips and Tidewater in its settlement with Acme, and a cross-claim that should be barred along with other cross-claims asserted by Phillips and Tidewater and other Settling Defendants. Courts adopting the UCFA in private CERCLA lawsuits recognize that the contribution bar is mutual--i.e. that settling defendants cannot maintain any contribution or indemnity claims against non-settling PRPs whose liability is not extinguished by the settlement agreement. *Barton Solvents, 834 F. Supp. at 349*; *American Cyanamide Co.*, supra, at 318; *Comerica Bank-Detroit, 769 F. Supp. at 1415*. Section 4(b) of the UCFA provides that settling defendants may not sue non-settling defendants for contribution unless the settlement agreement between the plaintiff and settling defendants extinguishes the liability of the non-settling defendants to the plaintiff. The Section provides;

Contribution is available to a person who enters into settlement with a claimant only (1) if the liability of the person against whom contribution is sought has been extinguished; and (2) to the extent that the amount paid in settlement was reasonable.

The Phillips-Tidewater position is that [*32] is has settled its equitable liability to Acme, not Garaventa's equitable liability. Phillips and Tidewater do not contend that Garaventa should pay part of the amount that Phillips and Tidewater have agreed to pay to Acme as a matter of equitable contribution. The cross-claims, for indemnification against Garaventa are based on an express contract. These cross-claims, not based on equity, are not barred by the provisions of Section 4 of the UCFA. There may be a contest later as what the indemnity means, whether it requires negligence as Garaventa claims, but it should not be dismissed on the theory that it is a disguised contribution claim as alleged by Garaventa.

### VI-*COST TO IMAGE DOCUMENTS*

The issue of the respective parties responsibility for costs for imaging documents on CD -ROM raised in an October 15, 1995 letter to me from Mr. Collins, on behalf of Garaventa was noted at the hearing on the motions to approve settlement. The letter referred to an agreement among the parties to split the costs four ways between Acme, The Industrial defendants, Contra Costa County and Garaventa. Because some of the parties have presented settlements for approval Garaventa expressed [*33] its belief that the settling parties should address this issue in the settlements and that they either pay their share of costs as originally agreed or Acme be required to assume the settling parties share of the costs as part of the settlement. It is my view that this issue of payment of costs of imaging documents on CD-ROM be resolved outside the parameters of these proposed settlements.

### VII-*CONCLUSION*

The memoranda and declarations presented together with argument of counsel at the hearing to approve the settlements; and, all pleadings and other documents and that make up the record in this case constitute a sufficient basis to rule on the motion. No additional discovery is necessary nor is any hearing beyond that held on the motions themselves.

The non-settling defendants are sufficiently protected in the event of Acme's inability to fund closure as the Orders reflect the mutuality of contribution bar, that state law claims by Settling Defendants are dismissed and that the settlement amounts do not constitute a determination or in any way establish a precedent or finding as to what the allocation of liability is amongst the non-settling defendants, or any [*34] of the parties.

The declaration of Mr. Ittig, counsel for Acme, clearly shows that Acme considered the relevant and material factual and legal issues before entering into the separate settlements. In agreeing to the settlement amounts Acme has assumed the risk under the UCFA that the settlement amounts are less than the Settling Defendants equitable shares to be determined at trial. There is nothing to suggest with any degree of certainty, that these settlement amounts may be too high, too low, or just right. All parties agree, and it is the case, that the settlement amounts need not be arrived at with absolute precision, only that they represent an arms-length reasonable estimate of the settling parties liability.

The record before the court provides a sufficient basis upon which to approve these settlements without the necessity of additional discovery or conducting a fairness hearing. The fairness hearing that is envisioned to be conducted, after the proposed additional discovery period, would be the functional equivalent of the trial. The cases that have interpreted UCFA as well as in California under C.C.P. Section 877 such a procedure is not favored. The strong policy [*35] of favoring settlement would be defeated if those additional steps were taken.

It is Recommended that the Settlement be approved and that the Court enter the Orders attached hereto.

Respectfully submitted,

Richard Urdan (Ret.)

Special Master

October 31, 1995